BEFORE THE DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS

_____
                                  )
                                  )
                                  )
                                  )
IN THE MATTER OF                  )            AR2003085187
                                  )            AR2002075294
TOMMIE ROBERTS                    )            AR2002067525
AKA THOMAS ROBERTS                )            AR2001058201
SSN: XXX-XX-1141                  )
                                  )
                                  )
                                  )
                                  )
                                  )
                                  )
_____)


**MEMORANDUM IN SUPPORT OF REQUEST FOR RECONSIDERATION**




                              Michael W. Dolan, Esq.
                              John E. Howell, Esq.
                              2021 L Street, N.W.
                              Second Floor
                              Washington, D.C.  20036
                              202/293-2776

                              **Attorneys for Applicant**

## TABLE OF CONTENTS

INTRODUCTION...................................... p. 1

STATEMENT OF FACTS............................... p. 2

    Difficulty Determining Facts................ p. 2

    The Board's September 6, 2001 Memorandum.... p. 3

    Facts Not In Dispute........................ p. 4

    Facts Relied Upon by the Board that
       do not appear in the  Record............. p. 6

ARGUMENT......................................... p. 8

POINT I:   THE BOARD'S SEPTEMBER 6, 2001,
    DECISION WAS CLEARLY ERRONEOUS BECAUSE IT
    WAS BASED ON INFORMATION IN DOCUMENTS THAT
    EITHER DO NOT EXIST, OR IF THESE DOCUMENTS
    EXIST, HAVE NEVER BEEN MADE AVAILABLE TO MR.
    ROBERTS.... ................................ p. 8

POINT II:  THE BOARD'S SEPTEMBER 6, 2001,
    DECISION WAS ERRONEOUS BECAUSE IT WAS BASED
    ON FACTUAL DETERMINATIONS THAT ARE EITHER
    CONTRADICTED OR NOT SUPPORTED BY THE RECORD. p. 9

POINT III: MR. ROBERTS' MAY 13, 1969, WAIVER OF
    COUNSEL AND A HEARING WAS FATALLY DEFECTIVE
    BECAUSE IT WAS SECURED UNDER MISLEADING
    TERMS....................................... p. 11

POINT IV:  THE BOARD'S SEPTEMBER 6, 2001,
    DECISION WAS ERRONEOUS BECAUSE IT IGNORED
    THE FACT THAT MR. ROBERTS' UCOTH DISCHARGE
    MUST BE SET ASIDE BECAUSE THE ARMY'S 1969
    DISCHARGE PROCESS DID NOT FOLLOW THE
    REQUIREMENTS OF AR 635-212 and AR 27-10..... p. 13

    A.   The Discharge Procedure Failed to Make
        Required Findings with respect to
        Waiver of Counseling and
        Rehabilitation........................ p. 14

    B.  Mr. Roberts Unit Commander Failed to
        Make Required Recommendation........ p. 15

    C.  Records of Non-Judicial Punishment Were
        Used in Violation of AR 27-10........ p. 16

POINT V:   SUFFICIENT REASONS EXIST IN THE RECORD
      FOR THE BOARD TO GRANT MR. ROBERTS REQUEST
      FOR BACK PAY AND RESTORATION OF ALL RIGHTS
      AND PRIVILEGES AND AN HONORABLE DISCHARGE AS
      A RESULT OF THE EXPIRATION OF THE THREE-YEAR
      TERM OF SERVICE FOR WHICH HE ENLISTED ON
      JULY 13, 1967.............................. p. 18


POINT VI:  BECAUSE MR. ROBERTS SECOND ENLISTMENT
      WAS IMPROPERLY TERMINATED AND HE WAS NOT
      PROPERLY BARRED FROM RE-ENLISTMENT, HE IS
      ENTITLED TO BACK PAY AND RESTORATION OF ALL
      RIGHTS AND PRIVILEGES AS A RESULT OF THE
      EXPIRATION OF THE THREE-YEAR TERM OF SERVICE
      FOR WHICH HE ENLISTED ON JULY 28, 1971..... p. 21

    A.  If the 1971 Discharge Based On A
        Purported Bar To Re-Enlistment, It
        Would Be Without Legal Force Because It
        Improperly Considered An Earlier Non-
        Judicial Punishment................... p. 21


    B.  If the 1971 Discharge Was Based On the
        1969 UCOTH Discharge, It Would Be
        Ineffective Because As Shown Above,
        That Discharge Was Improper and
        Unauthorized.......................... p. 22

CONCLUSION...................................... p. 23

APPENDIX....................................... p. 25

    EXHIBIT A: Affidavit of Thomas Roberts.

    EXHIBIT B: Mr. Roberts completed SF-180 with
        receipt of service; April 9, 2004
        letter from John E. Howell, Esq. to

NPRC; May 6, 2004 letter from John E. Howell, Esq. to NPRC.

EXHIBIT C: Army Board for Correction of Military Records Memorandum of Consideration, September 6, 2001, AR2001058201.

EXHIBIT D: Memorandum to Commanding General, Eighth Field Army Support Command, dated May 13, 1969, Subject: Separation Under AR 635-212.

EXHIBIT E: Memorandum to Commanding General, Eighth Field Army Support Command, dated June 6, 1969, re: Discharge for Unfitness Under AR 635-212.

EXHIBIT F: Undated "Action" by Commanding General Eighth Field Army Support Command.

EXHIBIT G: AR 635-212 (15 July 1966) and relevant changes thereto.

EXHIBIT H: Change 9 to AR 635-212, dated March 13, 1970.

EXHIBIT I: SF 600, Chronological Record of Medical Care: entry for May 18, 1969.

EXHIBIT J: Unit Order 16, 40th Company, 4th Student Brigade, USAIS, Fort Benning, Georgia, March 5, 1968.

<u>**MEMORANDUM IN SUPPORT OF REQUEST FOR RECONSIDERATION**</u>

Tommie Roberts, by counsel, submits this memorandum in support of his request for reconsideration of the Board's decisions in docket numbers: AR2003085187; AR2002075294; AR2002067525; AR2001058201 as well as the decision of the Army Discharge Review Board, dated December 18, 1972.

<u>**INTRODUCTION**</u>

Mr. Roberts, who served in the U.S. Army from July 1967 until July 1969 and then reenlisted in July 1971, has repeatedly sought to upgrade his July 22, 1969 discharge "Under Conditions Other Than Honorable."  This petition is the first that he has filed with the direct assistance of legal counsel.  None of the arguments presented herein have been previously made to the Board, and a number of facts are being called to the Board's attention for the first time.

For reasons set forth below, the Board's September 6, 2001, decision on Mr. Roberts' original application to the Board, AR2001058201, was manifestly and materially clearly erroneous because it relied on documents

not contained in the record and not available to the applicant, made conclusions unsupported by the record, and ignored the Army's failure to follow its own regulations governing discharges.  That decision, and the subsequent decisions that relied upon that decision, should therefore be reconsidered.

Also for reasons set forth more fully below, upon reconsideration, the Board should grant Mr. Roberts' request for back pay and restoration of all rights and privileges and an Honorable Discharge as a result of expiration of terms of service based on his three-year enlistments on July 13, 1967 and July 28, 1971.

STATEMENT OF FACTS

Difficulty Determining Facts

Mr. Roberts has been diagnosed by the Department of Veterans Affairs medical personnel as suffering from chronic and severe post-traumatic stress disorder (PTSD). As with any veteran suffering from chronic and severe PTSD, it is often difficult to determine precise facts from the veteran's own recollection, especially when those facts concern events that occurred almost thirty-five years ago. See, Robinson v. Resor, 469 F.2d 944, 949 (D.C. Cir. 1972)("We agree that Robinson's testimony has not always

been clear or consistent.  We also have grave doubts about the Board's use of that fact to totally discredit his testimony.")

For this veteran, the search for facts is also complicated by the inability of the National Personal Records Center (NPRC) to respond to his request for his military records.  Mr. Roberts' completed SF-180 was received by the NPRC on February 13, 2004.  A second letter, emphasizing Mr. Roberts need for the records, was sent on April 9, 2004, and a third letter was sent on May 6, 2004.  To date, no response has been received.  See Exhibit B.

## The Board's September 6, 2001 Memorandum

This Board sought to restate the facts in its initial Memorandum of Consideration (AR2001058201), dated September 6, 2001.  See Exhibit C.  This rather thorough memorandum is important: first, because the facts set forth in the Evidence of the Record section of the Memorandum obviously influenced the Board's conclusions described in the Discussion portion of the Memorandum, and, second, because the September 6, 2001, Memorandum clearly influenced the Board's subsequent decisions to deny Mr. Roberts' requests for reconsideration (See: AR2003085187,

AR2002075294, and AR2002067525).  The decision in
AR2002067525 specifically incorporates by reference the
military records summarized in the September 6, 2001
Memorandum.


Facts Not In Dispute

        Although Mr. Roberts' continues to await the
receipt of his military records from the NPRC, he does
possess what purports to be a complete set of military
records received from the Department of Veterans Affairs.
A VA Statement of the Case, dated March 20, 2003, indicates
that the VA received submissions from the NPRC in 1969 and
1982 and on March 22, 2001.  Of course, a number of the
facts set forth by the Board in the Evidence of Record
portion of its September 6, 2001, Memorandum are clearly
supported by the record available to Mr. Roberts.  Other
facts described in the September 6, 2001, Memorandum cannot
be disputed.

        For example, it is clear that Mr. Roberts
enlisted on July 13, 1967, for three years and successfully
completed his initial training as a light weapons
infantryman.  On June 17, 1968, he was sent to Vietnam as a
scout observer.  Early in September 1968, he was
transferred to Korea.  On March 28, 1969, he was confined

                              4

awaiting court-martial.  See Affidavit of Thomas Roberts,

Exhibit A.  On May 7, 1969, Mr. Roberts was convicted by a

special court-martial and sentenced to six months

confinement at hard labor, a reduction in grade to private,

E-1, and a monthly forfeiture of $73 for six months.  On

May 13, 1969, after forty-eight days in pre-trial

confinement, and awaiting another 132 days of confinement

at hard labor, he was confronted with a proceeding to

discharge him for unfitness, whereupon he waived his right

to hearing and counsel.  See Exhibit D.  On June 6, 1969, a

Military Police correctional officer, Lt. Reass,

recommended discharge under AR 635-212, stating:  "In view

of this soldier's record of disciplinary actions, request

waiver of counseling and (further) transfer for

rehabilitation" (See Exhibit E).  In an undated "Action,"

the Commander of the Eighth Field Army Support Command,

noting the correctional officer's recommendation that the

counseling and further rehabilitation required by AR 635-

212 be waived, ordered an Undesirable Discharge.  See

Exhibit F.  On July 22, 1968 [as filed -- should be 1969],

Mr. Roberts was discharged from the Army Under Conditions

Other Than Honorable (UCOTH).

    In October of 1969, Mr. Roberts filed a claim for

benefits with the then Veteran's Administration.  In

January of 1970, his claim for VA benefits was denied by a
VA adjudication officer who found that Mr. Roberts UCOTH
discharge was deemed to be under dishonorable conditions
based on willful and persistent misconduct.  On July 28,
1971, Mr. Roberts reenlisted for another three-year period;
on August 19, 1971, he received an Honorable Discharge.

The Board's September, 2001, Memorandum indicates
at p. 5 that on December 18, 1972 the Army Discharge Review
Board denied Mr. Roberts' request to upgrade the UCOTH
discharge.

Facts Relied Upon by the Board that do not appear in the
Record

However, other facts contained in the Board's
September 6, 2001, Memorandum -- facts that the Board quite
clearly relied upon to make its decision -- cannot be
verified from the record available to Mr. Roberts.  For
example, the "Evidence of Record" portion of the Board's
September 6, 2001, Memorandum notes at p. 4 that a

> photo copy of [the July 22, 1969 DD Form 214],
> derived from an unknown source, contains the
> following unsubstantiated data:  Rank-specialist
> four/E-4; Characterization of Service-Honorable;
> Period of Enlistment-2years; RE code-RE-1.  It
> also contains no indication of time lost during
> the enlistment and further lists the following
> additional awards:  Distinguished Service Cross
> (DSC); Silver Star (SS); PH and includes an entry

    in block 25 that credits him with completing the
    basic airborne, ranger, and pathfinder courses.

The Memorandum points out, correctly, at p. 4 that Mr.

Roberts' Enlisted Qualification Record (DA Form 20), which

documents his first enlistment, contains no confirmation of

the information in the DD Form 214 photocopy "derived from

an unknown source."  However, the files available to Mr.

Roberts (which include files received from this Board on

February 19, 2004) contain no copy of a 1969 DD Form 214

with the above information, and, indeed, he does not recall

ever seeing such a document.  See Affidavit of Thomas

Roberts, Exhibit A.

        Similarly, the records available to Mr. Roberts

contain no verification of the following statement on p. 3

of the Board's September 6, 2001, Memorandum:

    On 10 February 1969, the applicant's commander
    initiated a recommendation to bar him from
    reenlistment and cited the applicant's conviction
    by a special court martial and three NJPs as the
    basis for the action.  On 25 March 1969, the
    appropriate authority approved the imposition of
    the bar to reenlistment.

Although Mr. Roberts' DA Form 20 notes that he was not

eligible for further service, there is no date of any such

action.

        The Board's September 6, 2001, Memorandum also

makes a number of conclusions about Mr. Roberts' second

enlistment, which resulted in an Honorable Discharge.  For
example, at p. 4 the Board's Memorandum notes that the DD
Form 398, Statement of Personal History, prepared in
connection with Mr. Roberts' second enlistment indicates no
prior service; that he did not graduate from high school;
and that he was self-employed as a taxi driver from 1966
through 1971.  Again, the files available to Mr. Roberts
contain no DD Form 398, and, again, he does not recall ever
seeing such a document.  See Exhibit A.

ARGUMENT

POINT I

THE BOARD'S SEPTEMBER 6, 2001, DECISION WAS CLEARLY
ERRONEOUS BECAUSE IT WAS BASED ON INFORMATION IN DOCUMENTS
THAT EITHER DO NOT EXIST, OR IF THESE DOCUMENTS EXIST, HAVE
NEVER BEEN MADE AVAILABLE TO MR. ROBERTS.

The Board's September 6, 2001, decision -- the
key decision in Mr. Robert's case because it controlled the
Board's subsequent decisions -- was undoubtedly influenced
by the contents of two documents:  (i) a photocopy of Mr.
Roberts' 1969 DD Form 214 "derived from an unknown source"
that mischaracterized his discharge as Honorable and listed
awards and decorations that he apparently never received,
and (ii) a Statement of Personal History, DD Form 398,
supposedly signed by Mr. Roberts on July 23, 1971, on which

8

Mr. Roberts "indicated that he had no prior service," stated that he did not graduate from high school, and indicated that he was a taxi driver during the period that he was serving in the Army under his first enlistment.

These documents simply do not exist in the Army records made available to Mr. Roberts by the Department of Veterans Affairs and this Board. To the extent that the Board relied on these documents -- and a fair reading of the Board's memorandum indicates that it did -- the Board's decision of September 6, 2001 was arbitrary, capricious, an abuse of discretion, and otherwise not in accordance with the law. Moreover, if these documents do exist, for the Board to rely on them without providing them to the applicant is a denial of Mr. Roberts' right of due process of law under the Fifth Amendment to the U.S. Constitution.


<u>POINT II</u>

THE BOARD'S SEPTEMBER 6, 2001, DECISION WAS ERRONEOUS BECAUSE IT WAS BASED ON FACTUAL DETERMINATIONS THAT ARE EITHER CONTRADICTED OR NOT SUPPORTED BY THE RECORD.

The September 6, 2001, decision of the Board cites at p. 4 the mysterious DD Form 398 Statement of Personal History as evidence that Mr. Roberts somehow deceived the Army about his first enlistment. The Board noted that the form indicated no prior service and that Mr.

Roberts drove a taxi during the period of his initial enlistment.  Paragraph 8 of the Discussion section of the September 6 Memorandum notes at p. 8 that "The Board finds there is sufficient evidence to conclude that the applicant, more appropriately should have been processed for separation from his second enlistment by reason of fraudulent entry."[1]

However, it is inconceivable that Mr. Roberts' could have concealed his initial enlistment when he reenlisted in July of 1971.  For his second enlistment, he received the same service number, RA XX XX8 546, that he received for his first enlistment.  Mr. Roberts' DA Form 20, which the Board cites as containing false information, properly cites his prior service.  Indeed, his DA Form 20 records "(Gov Ser) enlisted man" as his prior civilian occupation and lists in several places his July 1967 to July 1969 prior Army service.

The Board's September 6, 2001, Memorandum notes at p. 5 that Mr. Roberts submitted a request for discharge on August 16, 1971, stating that he "had informed his

---

[1] The Board's September 2001 memorandum concludes at p. 5 that Mr. Roberts' 1971 DD Form 214 "contains entries that cannot be verified by the applicant's official record."  One cannot assume that any erroneous entries were the fault of Mr. Roberts.  It was signed by an officer of the discharging command.  Surely someone in that command had a duty to corroborate the contents of the DD Form 214, which is not only an official record, but among the most important records that a service member has.

recruiter that he had prior service and desired to reenter the Army in the pay grade of E-4." Although this document does not exist in the records available to Mr. Roberts, the Board referred to it in spite of the fact that it contradicts the Board's apparent assertion that Mr. Roberts concealed his prior Army service.


<u>POINT III</u>

MR. ROBERTS' MAY 13, 1969, WAIVER OF COUNSEL AND A HEARING WAS FATALLY DEFECTIVE BECAUSE IT WAS SECURED UNDER MISLEADING TERMS.

AR 635-212, the cited authority for Mr. Roberts' UCOTH discharge, in effect at the time Mr. Roberts was discharged (See Exhibit G), requires at paragraph 16 the appointment of counsel, and at paragraph 17 a hearing before a board of officers. After forty-eight days in prison with another 132 days to go, halfway around the world from his home, Mr. Roberts waived both of these important procedural protections in a May 13, 1969 document. See Exhibit D. That waiver specifically noted that he could receive either a general or a UCOTH discharge and described the adverse consequences of each. In other words, his signed waiver specifically noted that he could receive either a general or a UCOTH discharge. In fact,

Mr. Roberts' recalls being told that "most likely" he would receive a General Discharge.  See Roberts Affidavit, Exhibit A.  However, as the Board's September 6, 2001, Memorandum points out at 6:  "a UD was normally considered appropriate."  Indeed, paragraph 4a of the regulation notes that "An individual separated by reason of unfitness will be furnished an undesirable discharge certificate...."

Of course, written waivers of due process and counsel should be strictly construed.  See, Krzeminski v. U.S., 13 Cl.Ct. 430, 438 (1987)("Waivers of rights must be voluntary, knowing, and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences" (emphasis supplied)).  While Mr. Roberts, sitting in his cell in Korea, waived his right to counsel and a hearing, he thought that he was risking either a General or a UCOTH discharge, and he was told that most likely he would receive a General Discharge.  In reality, a General Discharge was not an option, and he had unwittingly agreed to a UCOTH discharge.  Ironically, the misleading waiver of counsel was the type of hazard from which counsel could have protected him.  Notably, less than a year later, AR 635-212 was amended to permit a withdrawal of a waiver at any time prior to the date the discharge is

approved.  See Change 9 to AR 635-212, dated March 13, 1970 (Exhibit H).

### POINT IV

THE BOARD'S SEPTEMBER 6, 2001, DECISION WAS ERRONEOUS BECAUSE IT IGNORED THE FACT THAT MR. ROBERTS' UCOTH DISCHARGE MUST BE SET ASIDE BECAUSE THE ARMY'S 1969 DISCHARGE PROCESS DID NOT FOLLOW THE REQUIREMENTS OF AR 635-212 and AR 27-10.

The first paragraph of the Discussion section of the Board's September 6, 2001, Memorandum notes that "Lacking evidence to the contrary, the Board presumes administrative regularity in the applicant's administrative separation under the provisions of AR 635-212, for unfitness."  However, quite the contrary, there is significant evidence of administrative irregularity. Indeed, the Army made a number of procedural errors in its efforts to discharge Mr. Roberts prematurely.  "It is, of course, a fundamental tenet of our legal system that the Government must follow its own regulations.  Actions by an agency of the executive branch in violation of its own regulations are illegal and void."  VanderMolen v. Stetson, 571 F.2d 617, 624 (D.C. Cir. 1977).

## A.  The Discharge Procedure Failed to Make Required Findings with respect to Waiver of Counseling and Rehabilitation.

Mr. Roberts was clearly discharged under paragraph 6a(1) of AR 635-212, a regulation that contains a number of specific procedural requirements (Exhibit G).[2] However, service members discharged under paragraph 6a(1) must receive counseling, and a specific memorandum made of that fact.  Paragraph 7a, AR 635-212.  Paragraph 7b(2) requires rehabilitation through reassignment.  Paragraph 7c(2) and (3) provide that counseling and rehabilitation can only be waived by the appropriate commander "when he determines that further duty of the individual will, in his best judgment, create serious disciplinary problems or a hazard to the military mission or to the individual."

However, no such specific finding was recommended by Correctional Officer Reass nor was any approved by Brig. Gen. Holm.  Correctional Officer Reass's recommendation:

---

[2] As the Board's September 6, 2001, Memorandum notes at p. 6, "Paragraph 6a(1) of [AR 635-212] provided ... that members involved in frequent incidents of a discreditable nature with civil or military authorities were subject to separation for unfitness ...."  The June 6, 1969, recommendation by Correctional Officer Reass declares at paragraph 2c:  "Discharge is recommended because of frequent acts of misconduct which are a discredit to the military service."  See Exhibit E.

"In view of this soldier's record of disciplinary actions, request waiver of counseling and (further) transfer for rehabilitation."  Brig.Gen. Holm approved: "...the recommendations that the counseling and further rehabilitation required by Section II, Army Regulation 635-212, be waived and that subject enlisted man be discharged from the service for unfitness...."  There was no finding, as paragraph 7c(2) and (3) required, that counseling and rehabilitation would create serious discipline problems or a hazard to the military mission or to the individual.


B.  Mr. Roberts Unit Commander Failed to Make Required Recommendation.

        Paragraph 10 of AR 635-212, dated July 15, 1966, requires the individual's unit commander to initiate the discharge process:  "The unit commander of the individual will recommend action under this regulation ...."  Paragraph 12 requires the individual's commander to forward a "Commanding officer's report" through the appropriate intermediate commander, if appropriate, to the general court-martial convening authority.

        While the report issued by Correctional Officer Reass was obviously intended to be the Commanding officer's report, it is not labeled as such and he signed the report

15

as Mr. Roberts' "correctional officer," not "commanding." Moreover, there is no indication in the record that Lt. Reass ever commanded a unit to which Mr. Roberts was assigned.

If the Army chooses to discharge a soldier for unfitness with a UCOTH discharge it must follow its own regulations, and for this reason alone the Board should reconsider its earlier decisions and upgrade Mr. Roberts' discharge.

> It is axiomatic that an agency ... must scrupulously observe its own rules, regulations, and procedures. ... With respect to the armed forces, this requirement 'does not involve any undue interference with the proper and efficient operation of our military forces because we require only that the Army carry out the procedures and regulations it created itself.' Blassingame v. Secretary of the Navy, 866 F.2d 556, 560 (2d Cir. 1989), citing U.S. ex rel Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954) and quoting Smith v. Resor, 406 F.2d 141,146 (2d Cir. 1969).

C.  Records of Non-Judicial Punishment Were Used in Violation of AR 27-10.

The version of AR 27-10 in use in early 1969 specifically forbade the mention of one-year-old or older non-judicial punishments in a proceeding if the individual had been transferred.  As the court observed in Martin v. Secretary of the Army, 455 F.Supp. 634, 637 (D.D.C. 1977):

16

>Both U.S. v. Cohan, 43 C.M.R. 309 (1970) and
>U.S. v. Turner, 45 C.M.R. 130 (1972), have
>interpreted Regulation 27-10 as forbidding
>mention of an individual's nonjudicial punishment
>in a proceeding against him whenever he has been
>subsequently transferred and (a) one year has
>elapsed, (b) punishment has been executed, and
>(c) and appeal of the punishment has been fully
>resolved.

Considering a claim for back pay, the court in Martin

applied paragraph 3-15(d) of the 1968 version of the

regulation to overturn a 1971 discharge proceeding.[3]

In Mr. Roberts' case, Correctional Officer

Reass's recommendation to General Holm was apparently

reviewed by Gen. Holm's Staff Judge Advocate, Lt. Col.

George Taylor, Jr., who appended records of two Article

15's that Mr. Roberts received on March 5 and April 22,

1968, while in basic airborne training at Fr. Benning,

Georgia.  See Exhibit E.  Mr. Roberts had been transferred

several times subsequent to the imposition of these Article

15's more than one year earlier.  In a passage that

directly applies to Mr. Roberts' predicament, the U.S.

---

[3] AR 27-10 (26 Nov. 1968) was amended twenty-one times between its Jan.
1, 1969, effective date and 1981.  At least one change, Change 17,
incorporated all prior changes.  Because Mr. Roberts has been unable to
locate a copy of the version in force in early 1969, he must rely on
the text as reprinted in U.S. v. Cohan, 43 C.M.R. 309, 311 (1971).  The
facts of that case indicate that the version quoted therein, which also
was applicable to the facts in Martin v. Secretary of the Army, 455
F.Supp. 634, 637 (D.D.C. 1977), remained unchanged as late as September
1969, which would easily include the period applicable to Mr. Roberts'
case.

Court of Military Appeals noted in <u>U.S. v. Cohan</u>, 43 C.M.R.

309, 312 (1971):

> Indisputably, transfer is important to the
> question of retention or destruction of the
> record [of non-judicial punishment].  It is
> especially important to persons new to the
> military who might be expected to experience
> difficulty in adjusting from civilian life to the
> rigors of recruit training, and whose transfer
> from a temporary unit to a permanent organization
> commonly occurs in a period of less than a year.
> Such persons might hope to make a new start in
> their new organizations....

Of course, this same principle -- that soldiers

be given the opportunity to transfer to another unit -- is

the reason that paragraph 7c of AR 635-212 makes it so

difficult for a commander to waive a transfer for

rehabilitation.  See Point IV A above.


<u>POINT V</u>

SUFFICIENT REASONS EXIST IN THE RECORD FOR THE BOARD
TO GRANT MR. ROBERTS REQUEST FOR BACK PAY AND RESTORATION
OF ALL RIGHTS AND PRIVILEGES AND AN HONORABLE DISCHARGE AS
A RESULT OF THE EXPIRATION OF THE THREE-YEAR TERM OF
SERVICE FOR WHICH HE ENLISTED ON JULY 13, 1967.


Mr. Roberts has consistently sought to have his

discharge upgraded, filing his initial petition with the

Army Discharge Review Board in 1972.  He has filed other

petitions over the years.  The instant petition is the

first that he has filed with the direct assistance of legal counsel.

Although Mr. Roberts disagrees, it may be, as the Board apparently believed, that Mr. Roberts' was afflicted with PTSD before his combat experiences in Vietnam, perhaps even before his enlistment.[4] But surely, the Army must bear some degree of responsibility for enlisting a man with a mental disorder, and then marking the man for life when his conduct is unacceptable as a result of that mental disorder.

This Board has previously noted (at paragraph 6, page 7 of the September 6, 2001, Memoranda) that Mr. Roberts was awarded the Air Medal, the National Defense Service Medal, the Vietnam Service Medal, and the Combat Infantryman Badge. He enlisted, not once, but twice, at a time when many of his countrymen refused or avoided military service.

Mr. Roberts has suffered enough for whatever transgressions he committed as young soldier more than thirty-five years ago. While confined in the stockade in Korea, after almost a year of foreign service, some of

---

[4] "[T]he Board finds no evidence to suggest that the character of his service was significantly different before or after his tour of duty in the RVN and that would support the theory that his misconduct was the result of suffering from a PTSD due to his combat experiences in the RVN." September 6, 2001 Memorandum at p. 7.

which was in a combat zone, he was offered a way to avoid serving the remainder of is sentence of six months at hard labor. On May 13, 1969, after acknowledging that he may receive either a general or an undesirable discharge, and being told that he would most likely receive a General Discharge, Tommie Roberts waived his right to a hearing and his right to counsel and unwittingly put himself in a position in which he could only receive an undesirable discharge. On May 18, 1969, according to his field medical file (Exhibit I), he may have attempted suicide.

As shown above, the Army's 1969 discharge of Mr. Roberts was a legal nullity. It failed:

-- to properly waive counseling and rehabilitation,

-- to have Mr. Robert's unit commander recommend discharge, and

-- to exclude Mr. Roberts' non-judicial punishment. The Army's own regulations required these procedures precisely to protect soldiers like Mr. Roberts who was having a difficult time adjusting to military life. Accordingly, Mr. Roberts is entitled to back pay and restoration of all rights and privileges and an honorable discharge as a result of expiration of the three-year term of service for which he enlisted on July 13, 1967.

<u>POINT VI</u>

BECAUSE MR. ROBERTS SECOND ENLISTMENT WAS IMPROPERLY
TERMINATED AND HE WAS NOT PROPERLY BARRED FROM RE-
ENLISTMENT, HE IS ENTITLED TO BACK PAY AND RESTORATION OF
ALL RIGHTS AND PRIVILEGES AS A RESULT OF THE EXPIRATION OF
THE THREE-YEAR TERM OF SERVICE FOR WHICH HE ENLISTED ON
JULY 28, 1971.

Because Mr. Roberts does not have access to any

documents explaining why the Army decided to discharge him

in 1971, it is difficult to explain the Army's rationale.

It is not difficult, however, to show that whatever the

rationale, his 1971 discharge had no legal force.


<u>A.  If the 1971 Discharge Based On A Purported Bar To Re-
Enlistment, It Would Be Without Legal Force Because It
Improperly Considered An Earlier Non-Judicial Punishment.</u>

The Board's September 2001 Memorandum refers to

the following documents (i) a February 10, 1969

recommendation from Mr. Roberts' commander that Mr. Roberts

be barred from reenlistment, (ii) a March 25, 1969,

approval of that recommendation, and (iii) an August 16,

1971, request for discharged signed by Mr. Roberts.

Although none of these documents are contained in the

materials available to Mr. Roberts, his DA Form 20 contains

an undated statement that he is ineligible for further

service.  The Board September, 2001, Memorandum

specifically noted that Mr. Roberts' commander's

recommendation specifically cited three non-judicial punishments, and that that recommendation was approved on March 25, 1969.

Of course, if these documents do exist, the reenlistment bar would be invalid for the same reason that the 1969 discharge was invalid (see Point IV C above) because AR 27-10 forbids the use of a record of non-judicial punishment after the passage of one year and the individual has been subsequently transferred.  As noted in Point IV C above, while in the Student Brigade at Fort Benning, Georgia, Mr. Roberts' received an Article 15 on March 1, 1968, the effective date of which was also March 1, 1968.  See Exhibit J.  He, of course, was transferred several times after that Article 15 and before the March 25, 1969, date of the decision to bar his re-enlistment. Accordingly, the purported bar to re-enlistment was a legal nullity and would have been ineffective to prevent his re-enlistment.


**B.  If the 1971 Discharge Was Based On the 1969 UCOTH Discharge, It Would Be Ineffective Because As Shown Above, That Discharge Was Improper and Unauthorized.**

It may be that Mr. Robert' 1971 discharge was based on his 1969 UCOTH discharge.  Paragraph 27 of AR 635-212, as amended by change 3 on April 4, 1968, notes that to

22

preclude reentry into the Army unless authorized by appropriate authority, the DD Form 214 of individuals will be coded "RE-3."[5]  But, again, because as above in Point IV, that discharge was unauthorized, the August 19 termination of his second enlistment would be void and accordingly he would be entitled to back pay and restoration of all rights and privileges as a result of the expiration of the three-year term of service for which he enlisted on July 28, 1971.

<u>CONCLUSION</u>

For reasons set forth above, the Board's September 6, 2001, decision on Mr. Roberts' original application to the Board, AR2001058201, was manifestly and materially clearly erroneous because it made conclusions unsupported by the record, relied on documents not contained in the record and not available to the applicant, and ignored the Army's failure to follow its own regulations governing discharges. That decision, and the subsequent decisions that relied upon that decision, should therefore be reconsidered.

---

[5] The Board's September 2001 memorandum correctly notes that Mr. Roberts' 1969 DD Form 214 reflects a reenlistment code in item 15 as "RE-4." That Code, however, is used to prevent the re-enlistment of certain individuals who have completed 18 years or more of active Federal service. See AR 635-212 (15 July 1966)as amended by C 3 (4 April 1968).

Also for reasons set forth above, upon
reconsideration, the Board should grant Mr. Roberts'
request for back pay and restoration of all rights and
privileges and an honorable discharge as a result of
expiration of terms of service based on his three-year
enlistments on July 13, 1967 and July 28, 1971.

Because the defects in the Army's discharge of
Mr. Roberts relate back to his first enlistment, he asks
that the effective date of the Board's decision in this
case be made retroactive to the date of his initial
application to the Army Discharge Review Board -- the
application that was denied on December 18, 1972.


Dated:  _[June 4, 2004]__        Respectfully Submitted,

                                         /S/

                                 Michael W. Dolan, Esq.
                                 John E. Howell, Esq
                                 2021 L Street, Second Floor
                                 Washington, D.C.  20008

                                 Attorneys for Applicant

24

## APPENDIX

EXHIBIT A: Affidavit of Thomas Roberts

EXHIBIT B: Mr. Roberts completed SF-180 with receipt of service; April 9, 2004 letter from John E. Howell, Esq. to NPRC; May 6, 2004 letter from John E. Howell, Esq. to NPRC.

EXHIBIT C: Army Board for Correction of Military Records Memorandum of Consideration, September 6, 2001, AR2001058201.

EXHIBIT D: Memorandum to Commanding General, Eighth Field Army Support Command, dated May 13, 1969, Subject: Separation Under AR 635-212.

EXHIBIT E: Memorandum to Commanding General, Eighth Field Army Support Command, dated June 6, 1969, re: Discharge for Unfitness Under AR 635-212.

EXHIBIT F: Undated "Action" by Commanding General Eighth Field Army Support Command.

EXHIBIT G: AR 635-212 (15 July 1966) and relevant changes thereto.

EXHIBIT H: Change 9 to AR 635-212, dated March 13, 1970.

EXHIBIT I: SF 600, Chronological Record of Medical Care: entry for May 18, 1969.

EXHIBIT J: Unit Order 16, 40th Company, 4th Student Brigade, USAIS, Fort Benning, Georgia, March 5, 1968.