

DEPARTMENT OF THE ARMY
BOARD FOR CORRECTION OF MILITARY RECORDS
1941 JEFFERSON DAVIS HIGHWAY 2ND FLOOR
ARLINGTON VA 22202-4508

## MEMORANDUM OF CONSIDERATION

IN THE CASE OF:   ROBERTS, TOMMIE
　　　　　　　　　▆▆▆▆1141

BOARD DATE:   6 September 2001
DOCKET NUMBER:   AR2001058201

   I certify that hereinafter is recorded the record of consideration of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Mr. Carl W. S. Chun | Director |
| Mr. Michael L. Engle | Analyst |

  The following members, a quorum, were present:

| | |
|---|---|
| Mr. Luther L. Santiful | Chairperson |
| Mr. Melvin H. Meyer | Member |
| Mr. John T. Meixell | Member |

   The Board, established pursuant to authority contained in 10 U.S.C. 1552, convened at the call of the Chairperson on the above date. In accordance with Army Regulation 15-185, the application and the available military records pertinent to the corrective action requested were reviewed to determine whether to authorize a formal hearing, recommend that the records be corrected without a formal hearing, or to deny the application without a formal hearing if it is determined that insufficient relevant evidence has been presented to demonstrate the existence of probable material error or injustice.

   The applicant requests correction of military records as stated in the application to the Board and as restated herein.

   The Board considered the following evidence:

Exhibit A - Application for correction of military
　　　　　records
Exhibit B - Military Personnel Records (including
　　　　　advisory opinion, if any)


Printed on Recycled Paper

ABCMR Memorandum of
Consideration (cont)

AR2001058201

APPLICANT REQUESTS: In effect, that his undesirable discharge (UD) be upgraded to an honorable discharge (HD).

APPLICANT STATES: In effect, that at the time he was discharged he suffered from a post-traumatic stress disorder (PTSD), as a result of his tour of duty in the Republic of Vietnam (RVN), and that he was under a medical profile based on injuries he received in the RVN. In support of his application, he provides a copy of his Department of Veterans Affairs (VA) medical records describing his medical progress from 9 February 2000 to 8 May 2001 and copies of Armed Forces of the United States Reports of Transfer or Discharge (DD Forms 214), issued at the end of his active duty service periods ending on 22 July 1969 and 19 August 1971.

The applicant provided the enclosed VA medical records which document his visits for a variety of reasons between 23 March 2000 and 22 May 2001. In these sessions, the applicant described events that occurred during his military service and specifically during his RVN tour of 4 months. He claims that he was required to go on long-range reconnaissance patrols for 4 or 5 days into the Mekong Delta and Iron Triangle regions. He further stated that one of these patrols ended with him falling into a well while walking point and the enemy opening fire and killing everyone in his unit but him. In another patrol, he reached over to pull a wounded buddy closer to him only to realize his buddy's head had severed from his body. He also claimed that during one of these patrols he was shot in the right wrist with the exit wound being in his elbow.

During these medical visits, VA evaluators found that the applicant was suffering from a PTSD, which ultimately led to his being referred to the PTSD clinic. He was also described as a combat veteran with the Purple Heart (PH) and Bronze Star Medal (BSM) who suffered from a PTSD due to psychological trauma suffered in combat in the RVN. They also commented that he suffered with chronic pain to his right arm and right leg due to combat wounds he received in the RVN. On 29 May 2001, the PTSD clinic coordinator stated that the applicant was a decorated combat injured veteran who was apparently suffering from symptoms of war trauma (PTSD) as a result of being injured in the RVN but this condition was overlooked or misdiagnosed at that time. He also commented that during his military service the applicant was not treated and his condition worsened, which resulted in his being incarcerated, mistreated and discharged with an other than an honorable discharge, instead of being discharged medically due to his combat related PTSD. The medical evaluator further stated that the applicant should be afforded the opportunity and the dignity of receiving an HD from his first enlistment and supported his recommendation by stating that the applicant had served with honor in the RVN, which is attested to by the injuries and scars he has, for which he received the PH, and the fact he received an HD for his second enlistment. The expanded VA clinical evaluation records are enclosed.

2

ABCMR Memorandum of                                    AR2001058201
Consideration (cont)

EVIDENCE OF RECORD: The applicant's military records show:

On 13 July 1967, he enlisted in the Army for 3 years and he successfully completed his initial training as a light weapons infantryman (11B) and was assigned to Fort Benning, Georgia, for basic airborne training. On 9 February 1968, he was released from basic airborne training and permanently disqualified due to a lack of adaptability.

On 1 March 1968, the applicant received nonjudicial punishment (NJP), under the provision of Article 15, Uniform Code of Military Justice (UCMJ), for being disrespectful in language to his superior noncommissioned officer (NCO) and for willfully disobeying a lawful order from his superior commissioned officer. His punishment included a reduction to private/E-2 (PV2) and a forfeiture of $15.00.

On 13 April 1968, the applicant received NJP for an unknown misconduct and his punishment included a forfeiture of $23.00. His records show that he was absent without leave (AWOL) from 3 to 9 April 1968 and that he was in confinement from 18 April to 7 May 1968.

On 8 May 1968, he was convicted by a special court-martial for willfully disobeying a lawful order from a superior commissioned officer and sentenced to 30 days restriction to the company area.

On 17 June 1968, the applicant was assigned to the RVN and was further assigned to Company F, 50th Infantry, 25th Infantry Division as a scout observer (11B). On 16 August 1968, he was again reassigned to Company C, 2nd Battalion, 12th Infantry, for unknown duties.

On 4 September 1968, the applicant was reassigned to the Republic of Korea (ROK) and was further assigned to duties as an electrical accounting equipment operator (74A). A day later he was assigned to duties as a light vehicle driver (64A) and on 27 December 1968, he received NJP for an unknown misconduct and was punished with a forfeiture of $32.00.

On 10 February 1969, the applicant's commander initiated a recommendation to bar him from reenlistment and cited the applicant's conviction by a special court-martial and three NJPs as the basis for the action. On 25 March 1969, the appropriate authority approved the imposition of the bar to reenlistment.

On 7 May 1969, the applicant was convicted by a special court-martial of leaving his place of duty without proper authority; riding in a vehicle during curfew hours; stealing Army property; wrongfully appropriating an Army truck; wrongful possession of marijuana; and breaking restriction. The sentence approved by the convening authority was a reduction to private/E-1 (PV1), 6 months confinement at hard labor, and forfeiture of $73.00 per month for 6 months.

3

ABCMR Memorandum of
Consideration (cont)                                              AR2001058201

The applicant's discharge packet is missing from his military records. However, his record does include a carbon copy of the number 2 copy of the DD Form 214 issued to him upon his separation on 22 July 1969. This document shows he was administratively discharged on that date, under the provisions of Army Regulation 635-212, by reason of unfitness, after completing 1 year, 11 months, and 12 days of creditable active military service and having accrued 27 days of time lost due to AWOL and confinement.

The separation document also shows his rank and pay grade as PV1/E-1, his specialty as 11B10; his term of service as 3 years; and his reentry (RE) code as RE-4. The awards listed on this form include the following: National Defense Service Medal (NDSM); Vietnam Service Medal (VSM); Air Medal (AM); and Combat Infantryman Badge (CIB). In addition, this document contains a "None" entry in block 25 (education and training completed).

A photo copy of that same number 2 copy of the same DD Form 214 issued on 22 July 1969, derived from an unknown source, contains the following different unsubstantiated data: Rank-specialist four/E-4; Characterization of Service-Honorable; Period of Enlistment-2 years; RE code-RE-1. It also contains no indication of time lost during the enlistment and further lists the following additional awards: Distinguished Service Cross (DSC); Silver Star (SS); PH and also includes an entry in block 25 that credits him with completing the basic airborne, ranger, and pathfinder courses.

The applicant's Enlisted Qualification Record (DA Form 20), documenting his service from 13 July 67 to 22 July 1969, confirms only that he was awarded the NDSM, AM, CIB, VSM, and Marksmanship Qualification Badge for the M-14 and M-16 rifles and the M-60 machine gun and contains no indication that he completed the courses indicated in the copy of the separation document derived from an unknown source.

On 28 July 1971, the applicant again enlisted in the Army for 3 years. His enlistment grade was PV1/E-1 and his enlistment contract indicated that he had no prior service. The Statement of Personal History (DD Form 398) he prepared in connection with his 28 July 1971 enlistment, which he signed on 23 July 1971, indicated that he had no prior service; that he did not graduate from high school; and that he was self-employed as a taxi driver from 1966 through 1971.

On 3 August 1971, the applicant reviewed and signed his DA Form 20 prepared at Fort Dix, New Jersey where he was assigned to attend basic training; thereby, attesting to its authenticity and accuracy. The form contains information similar to the entries contained on the photo copy of the DD Form 214 derived from an unknown source discussed above.

4

ABCMR Memorandum of  
Consideration (cont)

AR2001058201

On 16 August 1971, the applicant submitted a request for discharge, in which, he stated that he understood that he was not eligible for enlistment in the Regular Army due to his not meeting the basic qualifications for enlistment. He also made a statement attesting to the fact he had informed his recruiter that he had prior service and desired to reenter the Army in the pay grade of E-4 for training in an administrative field. On 17 August 1971, the appropriate authority directed the release of the applicant from active duty, under the provisions of paragraph 5-3, Army Regulation 635-200, by reason of erroneous enlistment, and that he receive an HD.

On 19 August 1971, the applicant was discharged accordingly and issued a DD Form 214 that indicated that he was assigned a separation program number 319 (Erroneous Enlistment) and an RE code of RE-1. It also showed his rank and pay grade as specialist four/E-4; his specialty title as 11B4P, which indicated he was an airborne qualified light weapons infantryman. In addition, this document listed the awards indicated in earlier copies of the DD Form 214 and listed the following additional awards: Bronze Star Medal (BSM); Army Commendation Medal (ARCOM); Parachutist Badge; RVN Campaign Medal (RVNCM); and Expert and Sharpshooter Qualification Badge. Further, the remarks section credits the applicant with completing 1 year of college.

A review of the RVN Casualty Roster, maintained by the Total Army Personnel Command, did not reveal that the applicant had ever been wounded in action or medically evacuated from the RVN.

On 18 December 1972, the Army Discharge Review Board (ADRB) denied the applicant's request for an upgrade to his discharge and concluded his UD was proper and equitable.

Army Regulation 635-5 (Personnel Separations), in effect at the time, stated, in pertinent part, that a DD Form 214 would not be issued to enlisted personnel who are dropped from a period of service because of fraudulent enlistment or who are inducted and separated in accordance with Army Regulation 635-206, section V.

Army Regulation 635-200, in effect at the time, provided in paragraph 5-31, that an individual discovered to have been erroneously enlisted in the Army because he failed to meet enlistment or reenlistment qualifications would have his enlistment voided. The Discharge Authority would not issue a discharge certificate or a DD Form 214 and such individuals would be released from the custody and control of the Army by virtue of a void enlistment via special orders.

ABCMR Memorandum of  
Consideration (cont)                                    AR2001058201

Army Regulation 635-206, in effect at the time, provided the procedures for the processing of fraudulent entry cases and for the administrative disposition of enlisted persons found to have fraudulently entered the Army. It specifically required that unit commanders submit a recommendation to the general court-martial (GCM) convening authority upon the discovery and complete verification of any deliberate material misrepresentation, omission, or concealment of facts or conditions which, if known at the time, might have resulted in a rejection for enlistment and provided that the GCM had the authority to retain or separate individuals processed under these provisions after consideration all the facts.

Army Regulation 635-212, in effect at the time, set forth the basic authority for separation of enlisted personnel. Paragraph 6a(1) of the regulation provided, in pertinent part, that members involved in frequent incidents of a discreditable nature with civil or military authorities were subject to separation for unfitness and an UD was normally considered appropriate.

Title 38, United States Code, sections 310 and 331, permits the VA to award compensation for a medical condition which was incurred in or aggravated by active military service. The VA, however, is not required by law to determine medical unfitness for further military service. The VA, in accordance with its own policies and regulations, awards compensation solely on the basis that a medical condition exists and that said medical condition reduces or impairs the social or industrial adaptability of the individual concerned. Consequently, due to the two concepts involved, an individual's medical condition, although not considered medically unfitting for military service at the time of processing for separation, discharge or retirement, may be sufficient to qualify the individual for VA benefits based on an evaluation by that agency.

PTSD, an anxiety disorder, was recognized as a psychiatric disorder in 1980 with the publishing of the Diagnostic and Statistical Manual of Mental Disorders (DSM). The condition is described in the current DSM-IV, pages 424 through 429. The Army used established standards and procedures for determining fitness for entrance and retention and utilized those procedures and standards in evaluating the applicant at the time of his discharge. The specific diagnostic label given to an individual's condition a decade or more after his discharge from the service may change, but any change does not call into question the application of then existing fitness standards.

6

ABCMR Memorandum of	AR2001058201
Consideration (cont)

DISCUSSION: Considering all the evidence, allegations, and information presented by the applicant, together with the evidence of record, applicable law and regulations, it is concluded:

1. Lacking evidence to the contrary, the Board presumes administrative regularity in the applicant's administrative separation under the provisions of Army Regulation 635-212, for unfitness.

2. Further, the Board concludes the type of discharge directed and the reason therefor were appropriate considering all the facts of the case. There is no evidence to support the applicant's contention that he was under a medical profile due to any wounds received in combat or that he was suffering from a diagnosed PTSD at the time of this discharge.

3. There is no evidence supporting the applicant's contention that he was wounded in action. The specific diagnosis label of PTSD was given to him by the VA some 30 years after his discharge. It used information that is not verified in the record and does not call into question the application of the then existing medical fitness standards used by the Army at the time, which found the applicant medically fit for retention/separation on the date of his discharge. Therefore, the Board finds relief is not warranted based on these issues.

4. In addition, the applicant's record of service shows that he was convicted by a special court-martial and accepted two NJP's prior to being assigned to the RVN and that he accepted another NJP and was convicted by a second special court-martial during his tour of duty in the ROK, subsequent to his short stay in the RVN. Therefore, the Board finds no evidence to suggest that the character of his service was significantly different before or after his tour of duty in the RVN and that would support the theory that his misconduct was the result of suffering from a PTSD due to his combat experiences in the RVN.

5. The applicant's statements of events during his tour of duty in the RVN are also not supported by any evidence of record. He was not medically evacuated from the RVN and there is no evidence to suggest that he was a patient recovering from combat wounds at any time during his first enlistment. Further, he is not listed as a patient recovering from combat wounds in any of the casualty rosters from the RVN maintained at PERSCOM.

6. The applicant's records confirm only that he received the AM, NDSM, VSM, CIB, and Marksmanship Qualification Badges. All other awards shown on his second DA Form 20 and his last DD Form 214 cannot be verified by the official records and appear to be erroneous.

7

ABCMR Memorandum of
Consideration (cont)

AR2001058201

7. The applicant's signature on his DD Form 398, DA Form 20, and his second enlistment contract prepared during the processing for his second enlistment all seem to confirm that he knew that some, if not all, of the information from his prior service was false and/or excluded from the enlistment packet prepared for that second enlistment.

8. The Board finds there is sufficient evidence to conclude that the applicant, more appropriately should have been processed for separation from his second enlistment by reason of fraudulent entry. This would have resulted in his being issued special orders voiding the enlistment and he would not have been given a characterization of service or issued a DD Form 214. However, the separation authority elected to direct his separation by reason of erroneous enlistment and mistakenly issued him a DD Form 214 for the second period of service instead of special orders to void the enlistment. However, this does not change the fact that the information contained in the DD Form 214 issued for this period of service contains entries that cannot be verified by the applicant's official record.

9. In view of the foregoing, there is no basis for granting the applicant's request.

DETERMINATION: The applicant has failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice.

BOARD VOTE:

_____ _____ _____ GRANT

_____ _____ _____ GRANT FORMAL HEARING

_mm_ _fo_ _c_ DENY APPLICATION

Carl W. S. Chun
Director, Army Board for Correction
of Military Records