UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
THOMAS ROBERTS,                         )
                    Plaintiff           )
                                        )
v.                                      )
                                        )    Civil Action No. 05-2430 (ESH)
Hon. FRANCIS J. HARVEY,                 )
Secretary of the Army, et al.           )
                                        )
                    Defendants          )
_____)

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES (1) IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS, IN PART, AND FOR SUMMARY
JUDGMENT AND (2) IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT

Michael W. Dolan, Esq.
    D.C. Bar No. 3384
2021 L Street, N.W.
Suite 204
Washington, D.C.  20036
202/293-2776
*Attorney for Plaintiff*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ..................................................................................................... 1

II. THE ADMINISTRATIVE RECORD ........................................................................ 1

III.  STATEMENT OF FACTS ....................................................................................... 3

IV. ARGUMENT ........................................................................................................... 9

    A. The Complaint Should not be Dismissed ......................................................... 10

        1. Standard of Review for a Motion to Dismiss .......................................... 9

        2. The Court Has Subject Matter Jurisdiction Over Plaintiff's
           Mandamus Claim ................................................................................... 10

        3. Plaintiff's Claims Are Not Barred by any Statute of Limitations ......... 12

        4.  Mr. Roberts' Request for an Upgrade in His Discharge is
           Justiciable ............................................................................................. 15

    B. The Board's Decisions Were Arbitrary, Capricious, an Abuse Of
      Discretion, Unsupported by Substantial Evidence or Otherwise Contrary
      to Law or Regulation ....................................................................................... 19

        1. Standard of Review for Summary Judgment ........................................ 19

        2. Standard of Review under the APA ...................................................... 19

        3. The Board's Decision of September 6, 2001, Was Arbitrary,
           Capricious, an Abuse of Discretion, Unsupported by Substantial
           Evidence or Otherwise Contrary to Law or Regulation ....................... 21

                a. The Board Erred by Failing to Recognize Errors in the
                    1969 Discharge for Unfitness Procedure ................................... 21

                b. The Board's September 6, 2001, Decision is
                    Defective on its Face ............................................................... 28

        4. The Board's May 16, 2002, Decision was Arbitrary, Capricious,
           an Abuse of Discretion, Unsupported by Substantial Evidence or
           Otherwise Contrary to Law and Regulation .......................................... 32

5. The Board's Decisions of January 21 and July 15, 2003, were
   Arbitrary, Capricious, an Abuse Of Discretion, Unsupported by
   Substantial Evidence or Otherwise ContraryTo Law or Regulation ..... 33

6. The Board's March 17, 2005, Decision was Arbitrary, Capricious,
   an Abuse of Discretion, Unsupported by Substantial Evidence or
   Otherwise Contrary To Law or Regulation ........................................... 35

V. CONCLUSION ......................................................................................... 39

## **EXHIBITS**

Exhibit A:  January 30, 2006, letter from NPRC to John E. Howell, Esq.

Exhibit B:  Declaration of John E. Howell, Esq.

Exhibit C:  Army Regulation 614-17 (April 4, 1968)

Exhibit D:  Army Regulation 15-185 (April 3, 2000)

Exhibit E:  Army Regulation 15-185, (March 31, 2006)

# TABLE OF AUTHORITIES

## CASE AUTHORITY

Page

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242 (1986) ..................................................... 19

Arbaugh v. Y & H Corp.,
 __ U.S. __, No. 04-944 (Feb. 22, 2006) ........................................ 10

Blassingame v. Sec'y of the Navy,
 811 F.2d 65 (2d Cir. 1987), rev'd on other grounds after remand,
 866 F.2d 556 (1989) ................................................. 13, 28

Calloway v. Brownlee,
 366 F.Supp.2d 43 (D.D.C. 2005) ................................... 38

Chappell v. Wallace,
 462 U.S. 296 (1983) ................................................ 16, 17

Chevron U.S.A. Inc. v. Natural Res. Def. Council,
 467 U.S. 837 (1984) ................................................ 20, 38

Cone v. Caldera,
 223 F.3d 789 (D.C. Cir. 2000) ...................................... 17

Conley v. Gibson,
 355 U.S. 41 (1957) .................................................. 10

Dep't of the Navy v. Egan,
 484 U.S. 518 (1988) ................................................ 16

* Dickson v. Sec'y of Defense,
 68 F.3d 1396 (D.C.Cir. 1995) ..................................... 13, 20, 32, 38

Dilley v. Alexander ("Dilley I"),
 603 F.2d 914 (D.C. Cir. 1979) ..................................... 15, 39

* Dilley v. Alexander ("Dilly II"),
 627 F.2d 407 (D.C. Cir. 1980) ............................... 11, 15, 18, 39, 40

Dougherty v. U.S. Navy Bd. for Corr. of Naval Records,
 784 F.2d 499 (3d Cir. 1986) ...................................... 13, 14

**\*** Authorities upon which Plaintiff chiefly relies.

Feres v. U.S.,
 340 U.S. 135 (1950) ............................................................................................ 16

Florida Power & Light Co. v. Lorion,
 470 U.S. 729 (1985) ...................................................................................... 1 n. 1

Frizelle v. Slater,
 111 F.3d 172 (D.C.Cir. 1997) ................................................................. 17 n. 7, 20, 38

Geyen v. Marsh,
 775 F.2d 1303 (5th Cir. 1985), aff'd, 849 F.2d 1469 (1988) ..................................... 13, 14

Gilligan v. Morgan,
 413 U.S. 1 (1973) ............................................................................................... 15

Greater Boston Television Corp. v. F.C.C.,
 444 F.2d 841 (1970) ........................................................................................... 37

Guerrero v. Stone,
 970 F.2d 626 (9th Cir. 1992) ............................................................. 11, 13, 15, 18, 39, 40

Hollingsworth v. Balcom,
 441 F.2d 419 (6th Cir. 1971) ............................................................................ 16 n. 6

Homer v. Roche,
 226 F.Supp. 2d 222 (D.D.C. 2002) ......................................................................... 19

Hoskin v. Resor,
 324 F.Supp. 271 (D.D.C. 1971) ..................................................................... 11, 13, 15

Kreis v. Sec'y of the Air Force ("Kreis I"),
 866 F.2d 1508 (D.C. Cir. 1989) ................................................................. 18, 19, 20, 39

Kreis v. Sec'y of the Air Force ("Kreis II"),
 406 F.3d 684 (D.C.Cir. 2005) ..................................................................... 18, 20, 39

Krzeminski v. U.S.,
 13 Cl.Ct. 430 (1987) ........................................................................................... 23
.
Larsen v. U.S. Navy,
 346 F.Supp.2d 122 (D.D.C. 2004) ..................................................................... 10, 18

* Authorities upon which Plaintiff chiefly relies.

Lebrun v. England,
 212 F.Supp.2d 5 (D.D.C. 2002), aff'd per curium, 2003 U.S.App. LEXIS
 3490 (2003) ................................................................................ 11, 13, 14

Lewis v. Sec'y of the Navy,
 1990 WL 454624 (D.D.C. 1990) ................................................................. 13

* Lipsman v. Sec'y of the Army ("Lipsman I"),
 257 F.Supp.2d 3 (D.D.C. 2003) ....................................................... 10, 20, 39

* Lipsman v. Sec'y of the Army ("Lipsman II"),
 335 F.Supp.2d 48 (Sept. 7, 2004) .................................... 8, 9, 34, 35, 36, 37, 39

Martin v. Secretary of the Army,
 455 F.Supp. 634 (D.D.C. 1977) ................................................... 26, 26 n. 8, 40

Miller v. Roche,
 2004 U.S.Dist. LEXIS 27549 (Nov. 4, 2004) ................................................. 19

Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto. Ins.,
 463 U.S. 29 (1983) ............................................................................... 37

Mozur v. Orr,
 600 F.Supp. 772 (E.D. Pa. 1985) ........................................................... 12, 17

Mudd v. Caldera ("Mudd I"),
 26 F.Supp.2d 113 (D.D.C. 1998) ....................................................... 13, 38, 39

Mudd v. Caldera ("Mudd II"),
 134 F.Supp.2d 138 (D.D.C. 2001) ......................................................... 38, 39

Musengo v. White,
 286 F.3d 535 (D.C. Cir. 2002) ................................................................ 17

Nihiser v. White,
 211 F.Supp.2d 125 (D.D.C. 2002) ............................................................. 14

Orloff v. Willoughby,
 345 U.S. 83 (1953) ........................................................................... 16, 18

* Piersall v. Winter,
 435 F.3d 319 (D.C. Cir. 2006) ........................................... 16, 17 n. 7, 19, 20

* Authorities upon which Plaintiff chiefly relies.

Pleus v. Peters,
  1999 U.S. Dist. LEXIS 10065 (D.D.C. June 17, 1999) ................................................... 14

Robinson v. Dalton,
  45 F.Supp.2d 1 (D.D.C. 1998) ................................................................................. 13

* Robinson v. Resor,
  469 F.2d 944 (D.C. Cir. 1972) .................................... 11, 15, 18, 33, 40, 40 n. 1

Smalls v. U.S.,
  87 F.Supp. 2d 1055 (D.Haw. 2000) ................................................................. 14

Smith v. Dalton,
  927 F.Supp. 1 (D.D.C. 1996) ......................................................... 17, 17 n. 7

Smith v. Marsh,
  787 F.2d 510 (10th Cir. 1986) ...................................................... 12, 13, 16, 18

Smith v. Resor,
  406 F.2d 141 (2d Cir. 1969) ....................................................... 16 n. 6, 18, 28

Steel Co. v. Citizens for a Better Environment,
  523 U.S. 83 (1998) ............................................................................................. 10

Swierkiewicz v. Sorema N.A.,
  534 U.S. 506 (2002) ......................................................................................... 10

U.S. ex rel Accardi v. Shaughnessy,
  347 U.S. 260 (1954) ......................................................................................... 28

U.S. v. Cohan,
  43 C.M.R. 309 (1971) ............................................................................ 26, 26 n. 8

U.S. v. Turner,
  45 C.M.R. 130 (1972) ....................................................................................... 26

Van Bourg v. Nitze,
  388 F.2d 557 (D.C. Cir. 1967) ...................................................................... 30

VanderMolen v. Stetson,
  571 F.2d 617 (D.C. Cir. 1977) .............................................. 11, 15, 18, 21, 40

* Authorities upon which Plaintiff chiefly relies.

WAIT Radio v. FCC,
  418 F.2d 1153 (D.C.Cir. 1969) ...................................................................... 38

Walters v. Sec'y of Defense,
  725 F.2d 107 (D.C. Cir. 1983) ...................................................................... 14

* White v. Sec'y of the Army,
  878 F.2d 501 (D.C. Cir. 1989) ................................................ 5 n. 4, 11, 15, 18, 23, 24, 39

Wilson v. Sec'y of the Navy,
  417 F.2d 297 (3d Cir. 1969) ...................................................................... 5 n. 5

## STATUTORY AUTHORITY

* Administrative Procedure Act, 5 U.S.C. § 706 .................................. 1 n. 1, 8, 9, 12, 19, 28

  10 U.S.C. § 628(g)(2) .................................................................................. 19

* 10 U.S.C. § 1552 .............................................................. 5 n. 5, 8, 10, 11, 17, 20, 34, 37, 39

  10 U.S.C. § 1553 ................................................................................... 5 n. 5, 13

* 28 U.S.C § 1331 .................................................................................... 10

  28 U.S.C. § 2401(a) .................................................................................. 9, 12

## REGULATORY AUTHORITY

* Army Regulation 15-185 (February 29, 2000) ........................................... 33, 34, 35, 36, 37

  Army Regulation 15-185 (March 31, 2006) .......................................... 34, 35, 38

  Army Regulation 27-10 (November 26, 1968) ................................................. 26, 26 n. 8, 27

  Army Regulation 614-17 (April 4, 1968) ........................................................... 4

  Army Regulation 635-212 (April 4, 1968) ............................................... 22, 23, 24, 25, 27

\* Authorities upon which Plaintiff chiefly relies.

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed.R.Civ.P. 8(a)(2) ....................................................................................................... 10

Fed.R.Civ.P. 12(b)(1) ................................................................................................... 9, 10

Fed.R.Civ.P. 12(b)(6) ................................................................................................... 9, 10

## <u>GLOSSARY</u>

| | |
|---|---|
| ABCMR | Army Board for the Correction of Military Records |
| ADRB | Army Discharge Review Board |
| APA | Administrative Procedure Act, 5 U.S.C. §§ 701-706 |
| AR | The Administrative Record |
| Board | Army Board for the Correction of Military Records |
| DA Form 20 | Record of Service |
| DD Form 214 | Armed Forces of the US Report of Transfer or Discharge |
| DD Form 398 | Statement of Personal History |
| NJP | Non-judicial Punishment |
| NPRC | National Personnel Records Center |
| PTSD | Post-traumatic stress disorder |
| UCOTH | Under Conditions Other Than Honorable |
| VA | Department of Veterans Affairs |

# I.  INTRODUCTION

Plaintiff, Thomas Roberts, by and through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in opposition to Defendants' Motion to Dismiss, in Part and for Summary Judgment ("Defendants' Memorandum") and respectfully asks this Court to deny Defendant's motion.  Plaintiff also submits this Memorandum of Points and Authorities to support his Cross-Motion for Summary Judgment and respectfully asks this Court to grant Plaintiff's Cross-Motion for Summary Judgment.

# II. THE ADMINISTRATIVE RECORD

It is important for the Court to know what documents were before the Army Board for Correction of Military Records (the "Board" or "ABCMR") when it made its decision in this case.[1]  The Administrative Record ("AR") prepared by Defendants fails to include Exhibits C through J of Mr. Roberts' June 4, 2004, submission to the Board, a total of 51 pages.  Some of the documents that Mr. Roberts tried to submit to the Board, such as certain medical and military records, appear elsewhere in the Administrative Record.  Other important documents submitted by Mr. Roberts, such as his waiver of a discharge hearing, counsel and the right to submit statements in his own behalf, and copies of Army Regulations dating back to the period of Mr. Roberts' service, were not placed in the Administrative Record.  A complete copy of Mr. Roberts' Request for Reconsideration with exhibits -- the document that the Board refused to consider -- is attached to the Complaint as Attachment I.

---

[1] "The task of the reviewing court is to apply the appropriate APA standard of review, 5 U. S. C. § 706, to the agency decision based on the record the agency presents to the reviewing court."  Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985).

On February 19, 2004, the ABCMR responded promptly to Mr. Roberts' request for relevant ABCMR records (AR 42). However, he has been unable to review a complete copy of his military personnel records. Mr. Roberts' request for his military records was received by the National Personnel Records Center ("NPRC") on February 13, 2004. AR 36, 37. A second letter, emphasizing Mr. Roberts need for the records, was sent on April 9, 2004 (AR 38), and a third letter was sent on May 6, 2004 (AR 39). On January 30, 2006, after this case was filed, the NPRC advised that his military records had been sent to the U.S. Army Human Resources Command. See Exhibit A.

Many of the documents appearing in the Administrative Record bear a stamped number "322" in the lower right hand corner. "322" is a designation used by the Department of Veterans Affairs ("VA") Montgomery, Alabama, Regional Office. See Exhibit B, Declaration of John E. Howell, Esq. Although Mr. Roberts has no way of knowing how these so-called "322" documents ended up in his official Military Personnel Records Jacket, it is clear that some, and possibly all, of these documents were submitted to the Board by Mr. Roberts himself. At least one "322" document, the June 6, 1969, recommendation for discharge, in Mr. Roberts official personnel file was submitted by him to the Board and bears his handwritten notes in the margin. See AR 255. Although many of these documents were cited by the Board as evidence of Mr. Roberts' admittedly uneven military record, the fact that Mr. Roberts submitted them to the Board militates against any inference that somehow Mr. Roberts intended to deceive the Board.

The Administrative Record contains three pages (AR 55-57) of an ABCMR decision in response to an unknown applicant that is obviously not Mr. Roberts. However, that portion of an ABCMR decision regarding an incident that occurred thirty-two years after

Mr. Roberts' discharge is nevertheless instructive in that the Board found that a General

Discharge was appropriate for a soldier convicted in a Korean court of aggravated assault.

Unlike Mr. Roberts, that soldier appeared at his discharge hearing represented by counsel.


### III.  STATEMENT OF FACTS

Plaintiff, Thomas Roberts, served in the U.S. Army from July 1967 until July

1969 and from July 1971 to August 1971.  AR 49, 187.  He has been diagnosed and treated

by the VA for chronic and severe post-traumatic stress disorder ("PTSD") owing to

psychological trauma suffered during combat in Vietnam.  AR 97-108.  Mr. Roberts is

seeking judicial review of a March 17, 2005, decision by the ABCMR that ignored the

Request for Reconsideration that he submitted on June 4, 2004.  AR 1.  He also seeks review

of the Board's decision of September 6, 2001, the Board's decision of May 16, 2002, that

relied on the September 2001 decision, and the Board's January 21 and July 15, 2003, denials

of requests for reconsideration.

Mr. Roberts' June 4, 2004, submission to the ABCMR, the first that he

submitted with the assistance of legal counsel, raised new issues and presented new and

material evidence –- issues and evidence that had never before been presented to, or

considered by, the Board.  Plaintiff's submission showed, for example, that the Board relied

upon documents that either did not exist or were not made available to Plaintiff; that a key

Board conclusion was not only not supported, but was actually contradicted, by evidence in

the record; that the 1969 discharge procedure was fatally defective because Plaintiff was

misled into waiving his right to counsel and a hearing; and that the discharge procedure

failed to follow Army regulations in effect at the time.  AR 2-39; Complaint Attachment I.

Mr. Roberts' military service began on July 13, 1967, with his enlistment in the U.S. Army for a period of three years. AR 302. After completing his initial training as a light weapons infantryman, he was ordered to Vietnam as a scout observer on June 17, 1968. AR 249. After seeing combat in Vietnam, and being awarded the Combat Infantryman's Badge (AR 250), he was ordered to Korea on August 28, 1969, under the provisions of Army Regulation 614-17, which authorizes deferments of Vietnam service for soldiers with family members already serving in Vietnam (Mr. Roberts' brother was serving in the Air Force in Vietnam). AR 318. See Exhibit C, Army Regulation 614-17 (April 4, 1968).

On March 28, 1969, Mr. Roberts was confined in Korea to the Eighth Army Stockade. AR 34, 60.[2] On April 17, 1969, while still in confinement, he was convicted by a special court-martial of for various offenses occurring between December 25, 1968, and March 18, 1969. Although two specifications of two charges[3] were dismissed for lack of sufficient evidence, he was convicted of leaving his place of duty without proper authority, violating curfew, stealing Army property, wrongfully appropriating an Army truck, wrongful possession of marijuana, and breaking restriction. On May 7, 1969, and he was sentenced to six months confinement at hard labor. AR 34, 60, 323-325.

On May 13, 1969, after forty-eight days in pre-trial confinement, and awaiting another 132 days of confinement at hard labor, Mr. Roberts waived his right to counsel, a hearing, and the right to submit statements in his own behalf and agreed to be discharged

---

[2]  It is impossible to verify this date from Mr. Roberts' service records because his records inexplicably show no pre-trial or post-trial confinement in 1969, not even for his final court-martial. For example, item 39 of his 1969 DD Form 214 Discharge (AR 49) and item 44 of his DA Form 20, Record of Service, (AR 250) list only his 1968 confinements. However, Mr. Roberts' DA Form 20 does indicate his 6 months sentence (AR 252), and the June 6, 1969 recommendation for discharge indicates that he was assigned to the "Correctional Holding Detachment" on May 14, 1969. AR 255.
[3]  Specification and Charge IV and specification 4 of Charge V were dismissed for lack of sufficient evidence. AR 325. Subsequent references herein to "charges" will include charges as well as specifications to charges.

from the Army for unfitness.  See Complaint, Attach. I, Ex. D (document not in AR).  On

May 18, 1969, according to his field medical file, he may have attempted suicide.  AR 327.

   On July 22, 1969, he was discharged from the Army Under Conditions Other

Than Honorable (UCOTH).[4]  Mr. Roberts' DD Form 214, the Report of Discharge, indicates

that he properly received the National Defense Service Medal, the Vietnam Service Medal,

the Air Medal, and the Combat Infantryman Badge.  AR 49.

   On May 10, 1971, Mr. Robert applied to the Army Discharge Review Board

("ADRB") for an upgrade to his discharge.[5]  AR 237.  On July 28, 1971, Mr. Roberts re-

enlisted in the Army for another three-year period.  AR 199.  Less than one month later, on

August 19, 1971, he was discharged with an Honorable Discharge on the basis of erroneous

enlistment.  AR 214.  On December 18, 1972, the Army Discharge Review Board denied Mr.

Roberts' May 10, 1971, request for an upgraded discharge.  AR 231.

   On May 29, 2001, he applied for an upgraded discharge to the ABCMR.  AR

93.  His application attached VA medical records indicating that he had been diagnosed as

suffering from combat-related PTSD.  He also attached a letter from the Coordinator of his

VA PTSD Clinical Team, who noted that Mr. Roberts' condition was overlooked or

misdiagnosed at the time and that his lack of treatment resulted in "his incarceration,

mistreatment and discharged with other than an honorable discharge, instead of a medical

due to combat related PTSD."  AR 96-97.

---

[4]  See White v. Secretary of the Army, 878 F.2d 501, 502-504 (D.C. Cir. 1989), for a description and
comparison of the five types of Army discharges and the requirements for each.
[5] Unlike the Army Board for Correction of Military Records, which is composed of civilians appointed by the
Secretary of the Army, 10 U.S.C. § 1552(a), the Army Discharge Review Board may be composed of military
members, 10 U.S.C. § 1553.  See, Wilson v. Sec'y of the Navy, 417 F.2d 297 (3d Cir. 1969) (The ["Army
Discharge] Review  Board is to be distinguished from the Correction Board, created pursuant to 10 U.S.C.
§1552.  That statute requires that the Correction Board be composed of civilians ....").  In Mr. Roberts' case, the
Army Discharge Review Board was composed entirely of military members.  AR 230.

In a September 6, 2001, Memorandum of Consideration the Board rejected Mr. Roberts' request for an upgrade of his discharge, finding that he failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice.  AR 83-90.  The Board's decision referred to a second version of Plaintiff's July 22, 1969 DD Form 214, Report of Discharge, that indicated Plaintiff received an Honorable discharge and additional decorations that the ABCMR could not substantiate.  Noting that it received this version of his DD Form 214 "from an unknown source" (AR 86), the ABCMR obviously believed this document to be spurious, and could only have concluded that Plaintiff had something to do with it.  Yet, in spite of repeated requests for his complete military personnel file (AR 36-43), this document (AR 188) was not produced for Mr. Roberts (AR 33-35) until the Administrative Record was filed in this litigation.

The September 6, 2001, decision of the ABCMR also noted that it possessed and relied upon a DD Form 398, Statement of Personal History, prepared in connection with Plaintiff's second enlistment, that did not reflect his prior service.  AR 86.  This document has never been made available to Plaintiff (AR 33-35) in spite of Plaintiff's repeated requests for his complete military personnel file (AR 36-43), and it is not in the Administrative Record.

On May 16, 2002, the ABCMR, noting its decision of September 6, 2001, determined that Mr. Roberts had "failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice."  AR 67-69.  On January 21, 2003, the Board wrote to Mr. Roberts stating that his original application was denied on September 6, 2001, and that the Board staff had reviewed Mr. Roberts' June 10, 2002, application and determined that his case should not be reopened.  AR 47.

On July 15, 2003, the Board wrote again to Mr. Roberts stating that his original application was denied on September 6, 2001, that Plaintiff's first request for reconsideration was "administratively denied" by the staff on January 21, 2003, and that his December 27, 2002, request did not contain evidence sufficient to re-open the September 6, 2001 decision.  AR 45.

On June 4, 2004, Mr. Roberts filed by counsel a Request for Reconsideration reciting that it was the first request that he had filed with the direct assistance of legal counsel.  AR 2.  The request noted that the accompanying twenty-nine page memorandum (AR 3-32) and fifty-four pages of exhibits (Complaint Attach. I) in support of his request raised a number of issues and facts that had never been presented to or considered by the Board.  The June 4, 2004, pleading also:

-- presented evidence showing that the September 6, 2001, ABCMR decision was based on documents such as the version of the DD Form 214 "obtained from an unknown source" that either did not exist or if it did exist was not made available to Mr. Roberts or his attorneys.  AR 14-15.

-- noted that the ABCMR's September 6, 2001, finding that "there is sufficient evidence to conclude that the applicant more appropriately should have been processed for separation from his second enlistment by reason of fraudulent entry" was not only not supported by the record, but actually contradicted by evidence in the record.  For his second enlistment, he received the same service number that he received for his first enlistment.  His DA Form 20 records his prior enlisted service.  AR 15-17.

-- showed that Mr. Roberts' May 13, 1969, waiver of counsel and a hearing was fatally defective because it was secured under misleading terms because he was told that he could receive either a General or a UCOTH Discharge when in fact Army regulations in effect at the time *required* a UCOTH discharge.  A General Discharge was not an option.

-- showed that the Army's 1969 UCOTH discharge must be set aside because it did not follow the requirements of Army Regulations in effect at the

- 7 -

time for the discharge of soldiers.  Namely, the discharge procedure
failed (i) to make required findings with respect to the waiver of
counseling and rehabilitation, (ii) to make the required
recommendation by the unit commander, and (iii) to exclude records
of prior non-judicial punishments.  AR 19-25.

On September 7, 2004, while Mr. Roberts' Request for Reconsideration was

still pending at the ABCMR, Judge Ricardo Urbina of this Court issued a Memorandum

Opinion in Lipsman v. Sec'y of the Army, 335 F.Supp.2d 48 (Sept. 7, 2004) ("Lipsman II"),

finding that subsection 2-15(b) of Army Regulation 15-185 violated the provisions of 10

U.S.C. § 1552, the ABCMR's operating statute, because it permitted ABCMR staff and not

the Board to make decisions identical with those made in Mr. Roberts' applications.  The

Court specifically found that the Board's delegation of actions to its staff was arbitrary or

capricious and not in accordance with law.  Id. at 53.

On March 17, 2005, the Board returned the June 4, 2004, memorandum and

exhibits filed by Mr. Roberts' counsel directly to Mr. Roberts.  AR 1.  The Board's letter

noted that Mr. Roberts' case was considered on September 6, 2001, that no further ABCMR

action is contemplated, that he had exhausted all of his administrative remedies, and that Mr.

Roberts had the option of seeking "relief in a court of appropriate jurisdiction."  Without

citing Lipsman, the Board referred to "a recent court decision" ordering the deletion of

paragraph 2-15b of AR 15-185, and stated that the effect of the decision "now permits an

applicant to request reconsideration of an earlier ABCMR decision if the request is received

within one year of the ABCMR's original decision and it has not been previously

reconsidered."  AR 1.

Mr. Roberts, by counsel, brought this action on December 20, 2005, alleging

that the Board's actions of September 6, 2001, and its subsequent decisions of May 16, 2002,

January 21, 2003, and July 15, 2003, which relied upon the September 6, 2001, decision violated the Administrative Procedure Act, 5 U.S.C. § 706(2)(A) ("APA") because it relied upon documents not in the record and not available to Plaintiff or his attorneys, made conclusions that were either contradicted or not supported by the record, and ignored the Army's failure to follow its own regulations governing the discharge of soldiers.  Complaint at ¶ 31.  Mr. Roberts also alleged that the March 17, 2005, refusal to consider his June 4, 2004, Request for Reconsideration, which presented new issues and new and material evidence, violated the APA.  Complaint at ¶ 33.  Lastly, Mr. Roberts alleged that Board's decisions of January 21, 2003, and July 15, 2003, were made by staff and therefore violated 10 U.S.C. § 1552.  See Lipsman II.  Complaint at ¶ 35.  Mr. Roberts asked that the decisions of the Board be set aside and that the Board be directed to re-characterize Mr. Roberts' 1969 discharge as either Honorable or General.  In the alternative, he asked that the cause be remanded to the Board with instructions to consider the new issues and the new and material evidence supplied by Mr. Roberts' June 4, 2004, submission.

## IV. ARGUMENT

### A. The Complaint Should Not Be Dismissed

Citing Fed.R.Civ.P. 12(b)(1) & (6), Defendants argue that the Plaintiff's mandamus claim should be dismissed for lack of subject matter jurisdiction and that any direct challenge to his discharge or to the ADRB decision is barred by the six-year statute of limitations in 28 U.S.C. § 2401(a).

**1. Standard of Review for a Motion to Dismiss**

Plaintiff has no objection to the standards for subject matter jurisdiction (Rule 12(b)(1)) and failure to state a claim (Rule 12(b)(6)) set forth in subparagraphs IV.A.1(a) & (b) of Defendants' Memorandum, except to note the following with respect to Rule 12(b)(6). "For a complaint to survive a Rule 12(b)(6) motion to dismiss, it need only provide a short and plain statement of the claim and the grounds on which it rests." Lipsman v. Sec'y of the Army, 257 F.Supp.2d 3, 6 (D.D.C. 2003) ("Lipsman I"), citing Fed.R.Civ.P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957). Moreover, a complaint need not establish a prima-facie case. Lipsman I, 257 F.Supp.2d at 7, and Larsen v. U.S. Navy, 346 F.Supp.2d 122, 134 (D.D.C. 2004), both cases citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-14 (2002).

**2. The Court Has Subject Matter Jurisdiction Over Plaintiff's Mandamus Claim.**

This court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. § 1331, with the "federal question" statutes being the APA and 10 U.S.C. § 1552(a). Neither statute limits this Court's authority to direct a result on the merits. Defendants may quarrel with Plaintiff's claim, but they cannot quarrel with this Court's jurisdiction to award it. See, Steel Co. v. Citizens for a Better Environment, 523 U.S. 83, 89 (1998) ("It is firmly established in our cases that the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, *i.e.* the courts' statutory or constitutional *power* to adjudicate the case." (citations omitted, emphasis in original); Arbaugh v. Y & H Corp., __ U.S. __, No. 04-944 (Feb. 22, 2006) (slip op. at 9) (quoting Steel Co. and

describing cases that confuse the "subject-matter jurisdiction/ingredient-of-claim-for relief

dichotomy as 'drive-by jurisdictional rulings' that have no precedential effect").

There is no question that this court has the authority to direct the ABCMR to

upgrade Plaintiff's discharge.  See, e.g., White v. Sec'y of the Army, 878 F.2d 501, 504, 506

(D.C. Cir. 1989) (seventeen years after UCOTH discharge, remand to Sec'y with instructions

to re-characterize "discharge as honorable or general, using the standards applicable to those

discharged at the expiration of the normal term of their service"; soldier had "two court-

martial convictions, ...eight AWOL incidents ... and his inevitable conviction by the third

court-martial for his most recent AWOL"); Dilley v. Alexander, 627 F.2d 407, 413 (D.C. Cir.

1980) ("Dilly II") ("The first step ... toward implementation of this relief is for the Secretary

of the Army to order the correction of appellants' military records in accordance with our

opinion.  While we recognize that the terms of 10 U.S.C § 1552(a), authorizing the correction

of records by the Secretary, are permissive, we cannot agree with the Army's contention that

correction in this instance is within the 'discretion' of the Secretary.  Although the district

court remanded to the Secretary for implementation of relief, this relief must follow our

opinion, which we make more explicit here"); VanderMolen v. Stetson, 571 F.2d 617, 625,

626-27 (D.C. Cir. 1977) (because Air Force did not provide required procedural protections,

discharge negated and officer reinstated on active duty); Robinson v. Resor, 469 F.2d 944

(D.C. Cir. 1972) (remand to District Court "for entry of an appropriate order insuring that

appellant ... will not be given a discharge under other than honorable conditions"); (Guerrero

v. Stone, 970 F.2d 626, 638 (9th Cir. 1992) (district court directed to issue writ of mandamus

to Sec'y of the Army to correct records of veteran); Hoskin v. Resor, 324 F.Supp. 271

(D.D.C. 1971) (under admittedly unique facts, plaintiffs granted Honorable discharges in

U.S. Army fifty years after service in the Russian Railway Service Corps).  Of course, all of these decisions dealt with what Defendants characterize as "discretionary military decisions." See also, <u>Smith v. Marsh</u>, 787 F.2d 510, 511 (10th Cir. 1986); <u>Mozur v. Orr</u>, 600 F.Supp. 772 (E.D. Pa. 1985) discussed in part IV.A.4 <u>infra</u>.

### 3.  Plaintiff's Claims are not Barred by any Statute of Limitations.

Mr. Roberts is challenging the September 2001 and subsequent ABCMR denials.  He has not sought review, nor can his Complaint be construed to seek review, of the 1973 decision of the Army Discharge Review Board, which is an entity completely separate from the ABCMR.  See, <u>supra</u> note 4.  Defendants' statute of limitations argument fails to make clear that "judicial review of a claim of wrongful discharge is distinct and independent from judicial review of a claim challenging the Correction Board's review of the underlying discharge decision."  <u>Lebrun v. England</u>, 212 F.Supp.2d 5, 19 (D.D.C. 2002), <u>aff'd per curium</u>, 2003 U.S.App. LEXIS 3490 (2003).

To the extent that Defendants argue that the six-year statute of limitations in 28 U.S.C. § 2401(a) bars a direct challenge to the 1969 and 1971 discharges, they have misconstrued the Complaint, which does not challenge the Army's 1969 and 1971 decisions directly, but rather the ABCMR's refusal in 2001, 2002, 2003, and 2005 to correct those decisions.  See Complaint ¶¶ 30 - 35.

To the extent Defendants assert that the 28 U.S.C. § 2401(a) six-year statute of limitations runs, not from the date of the administrative action complained of, but from the date of the discharge, their argument ignores a number of decisions in this Circuit.  As this Court noted in <u>Lebrun</u>, 212 F.Supp.2d  at  17:

> While the District of Columbia Circuit has not directly considered this issue, it is evident that of those Circuit Courts that have addressed the question, an overwhelming majority have found that the right to obtain judicial review of a Board of Corrections' decision under the APA ... accrues at the time of the final agency decision, or the exhaustion of all administrative remedies, rather than at the time when the underlying discharge ... occurred. Blassingame v. Sec'y of the Navy, 811 F.2d 65, 71 (2d Cir. 1987), rev'd on other grounds after remand, 866 F.2d 556 (1989); Dougherty v. U.S. Navy Bd. for Corr. of Naval Records, 784 F.2d 499, 501-02 (3d Cir. 1986); Geyen v. Marsh, 775 F.2d 1303, 1306 (5th Cir. 1985), aff'd, 849 F.2d 1469 (1988);  Smith v. Marsh, 787 F.2d 510, 512 (10th Cir. 1986) (footnote omitted).

See also, Robinson v. Dalton, 45 F.Supp.2d 1 (D.D.C. 1998): (petition to the Board for Correction of Naval Records to remove a sixteen-year letter of reprimand not time barred); Lewis v. Sec'y of the Navy, 1990 WL 454624 (D.D.C. 1990) ("the right to obtain APA review of the decision of a military appeals board accrues at the time of the board's decision rather than at the time of the underlying discharge.").

Of course the time between the offending military record and the application to the Board is immaterial.  See, e.g., Dickson v. Sec'y of Defense, 68 F.3d 1396, 1399-1400 (D.C.Cir. 1995) (three plaintiffs: 20, 30 & 22 years); Guerrero, 970 F.2d. at 638, (50 years); Hoskin, 324 F. Supp at 277 (D.D.C. 1971) (50 years, claim apparently made directly to Sec'y of Army rather that ABCMR); Mudd v. Caldera ("Mudd I"), 26 F.Supp.2d 113, 117 (D.D.C. 1998) (121 years).  The statutory scheme itself sets up the possibility that applications can be made long after the date of the offending discharge.  Under 10 U.S.C. § 1553(a), applications to the ADRB can be made within 15 years of the date of discharge.  After 15 years have elapsed, applicants turn to the ABCMR, as Mr. Roberts did.  AR 79.  Were the six-year statute to run from the date of discharge, any ADRB or ABCMR rulings after that period would be beyond the reach of judicial review.  A review or corrections board that received an application the day after discharge could insulate itself from judicial review merely by taking

- 13 -

six years to complete its review.  See Pleus v. Peters, 1999 U.S. Dist. LEXIS 10065 (D.D.C. June 17, 1999) ("Under defendant's reading of the statute of limitations, if the review board were to need more than six years to decide the case, plaintiff would be barred from  bringing his action in federal court.  This would be an undesirable result....").   Moreover, as the court in Lebrun pointed out, "since an action for correction of records involves judicial review based on the administrative record, the statute of limitations should begin to run when the administrative record is complete.  That is, the action is not ripe for review until the correction board has rendered its final decision."  212 F.Supp. 2d at 21 (quoting Smalls v. U.S., 87 F.Supp. 2d 1055 (D.Haw. 2000) and citing Dougherty, 784 F.2d at 501.)

Defendants' statute of limitations argument cites Geyen v. Marsh, 775 F.2d 1303 (5th Cir. 1985), aff'd, 849 F.2d 1469 (1988) and Walters v. Sec'y of Defense, 725 F.2d 107 (D.C. Cir. 1983).  However, as noted in the above quotation from Lebrun, Geyen holds that an action for agency review accrued when the ABCMR rendered its decision.  See, Geyen, 775 F.2d 1303.  As for Walters, the footnote omitted from the above Lebrun quotation notes: "This Court has not overlooked Walters ..., where the District of Columbia Circuit found that a class action seeking to upgrade discharges was barred by the statute of limitations.  However, the judicial review that was being sought there was the underlying discharge and not of an agency's review of the discharge decision."  Lebrun, 212 F.2d at 17 n.11.  Nihiser v. White, 211 F.Supp.2d 125 (D.D.C. 2002), cited by Defendants, also holds that the six-year period runs from the ABCMR denial, not the date of discharge.  Major Nihiser's problem was waiting six years after the ABCMR denial to challenge the decision. Id. at 127.

**4.  Mr. Roberts' Request for an Upgrade in his Discharge is Justiciable.**

Defendants argue that because courts should defer to military decisions, Mr.

Roberts' request for the Court to upgrade his discharge should be dismissed as non-

justiciable.  However, this argument is contradicted by the cases -- <u>White</u>, <u>Dilley II</u>,

<u>Vandermolen</u>, <u>Robinson v. Resor</u>, <u>Guerrero</u>, and <u>Hoskin</u> -- cited by Plaintiff <u>supra</u> part

IV.A.2. in which courts ordered upgraded or specific discharge-related actions.

In <u>Dilley v. Alexander</u>, 603 F.2d 914 (D.C. Cir. 1979) ("<u>Dilley I</u>"), this Circuit

found the ABCMR's actions contrary to law and ordered appellants reinstated to active duty.

Recognizing the restricted role of courts with respect to the internal affairs of the military, the

<u>Dilley I</u> court observed:

> This logic is wholly inappropriate, however, when a case presents an issue
> that is amenable to judicial resolution.  It is a basic tenet of our legal system
> that a government agency is not at liberty to ignore its own laws and that
> agency action in contravention of applicable statues and regulations is
> unlawful.  The military departments enjoy no immunity from this proscription.
> It is the duty of the federal courts to inquire whether an action of a military
> agency conforms to the law, or is instead arbitrary, capricious, or contrary to
> the statutes and regulations governing that agency (citations omitted).  <u>Id</u>. at
> 920.

Before remanding to the district court for an order insuring that appellant

would not be given a UCOTH Discharge, this Circuit in <u>Robinson v. Resor</u>, 469 F.2d  at 949

(D.C. Cir. 1972), acknowledged limited review of military service's actions, but nevertheless

found those actions "indefensible by any acceptable standard of due process and elemental

justice."

Defendants cite <u>Gilligan v. Morgan</u>, 413 U.S. 1 (1973), which presented "a

broad call on judicial power to assume continuing regulatory jurisdiction over the activities

of the Ohio National Guard" and "a judicial evaluation of the appropriateness of the 'training

weaponry and orders' of the Ohio National Guard." Id. at 5.  Another cited case by

Defendants, Orloff v. Willoughby, 345 U.S. 83 (1953), dealt with the habeas corpus petition

of a lawful inductee who sought a discharge from active duty because he was not assigned

the duties nor the rank to which he claimed entitlement.[6]  Dep't of the Navy v. Egan, 484

U.S. 518 (1988) dealt with whether the Merit Systems Protection Board could review the

Navy denial of a security clearance of a civilian working on Navy nuclear submarines.

All of this is a bit remote from a court order directed at a civilian agency

within the Deptartment of the Army.  In Piersall v. Winter, 435 F.3d 319, 323 (D.C. Cir.

2006), involving a challenge by an officer, presumably on active duty, to a correction board

decision not to reverse the effects of a non-judicial punishment, this Circuit dispensed with a

non-justiciability argument: ("...we do know that the principle forbidding judicial

interference with military decisions, which principle underlies Feres [v. U.S., 340 U.S. 135

(1950)] , Chappell [v. Wallace, 462 U.S. 296 (1983)], and related cases, does not preclude

review under the APA of decisions of military boards of correction." Id. at 323).  Although

the court declined to proceed to the merits and chose to remand to the district court, it

obviously believed that it could have proceeded to the merits:  "The district court, having

dismissed the case for lack of jurisdiction, did not have the benefit of briefing ....  Therefore

we shall remand the matter to the district court without reaching the merits of Piersall's

case."  435 F.3d at 325 .

In Smith v. Marsh, 787 F.2d 510, 511 (10th Cir. 1986), the court upheld the

---

[6]  Other courts have permitted habeas corpus petitions of service members.  See, e.g., Hollingsworth v. Balcom, 441 F.2d 419 (6th Cir. 1971) (habeas petition of a conscientious objector resulted in remand to the service to insure compliance with Defense Department regulations); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969) (habeas petition by reservist called to active duty is justiciable and should be treated as an action for mandamus under 28 U.S.C. §1361).

trial court's order to the Army to issue the plaintiff an Honorable discharge.  In <u>Mozur v. Orr</u>, 600 F.Supp. 772 (E.D. Pa. 1985), the service member argued for a direct order to the Air Force Board for Correction of Military Records.  Although the court thought remand was a better route, it acknowledged its authority to order the relief requested:  "In this situation, the court may either look to the record as a whole, without giving much deference to the conclusion of the Board, to determine whether the plaintiff should be awarded the relief requested ... or remand the matter to the AFBCMR for reconsideration ...." <u>Id</u>. at 783.  <u>Mozur</u> was quoted by this Court in <u>Smith v. Dalton</u>, 927 F.Supp. 1, 29 (D.D.C. 1996) for an identical holding.

       <u>Chappell v. Wallace</u>, 462 U.S. 296 (1983), cited by Defendants for the notion that courts should be hesitant to intrude on military affairs, nevertheless quoted 10 U.S.C. § 1552(a), the statute before this Court, observing that "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." <u>Id</u>. at 303.

       It should be remembered that Mr. Roberts is a civilian; directing the Army to upgrade his discharge will not interfere with military personnel decision-making.  In the last section of their Memorandum, Defendants cite <u>Musengo v. White</u>, 286 F.3d 535 (D.C. Cir. 2002) and <u>Cone v. Caldera</u>, 223 F.3d 789 (D.C. Cir. 2000).  In both of these cases, officers who were apparently on active duty challenged their officer evaluation reports.  Although active duty officers have obtained reversal of correction board decisions not to alter their personnel records,[7] in terms of interference with the military, these challenges are admittedly much more troublesome than the situation presented by a civilian such as Mr. Roberts trying

---

[7]   <u>See, e.g.</u> <u>Piersall</u>, 435 F.3d at 325; <u>Frizelle v. Slater</u>, 111 F.3d 172, 177 (D.C.Cir. 1997); <u>Smith v. Dalton</u>, 927 F. Supp. 1 (D.D.C. 1996).

to update a thirty-seven year-old discharge.  Nor is Mr. Roberts seeking a commission in the

Army.  See Larsen v. U.S. Navy, 346 F.Supp.2d 122, 127 (D.D.C. 2004) ("Although the

court realizes the importance of letting the Navy run the Navy [citing Orloff], the court finds

it difficult to comprehend what an allegedly unconstitutional practice in hiring Navy

chaplains has to do with 'operational readiness.'").

       Defendants also cite Kreis v. Sec'y of the Air Force, 866 F.2d 1508 (D.C. Cir.

1989)("Kreis I"), where an active duty officer's claim for retroactive promotion was held

non-justiciable: "To grant such relief would require us to second-guess the Secretary's

decision about how best to allocate military personnel in order to serve the security needs of

the nation."  However, the court declared that it had jurisdiction "to evaluate, in light of

familiar principles of administrative law, the reasonableness of the Secretary's decision not

to take certain corrective action with respect to [the officer's military] record."  Id. at 1511.

The officer's claim worked its way to back the D.C. Circuit where, in Kreis v. Sec'y of the

Air Force, 406 F.3d 684, 686 (D.C.Cir. 2005)("Kreis II"), the court again sent the case back

to the Board after declaring that deference to military is not required if the "issue before the

court does not involve a military judgment requiring military expertise, but rather review of

the Board's application of a procedural regulation governing its case adjudication process."

       This Court has jurisdiction to upgrade Mr. Roberts' discharge whether by

mandamus (See, e.g., Guerrero, 970 F.2d at 639; Smith v. Resor, 406 F.2d at 147) or a

remand to Defendants with instructions to re-characterize the discharge as honorable or

general (See, e.g., White at 878 F.2d 504, 506; Smith v. Marsh, 787 F.2d at 511; Dilley II,

627 F.2d at 413); VanderMolen, 571 F.2d at 625, 626-27); Robinson v. Resor, 469 F.2d at

952).

**B. The Board's Decisions Were Arbitrary, Capricious, an Abuse of Discretion, Unsupported by Substantial Evidence or Otherwise Contrary to Law or Regulation.**

**1. Standard of Review for Summary Judgment.**

Plaintiff has no objection to the standards for summary judgment set forth in subparagraphs IV.B.1 of Defendants' Memorandum, except to note that in ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**2. Standard of Review Under the APA.**

As this Circuit has noted: "These are not uncharted waters. We have many times reviewed the decisions of boards for correction of military records 'in light of familiar principles of administrative law,'" Piersall, 435 F.3d at 321, (quoting Kreis I, 866 at 1511)(citations omitted). The court in Piersall went on to note: "We are aware of no reason, therefore, to reconsider the well-settled rule that the decisions of boards for correction of military records are subject to review under the APA." Id. at 324.

The amount of deference that the court should extend to Board decisions is extremely limited. Congress determined that corrections boards be composed of civilians (see 10 U.S.C. § 1552(a)); the boards do not make military decisions. "That the Court is deferential does not mean that it is a rubber stamp of approval. 'The military's discretion may be broad, but ...it is not boundless.' Homer [v. Roche, 226 F.Supp. 2d 222, 226 (D.D.C. 2002)] (examining the standard of review under 10 U.S.C. § 628(g)(2))." Miller v. Roche, 2004 U.S. Dist. LEXIS 27549 (Nov. 4, 2004). This Circuit's observation in Piersall, 435

F.3d at 323, is applicable to Mr. Roberts' case: "The military justice system ... is not under review in this case; Piersall challenges not the decision of a military court or even of his commanding officer but the decision of a civilian administrative board ...."

Although <u>Kreis I & II</u> involved a promotion for an active duty officer, the court in <u>Kreis II</u>, 406 F.3d at 686, observed that no deference to the military is required if the "issue before the court does not involve a military judgment requiring military expertise, but rather review of the Board's application of a procedural regulation governing its case adjudication process."

Defendants cite <u>Frizelle</u>, <u>Kreis</u>, <u>Dickson</u> and <u>Piersall</u> for the proposition that APA review of military records decisions is limited. Yet, in spite of whatever deference was paid to the military, all of these decisions ultimately resulted in a remand to the corrections board for further proceedings.

Nor is the Board decision entitled to agency deference under <u>Chevron U.S.A. Inc. v. Natural Res. Def. Council</u>, 467 U.S. 837, 866 (1984). See <u>Lipsman I</u>, 257 F.Supp.2d at 8 (because 10 U.S.C. § 1552(a) applies to all of the service departments, "resolving the parties' dispute over the proper application of <u>Chevron</u> is unnecessary in light of this circuit's precedent regarding statutes that are implemented by multiple agencies. When an agency shares responsibility for the administration of a statute with other agencies, the court owes the agency's statutory interpretation no <u>Chevron</u> deference." (citations omitted)).

**3.  The Board's Decision of September 6, 2001, Was Arbitrary, Capricious, an Abuse Of Discretion, Unsupported by Substantial Evidence or Otherwise Contrary to Law or Regulation.**

The Board's September 6, 2001, decision is important because it clearly influenced the Board's subsequent decisions to deny Mr. Roberts' requests for reconsideration.  As set forth in Plaintiff's June 4, 2004, submission to the Board, and as summarized below, the errors in the September 6, 2001, decision fall into two categories. First, the Board failed to recognize the errors in the procedures used to discharge Mr. Roberts in 1969 for unfitness.  Second, the Board's September 6, 2001, decision was defective on its face as evidenced by its Memorandum of Consideration.  A more detailed account of Mr. Roberts' arguments appears in his June 4, 2004, submission to the Board.  See AR 3-32; Complaint Attach. I.

**a.  The Board Erred by Failing to Recognize Errors in the 1969 Discharge for Unfitness Procedure.**

The Board's decision of September 6, 2001, violated the APA because it failed to recognize that the 1969 discharge of Mr. Roberts violated the Army's own regulations governing discharges.  As this Court noted in <u>VanderMolen</u>, 571 F.2d at 624: "It is, of course, a fundamental tenet of our legal system that the Government must follow its own regulations.  Actions by an agency of the executive branch in violation of its own regulations are illegal and void."  Mr. Roberts' June 4, 2004, Request for Reconsideration pointed out that the Board's decision failed to note that the Army misapplied its own regulations to the following facts.

On March 28, 1969, Mr. Roberts was in Korea, confined to the Eighth Army Stockade. AR 34, 60. On April 17, 1969, while still in confinement, Mr. Roberts was tried by special court-martial for various offenses occurring between December 25, 1968, and March 18, 1969. His convictions for leaving his place of duty without proper authority, violating curfew, stealing Army property, wrongfully appropriating an Army truck, wrongful possession of marijuana, and breaking restriction were approved on May 7, 1969. He was sentenced to six months confinement at hard labor. AR 34, 60, 323-325.

Mr. Roberts recalls being told by the defense counsel at his court-martial, which Mr. Roberts believed was a special court-martial that did not have the authority to discharge him, that his command would recommend a discharge proceeding and that most likely he would receive a General Discharge. AR 34.

After forty-eight days in pre-trial confinement, and awaiting another 132 days of confinement at hard labor, halfway around the world from home, Mr. Roberts, on May 13, 1969, waived his right to counsel, a hearing, and the right to submit statements in his own behalf and submitted to a proceeding to discharge him from the Army for unfitness under the provisions of Army Regulation 635-212. The waiver specifically recited that he could receive either a General or a UCOTH Discharge. See Complaint, Attach. I, Ex. D (document not in AR). On May 18, 1969, according to his field medical file, Mr. Roberts may have attempted suicide. AR 327.

In other words, Mr. Roberts, sitting in his cell in Korea, thought that by waiving his right to counsel and a hearing, he was risking either a General or a UCOTH Discharge, and he was told by the defense counsel at his court-martial that most likely would receive a General Discharge. AR 34. However, in reality, and as the Board subsequently

recognized (AR 88), a General Discharge was not available because paragraph 4a of Army

Regulation 635-212, in effect at the time, provided that "an individual separated by reason of

unfitness will be furnished an undesirable discharge" except in special situations for which

Mr. Roberts was not eligible.  See Complaint, Attach. I, Ex. G (document not in AR).  The

Board knew that a General Discharge was not an option because its memorandum of

September 6, 2001, points out that because Mr. Roberts was discharged under paragraph

6a(1) of Army Regulation 635-212 a "UD" (undesirable or UCOTH discharge) "was

normally considered appropriate."  AR 88.  Therefore, the Board erred when it failed to

recognize that Mr. Roberts' waiver of his right to counsel and a hearing was not a valid

waiver.  Of course, written waivers of due process and counsel should be strictly construed.

See, <u>Krzeminski v. U.S.</u>, 13 Cl.Ct. 430, 438 (1987) ("Waivers of rights must be voluntary,

knowing, and intelligent acts done with sufficient awareness of the relevant circumstances

and *likely consequences*" (emphasis supplied)).

        Ironically, the misleading waiver of counsel was the type of peril from which

counsel could have protected him.  Notably, less than a year later, AR 635-212 was amended

to permit a withdrawal of a waiver at any time prior to the date the discharge is approved.

See Change 9 to AR 635-212, dated March 13, 1970, Complaint, Attach. I, Ex. H (document

not in AR).

        This Circuit has already ordered the Board to upgrade the discharge of a

soldier in circumstances similar to those of Mr. Roberts.  In <u>White v. Secretary of the Army</u>,

878 F.2d 501 (D.C. Cir. 1989), a soldier facing his third special court-martial received

erroneous advice from his defense counsel that the court-martial could result in a bad conduct

or dishonorable discharge.  Acting on the erroneous advice, the soldier who had "committed

a substantial number of infractions," including being absent without leave eight times for a total of 205 days, requested separation from the Army for the good of the service, and was given an Undesirable Discharge (now known as a UCOTH Discharge, see White, 878 F.2d at 502-503 and n. 5). Seventeen years later, this Circuit ordered Mr. White's discharge upgraded, finding that "since appellant's undesirable [UCOTH] discharge is fatally flawed and cannot be sustained, the only remedy available now that is practical and appropriate is to treat him as if he had completed his full term, and to require the Army to give him either an honorable or a general discharge." Id. at 506.

In Mr. Roberts' case, there were other administrative errors that should have been recognized by the Board. For example, on June 6, 1969, a Military Police correctional officer, Lt. Raymond Reass, recommended Mr. Roberts' discharge under Army Regulation 635-212 to the Commanding General, stating: "In view of this soldier's record of disciplinary actions, request waiver of counseling and (further) transfer for rehabilitation" AR 254 - 257 (AR 256 and 257 are transposed). In an undated "Action," the Commander of the Eighth Field Army Support Command, noting the correctional officer's recommendation that the counseling and further rehabilitation required by Army Regulation 635-212 be waived, ordered an Undesirable (UCOTH) Discharge. AR 228.

However, paragraph 7a of Army Regulation 635-212, in effect at the time, required that service members discharged under paragraph 6a(1) must receive counseling, and a specific memorandum made of that fact. Paragraph 7b(2) required rehabilitation through reassignment. Paragraph 7c(2) and (3) provided that counseling and rehabilitation can only be waived by the general court-martial authority "when he determines that further duty of the individual will, in his best judgment, create serious disciplinary problems or a

hazard to the military mission or to the individual." See Complaint, Attach. I, Ex. G

(document not in AR). No waiver containing the specific findings described in paragraph

7c(2) and (3) of Army Regulation 635-212, in effect at the time, that counseling and

rehabilitation would create serious discipline problems or a hazard to the military mission or

to the individual, appears in the AR or in any other part of the record of this case.

Paragraph 10 of Army Regulation 635-212, in effect at the time, required the

individual's unit commander to initiate the discharge process: "The unit commander of the

individual will recommend action under this regulation ...." Paragraph 12 requires the

individual's commander to forward a "Commanding officer's report" through the appropriate

intermediate commander, if appropriate, to the general court-martial convening authority.

See Complaint, Attach. I, Ex. G (document not in AR). However, the discharge

recommendation prepared by Correctional Officer Reass is not labeled a "commanding

officer's report" and is signed by Lt. Reass as Mr. Roberts' "correctional officer," not

"commanding." AR 254 - 257 (256 and 257 are transposed). There is no indication in the

record that Lt. Reass ever commanded a unit to which Mr. Roberts was assigned, or that the

recommendation ever reached the general court-martial authority through the appropriate

intermediate commander.

Correctional Officer Reass's recommendation to General Holm was reviewed

by the Staff Judge Advocate, Lt. Col. George Taylor, Jr., who appended records of two

separate non-judicial punishments under Uniform Code of Military Justice Article 15 that

Mr. Roberts received on March 5 and April 22, 1968, while in basic airborne training at Ft.

Benning, Georgia. AR 256 (AR 256 and 257 are transposed). These records of non-judicial

punishments were considered by the discharging authority in spite of the fact that Mr.

Roberts had been transferred several times subsequent to the imposition of these two separate

non-judicial punishments both of which had been imposed more than one year earlier.  AR

249.  This would have been a clear violation of Army Regulation 27-10, in effect at the time,

which specifically forbade the mention of one-year-old or older non-judicial punishments in

a proceeding against a soldier if the individual had been subsequently transferred and one

year had elapsed.  As this Court observed in Martin v. Secretary of the Army, 455 F.Supp.

634, 637 (D.D.C. 1977):  "Both U.S. v. Cohan, 43 C.M.R. 309 (1970) and U.S. v. Turner, 45

C.M.R. 130 (1972), have interpreted Regulation 27-10 as forbidding mention of an

individual's non-judicial punishment in a proceeding against him whenever he has been

subsequently transferred and (a) one year has elapsed, (b) punishment has been executed, and

(c) and appeal of the punishment has been fully resolved.  Considering a claim for back pay,

the court in Martin applied paragraph 3-15(d) of the 1968 version of the regulation to

overturn a 1971 discharge proceeding.[8]  In a passage that directly applies to Mr. Roberts'

predicament, the U.S. Court of Military Appeals noted in U.S. v. Cohan, 43 C.M.R. 309, 312

(1971):

> Indisputably, transfer is important to the question of retention or destruction
> of the record [of non-judicial punishment].  It is especially important to
> persons new to the military who might be expected to experience difficulty in
> adjusting from civilian life to the rigors of recruit training, and whose transfer
> from a temporary unit to a permanent organization commonly occurs in a
> period of less than a year.  Such persons might hope to make a new start in
> their new organizations....

---

[8] Army Regulation 27-10 (26 Nov. 1968) was amended twenty-one times between its Jan. 1, 1969, effective
date and 1981.  At least one change, Change 17, incorporated all prior changes.  Because Mr. Roberts has been
unable to locate a copy of the version in force in early 1969, he must rely on the text as reprinted in U.S. v.
Cohan, 43 C.M.R. 309, 311 (1971).  The facts of that case indicate that the version quoted therein, which also
was applicable to the facts in Martin v. Secretary of the Army, 455 F.Supp. 634, 637 (D.D.C. 1977), remained
unchanged as late as September 1969, which would easily include the period applicable to Mr. Roberts' case.

Of course, this same principle -- that soldiers be given the opportunity to transfer to another unit -- is the reason that paragraph 7c of Army Regulation 635-212 provided that specific findings must be made before a commander can waive a transfer for rehabilitation.  See Complaint, Attach. I, Ex. G (document not in AR).

The September 6, 2001, Board decision recites that "On 10 February 1969, the applicant's commander initiated a recommendation to bar him from reenlistment and cited the applicant's conviction by a special court-martial and three NJPs [non-judicial punishments] as the basis for the action.  On 25 March 1969, the appropriate authority approved the imposition of the bar to reenlistment."  AR. 85.  The Administrative Record contains a March 25, 1969, approval of what appears to be a February 10, 1969, recommendation (AR 265), and Defendants' Material Fact No. 8 refers to a February 10, 1969, recommendation; however, no February 10, 1969, recommendation appears in the Administrative Record.  The Administrative Record does contain a February 5, 1969, recommendation, but that recommendation only mentions one non-judicial punishment.  AR 320.  Of course, if the recommendation referred to three non-judicial punishments -- and the Board on September 6, 2001, thought that it did -- the bar to re-enlistment would be in error because, as noted above, AR 27-10 forbade the use of a record of non-judicial punishment in a proceeding against an individual after the passage of one year and the individual has been subsequently transferred.

Moreover, the commander's recommendation for a bar to re-enlistment that does appear in the Administrative Record (AR 320) is defective because it relies on a "pending court-martial" that had, at that point not even occurred.  At that point in time, more than two months before his court-martial, Mr. Roberts' was entitled to a presumption of

innocence, and indeed, two of the charges were dismissed for lack of sufficient evidence. See n. 2 supra; AR 325.  Accordingly,  the purported bar to re-enlistment was a legal nullity, either because it relied upon two non-judicial punishments in violation of Army Regulation 27-10 or because it relied on a court-martial that not only had not taken place, but after which two of the charges were dismissed for lack of sufficient evidence.  In either event, the bar would have been ineffective to prevent Mr. Roberts' re-enlistment, and the Board erred by ignoring that fact.

"It is axiomatic that an agency ... must scrupulously observe its own rules, regulations, and procedures. ... With respect to the armed forces, this requirement 'does not involve any undue interference with the proper and efficient operation of our military forces because we require only that the Army carry out the procedures and regulations it created itself.'" Blassingame v. Secretary of the Navy, 866 F.2d 556, 560 (2d Cir. 1989), citing U.S. ex rel Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954) and quoting Smith v. Resor, 406 F.2d 141,146 (2d Cir. 1969).

**b.  The Board's September 6, 2001, Decision is Defective on its Face.**

As Mr. Roberts' June 4, 2004, Request for Reconsideration points out, the Board's September 6, 2001, decision was manifestly and clearly erroneous because it relied on documents not contained in the record and not available to the applicant and made conclusions not supported by the record, a clear violation of the APA. (AR 3-32; Complaint, Attach. I).

Mr. Roberts' June 4, 2004, Request for Reconsideration noted that the Board relied upon two documents that did not appear in the VA copy of his service records and

which were not made available to him in spite of his repeated attempts to obtain access to his

service records.  AR 12-15.  One of these documents, the so-called alternate version of Mr.

Roberts' 1969 DD Form 214, appears in the Administrative Record at AR 188.  The other

document relied upon by the Board, the DD Form 398, Statement of Personal History,

supposedly signed by Mr. Roberts when he re-enlisted, has still not been made available by

Defendants.  Mr. Roberts insists that he has seen neither document.  AR 34-35.  Of course, to

the extent that the Board relied on this document -- and a fair reading of the Board's

memorandum indicates that it did -- the Board's decision of September 6, 2001 was arbitrary,

capricious, an abuse of discretion, and otherwise not in accordance with the law.

  Mr. Roberts' June 4, 2004, Request for Reconsideration also points out that

the September 6, 2001, Board decision was based on factual determinations that were either

contradicted or not supported by the record.  AR 15-17.  Both the Defendants' Memorandum

(pp 2-4; 16-18) and the September 2001 Board decision (AR 83-90) portray Mr. Roberts as a

miscreant and imply that he somehow manipulated an alternate version of his 1969 UCOTH

Discharge or DD Form 214 and his 1971 re-enlistment documents.  Plaintiff has alleged that

the Board obviously believed that the so-called "alternate" discharge or DD Form 214 that it

received from "an unknown source" was spurious and could only have concluded that Mr.

Roberts had something to do with it.  See Complaint ¶18.  In spite of Defendants' protests

that the Board made no conclusions regarding the alternate DD Form 214, their

Memorandum spends an inordinate amount of time describing the alternate document, and

both the Board's September 1971 decision and Defendants' Memorandum imply that Mr.

Roberts somehow concealed his UCOTH discharge when he re-enlisted on July 28, 1971.

Several observations are in order.

First, the 1969 UCOTH DD Form 214 (AR 49) may have been found "upon review of Plaintiff's records" as Defendants' Memorandum states somewhat ominously (p. 16), but it clearly was included with Mr. Roberts' initial application to the Board (AR 48). Not only has he never tried to conceal his UCOTH Discharge, he has referred to it or included it in all of his communications with the Army. Second, on May 10, 1971, less than ten months after his UCOTH Discharge and eleven weeks before his re-enlistment, Mr. Roberts applied for an upgrade to the Army Discharge Review Board. AR 237. The May 10, 1971, application was not denied until December 18, 1972, long after Mr. Roberts' discharge from his second enlistment. AR 232.[9] In other words, after reminding the Army on May 10, 1971, that he wanted his UCOTH Discharge upgraded, it seems highly unlikely that Mr. Roberts would then try to conceal the discharge eleven weeks later when he re-enlisted, especially when he tried to retain a prior rank, and actually did retain his former service number. AR 213. The May 10, 1971, ADRB application was never mentioned by the Board.

Third, the Board's September 2001 decision describes (AR 86) a DD Form 398, Statement of Personal History, prepared for the second enlistment that mentions no prior service and that he was self-employed during the period of his first enlistment. This document has never been made available to Mr. Roberts and does not appear in the Administrative Record. In Van Bourg v. Nitze, 388 F.2d 557, 564 (D.C. Cir. 1967), this Circuit noted that absent overriding public interest, even classified documents used against review board applicant should be declassified and made available to the applicant.

Fourth, the Board's September 2001 decision also notes that the DA Form 20,

_____

[9] Although the application date does not appear on the December 18, 1971, decision document (AR 231), it does appear on the November 7, 1972, ADRB Brief (AR 232).

Record of Service, contains information similar to that on the mysterious alternate DD Form 214, "derived from an unknown source." AR 86. However, the Board's decision does not explain why that DA Form 20 (AR 189) also reflects Mr. Roberts' prior service. Nor does the Board explain why Mr. Roberts received the same service number as his first enlistment.

Fifth, both the Board (AR 86) and Defendants' Memorandum (p. 16) refer to the different re-enlistment code in the alternate DD Form 214. It should also be noted that the "Reason and Authority" entry on the UCOTH discharge was "AR 635-212 SPN 28B" (AR 49) while the alternate DD Form 214 indicates "AR 639-200, section VII Chapter V" (AR 188). It seems unlikely that a soldier with Mr. Roberts' experience (compared for example with that of an Army recruiter[10]) would have detailed knowledge of arcane Army recruitment regulations and so-called "spin" codes. It is also odd that the selective service number that appears on the alternate DD Form 214 (AR 188) is the same as that on Mr. Roberts' 1971 discharge (AR 187), but different from the number of the UCOTH Discharge (AR 49). Mr. Roberts has stated that he described his prior service to his Army recruiter. AR 213.

Sixth, The Board's September 2001 memorandum concludes that Mr. Roberts' 1971 DD Form 214 "contains entries that cannot be verified by the applicant's official record." AR 89. One cannot assume that any erroneous entries were the fault of Mr. Roberts. The document was signed by an officer of the discharging command. Surely someone in that command had a duty to corroborate the contents of the DD Form 214, which is not only an official record, but among the most important records that a service member has.

---

[10] During this period, Army recruiters were officially termed "Career Counselors." AR 209.

Lastly, the Board's decision (AR 89) and the Defendants' Memorandum (p. 18) stressed that Mr. Roberts could not have suffered PTSD as the result of his Vietnam experience because the character of his service was not significantly different after his Vietnam service than it had been before. However, if Mr. Roberts' were afflicted with PTSD before his combat experiences in Vietnam, or perhaps even before his enlistment, the Army must bear some degree of responsibility for enlisting a man with a mental disorder, and then marking the man for life when his conduct is affected by that affliction.

**4. The ABCMR's May 16, 2002, Decision was Arbitrary, Capricious, an Abuse of Discretion, Unsupported by Substantial Evidence or Otherwise Contrary to Law or Regulation.**

As Defendants' Memorandum points out (p. 18), the Board found on May 16, 2002, "that new evidence, meaning Mr. Roberts' statement of reconsideration, AR 72-74, was insufficient as a basis to change its previous decision." However, the Board's decision inexplicably lists only Mr. Roberts' military records and his May 8, 1968, court-martial and not his statement of reconsideration, under "New Evidence or Information." AR 68. As this Circuit noted in Dickson, 68 F.3d at 1406: "We find the conclusory statements of the [ABCMR] in these cases do not meet the requirement that 'the agency adequately explain its result.' Because the Board only listed the facts and stated its conclusions, but did not connect them in any rational way, the Board's decisions are arbitrary and capricious." Of course, by finding no new evidence to change its earlier decision, the May 16, 2002, decision merely repeated the errors in the previous September 6, 2001, decision.

The Board's paraphrase (AR 68) of the somewhat rambling statement of Mr. Roberts (AR 72-74), a diagnosed PTSD patient, brings to mind this Circuit's observation in

<u>Robinson v. Resor</u>, 469 F.2d  at 949:  "We agree that Robinson's testimony has not always been clear or consistent.  We also have grave doubts about the Board's use of that fact to totally discredit his testimony."

**5. The Board's Decisions of January 21 and July 15, 2003, were Arbitrary, Capricious, an Abuse of Discretion, Unsupported by Substantial Evidence or Otherwise Contrary to Law or Regulation.**

The Board's January 21, 2003, decision essentially quotes paragraph 2-15b of Army Regulation 15-185 which provided that in cases of requests for reconsideration received after more than one year after the ACBMR's action or after the ACBMR has already considered one request for reconsideration,

> the ACBMR staff will review the request to determine if substantial relevant evidence is submitted showing fraud, mistake of law, ... manifest error, or the existence of substantial relevant new evidence discovered contemporaneously or within a short time after the ABCMR's original consideration.  If the ABCMR staff finds such evidence, it will be submitted to the ABCMR for its determination of whether a material error or injustice exists and the proper remedy.  See, Exhibit D, Army Regulation 15-185 ¶2.15b; 32 C.F.R. § 581.3(g)(4)(i) (Feb. 29, 2000).

Because the Board's staff determined that no new evidence met those criteria, the Board denied Mr. Roberts' June 10, 2002, application.  AR 47.  A similar decision was issued by the Board on July 15, 2003, denying his December 27, 2002, request because the "staff determined that your current application does not contain evidence that meets the above criteria."  AR 45.

Of course, because the Board's decisions of January 21 and July 15, 2003, found that the September 6, 2001, decision should not be altered, the defects in that decision were incorporated into those subsequent decisions.

Moreover, because the decisions of January 21 and July 15, 2003, were made by staff, they violated 10 U.S.C. § 1552. This Court, in <u>Lipsman II</u>, 335 F.Supp.2d at 56 ruled that subsection 2-15(b) of Army Regulation 15-185 violated the provisions of 10 U.S.C. § 1552, the ABCMR's operating statute, because it permitted ABCMR staff and not the Board to make decisions identical with those made in Mr. Roberts' applications. The Court specifically found that the Board's delegation of actions to its staff was arbitrary or capricious and not in accordance with law. <u>Id</u>. at 53.

Defendants' Memorandum notes (p. 20) that Army Regulation 15-185 contained paragraph 2-15b when the Board's staff made its decisions announced on January 21 and July 15, 2003, but that pursuant to <u>Lipsman II</u>, "paragraph 2-15b was removed from the regulation." On page 15, Defendant's Memorandum cites Army Regulation 15-185 for the notion that that the ABCMR will consider only one request for reconsideration, provided it is filed within one year of the original decision. However, <u>Lipsman II</u>, was decided on September 7, 2004, more than a year after the latest of the two Board decisions on Mr. Roberts' applications and more than three months after Mr. Roberts submitted his June 4, 2004 Request for Reconsideration.

The amended Army Regulation 15-185, in the form described in Defendants' Memorandum, was not amended until March 31, 2006, months after this action was filed, and did not even become effective until May 1, 2006. See Exhibit E, Army Regulation 15-185, dated 31 March 2006; Summary of Change: ("This rapid action revision dated 31 March 2006 Updates policies and procedures ... to comply with ... the decision [in <u>Lipsman II</u>]"). In other words, it is difficult to apply the amendment to the January 21 and July 15, 2003, Board

decisions when the amendment did not become effective until months after this suit was filed, and almost three years after the latest of the two Board decisions.

For some reason the amendment to 32 CFR part 581, the Code of Federal Regulations version of Army Regulation 15-185, was announced in the Federal Register on November 7, 2005, with an effective date of December 7, 2005.  See, 70 Fed.Reg. 67,367. However, Army Regulation 15-185 with its May 1, 2006, effective date remains posted on the BCMR website,[11] which also contains an Applicant's Guide to Applying to the ABCMR, item 14 of which describes paragraph 2-15b of Army Regulation 15-185, as it existed before the amendment.[12]

Of course, the amendment does not make the Lipsman II decision-by-staff-rather-than-Board issue moot as Defendants Memorandum (p. 20) alleges.  This issue in Lipsman II is not what decision the staff made or when it made it, but the very fact that the staff, and not the Board, made it.


**6. The Board's March 17, 2005, Decision Was Arbitrary, Capricious, an Abuse of Discretion, Unsupported by Substantial Evidence or Otherwise Contrary to Law or Regulation.**

On June 4, 2004, Mr. Roberts filed by counsel a Request for Reconsideration accompanied by a twenty-nine page memorandum (AR 3-32) and fifty-four pages of exhibits (Complaint Attach. I).  The request listed the earlier decision files and noted that this was the first request filed with the direct assistance of legal counsel and that it  raised a number of issues and facts that had never been presented to, or considered by, the Board.  AR 2.

---

[11] http://www.army.mil/usapa/epubs/pdf/r15_185.pdf.
[12] http://arba.army.pentagon.mil/abcmr.htm.

While Mr. Roberts' June 4, 2004, request was pending at the Board, this Court's September 7, 2004, Lipsman II decision was handed down.  After holding Mr. Roberts' request for more than nine months, the Board, on March 17, 2005, returned the June 4, 2004, memorandum and exhibits filed by Mr. Roberts' counsel directly to Mr. Roberts. AR 1.  The Board's letter noted that Mr. Roberts' case was considered on September 6, 2001, that no further ABCMR action is contemplated, that he had exhausted all of his administrative remedies, and that Mr. Roberts had the option of seeking "relief in a court of appropriate jurisdiction."   Although not citing Lipsman II, the Board referred to a recent court decision "ordering the deletion of paragraph 2-15b of AR 15-185," and stated that the effect of the decision "now permits an applicant to request reconsideration of an earlier ABCMR decision if the request is received within one year of the ABCMR's original decision and it has not been previously reconsidered."  AR 1.

Neither the Board's letter nor Defendants' Memorandum mentioned the fact that Lipsman II did much more than merely order the deletion of paragraph 2-15b; it also ordered the Board to consider the applications of the Lipsman plaintiffs -- plaintiffs who are in the exact same position as Mr. Roberts.  Moreover, this Court in Lipsman II ordered the Board to reconsider the applications of all members of NABVETS, the National Association of Black Veterans, whose second requests to the Board contained new evidence.  Although not a member of NABVETS, Mr. Roberts is an African-American veteran.  The Board's March 17, 2004, response to Mr. Roberts' Request for Reconsideration mentioned only one portion of the Lipsman II holding without mentioning the Lipsman II remedy: remand to the Board for reconsideration.

If the Board's change of policy on requests for reconsideration were to affect Mr. Roberts, it should have done so before he submitted his request, not while his request was pending, and the change of policy should be applicable to everyone similarly situated. As noted in section 4 supra, the Board's change of policy just became effective on May 1, 2006, and the Board has yet to replace contradictory statements that appear on its website. "[A]n agency changing its course must supply a reasoned analysis...." Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins., 463 U.S. 29, 57 (1983), quoting Greater Boston Television Corp. v. F.C.C., 444 F.2d 841, 852 (1970).

Clearly, the Lipsman II holding -- that dispositive decisions made by staff were arbitrary or capricious and not in accordance with law -- applies to the dispositive staff decisions made on January 21 and July 15, 2003, and June 4, 2004, and at the very least these decisions should be remanded to the Board as was ordered by this Court in Lipman II. The ultimate fate of Army Regulation 15-185's paragraph 2-15b is irrelevant to this case because that provision was in force when Mr. Roberts filed his last request with the Board and was not superseded until more than four months after this action was filed.

In the last section of their Memorandum, Defendants argue that the Court should defer to the Army in the interpretation of the Army's own regulation. However, Defendants fail to state which version of the regulation should be beyond the Court's reach. The Army and this Court in Lipsman II agreed on the interpretation of Regulation 15-185's paragraph 2-15b, namely that it authorized certain staff decisions; they disagreed only on whether the regulation's authorization of staff decisions followed the statute, 10 U.S.C. § 1552. Likewise, there is no dispute about the interpretation of the amendment to Army

Regulation 15-185; the issue is whether the regulation can become effective before its stated effective date, May 1, 2006.

As noted in part B.2. <u>supra</u>, the agency's interpretation of statutes, regulations, and court decisions is not entitled to any <u>Chevron</u> deference. Nor is it entitled to any military deference on judicial interpretations of the law. See, <u>Mudd v. Caldera</u>, 134 F.Supp.2d 138, 144 (D.D.C. 2001) ("<u>Mudd II</u>") ("But there is no law that supports the Army's position that an Article III judge must defer to an agency or department of the Executive Branch or the head of such an agency or department -- even to the Secretary of a branch of the military -- on interpretations of decisions of the United States Supreme Court; for that is quintessentially a judicial function.").

"The District of Columbia Circuit has concluded that the failure to respond to arguments raised by a plaintiff, which do not appear frivolous on their face and could affect the Board's ultimate disposition, is arbitrary." <u>Calloway v. Brownlee</u>, 366 F.Supp.2d 43, 53 (D.D.C. 2005), citing <u>Frizelle v. Slater</u>, 111 F.3d at 177 and <u>Mudd I</u>, 26 F.Supp.2d at 123. In this case, of course, there is no indication that the Board even read, let alone considered, any of Mr. Roberts' arguments -- arguments that certainly were not frivolous and which would have affected the ultimate disposition.

Even if Mr. Roberts' requests for reconsideration were construed to be requests for waivers of a limitations period, the refusal of such a waiver would be reviewable and can be found to be arbitrary and capricious. <u>Dickson</u>, 68 F.3d at 1404:

> Review of waivers helps ensure that a second tier of 'secret law' absolving some but not others from the rigors of the statute does not impugn the equality of the principal law which does receive the benefit of judicial review. As Judge Leventhal so aptly observed more than two decades ago, 'The agency may not act out of unbridled discretion or whim in granting waivers any more than in any other aspect of its regulatory function.' <u>WAIT Radio v. FCC</u>, 418

F.2d 1153, 1159 (D.C.Cir. 1969).  To conclude even limited review, we must be made privy to the Board's reasoning.

As the court noted in Guerrero v. Stone, 970 F.2d 626, 638 (9th Cir. 1992): "The Board is charged with correcting errors and removing injustices in applicants' service records.  10 U.S.C. §1552(a)(1).  To remove injustices is the Board's chief responsibility and constitutes its very reason for being.  The Army has no need of a Board that stubbornly hews to obscure decisions or slavishly follows bright-line distinctions simply because doing so relieves some agency of the difficult task of considering each case on the merits.  The Army needs a Board that serves the interest of justice."

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully asks this Court to deny Defendants' Motion to Dismiss, in Part, and for Summary Judgment and to grant Plaintiff's Motion for Summary Judgment.  Should the Court determine not to direct the Board to upgrade Mr. Roberts' discharge and instead remand to the Board for further action, Plaintiff respectfully asks this Court to retain jurisdiction over the action.

One can see from the foregoing case citations that a number of remanded correction board decisions have returned to the remanding court.  See, e.g., White v. Sec'y, Lipsman, Dilley, Kreis, and Mudd.  Sadly, the response of the ABCMR to what it may regard as judicial interference with its operations has sometimes been petulant.  For example, the Board reacted to this Court's Lipsman II decision, a pro-veteran decision that forced the Board to comply with its statute, by denying all requests for reconsideration received after one year.  A.R. 1.   In Dilley I, the Army responded to this Circuit's order that appellants be reinstated to active duty and be considered for promotion, by offering either retirement or

non-retroactive reinstatement, thereby forcing the Court to declare: "Hence the Army has forfeited any claim it might have ... to exercise its discretion in fashioning the specifics of the remedy ordered by the court." Dilly II, 627 F.2d at 407. In Robinson v. Resor, this Circuit noted that rather than showing CWO Robinson "a little more compassion" and a little more interest in his welfare, "the Army was in fact acting out of pure institutional self-interest and possibly even out of spite." See, 469 F.2d at n. 20 and accompanying text.[13] See, Guerrero 970 F.2d at 638 ("The VA believed that too many Filipinos were requesting veterans benefits. Instead of deciding each case on the merits, the Army decided to draw a bright line. Such arbitrary administrative distinctions, however, cannot stand when they contradict the declared policy they purport to follow."). Mr. Roberts case is in the same posture as that in Martin v. Sec'y of the Army, 455 F.Supp. 634, 639 (D.D.C. 1977), wherein the Court observed: "These matters have been fully briefed and argued, and the entire record is before the Court. It is entirely proper for the Court to narrow the scope of inquiry upon remand by ruling on these questions at the present time." (citing VanderMolen, 571 F.2d at 626).

Respectfully Submitted,

/S/

_____

Michael W. Dolan, Esq.
    D.C. Bar No. 3384
2021 L Street, N.W.
Suite 204
Washington, D.C.  20036
202/293-2776
*Counsel for Plaintiff*

_____

[13] Robinson v. Resor: "We hold that the relation of the Government to its soldiers, both as to the substantive decisions on their status and the procedures used to arrive at those decisions, must be, 'if not paternal,' 'at least avuncular.' Substantial fairness, rather than nitpicking compliance with precise regulations, must guide the Army's actions. The Army must not be allowed to reach, step by technical step, a result which, viewed in its entirety, constitutes an overreaching leap into the arbitrary and inequitable." 469 F.2d at 944 (citation omitted).