**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **THOMAS ROBERTS** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case Number: 05-02430** |
| | ) | |
| | ) | |
| **SECRETARY OF THE ARMY,** | ) | |
| **et al,** | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**DEFENDANT'S COUNTER-STATEMENT OF FACTS**

In accordance with Local Civil Rule 56.1 of the United States District Court for the District of Columbia, Defendant hereby respectfully submits its counter-statement of facts in response to Plaintiff's statement of material facts which are not in genuine dispute.

1. Thomas Roberts' three year enlistment in the U.S. Army began on July 13, 1967. AR 302.

Response:  Agreed.

2. On June 17, 1968, he was ordered to Vietnam as a scout observer. AR 249.

Response:  Agreed.

3. On August 28, 1968, he was ordered to Korea under the provisions of Army Regulation 614-17, which provided deferments of Vietnam service for soldiers with family members already serving in Vietnam. AR 318. See Army Regulation 614-17 (April 4, 1968) attached as Exhibit C to Plaintiff's Memorandum of Points and Authorities.

Response:  Agreed.

4. On March 28, 1969, Mr. Roberts was placed in pre-trial confinement in the Eighth Army

Stockade in Seoul, Korea. AR 34, 60.

Response:  Agreed.

5. On April 17, 1969, while still in confinement, Mr. Roberts was tried by special court-martial for the following offenses occurring between December 25, 1968, and March 18, 1969: leaving his place of duty without proper authority, violating curfew, stealing Army property, wrongfully appropriating an Army truck, wrongful possession of marijuana, and breaking restriction. AR 251, 323-325. The specification of Charge IV and Charge IV and specification 4 of Charge V were dismissed for lack of sufficient evidence. AR 325. On May 7, 1969, he was sentenced to six months confinement at hard labor. AR 34, 60, 323-325.

Response:  Agreed.

6. Mr. Roberts recalls being told by the defense counsel at his court-martial, which Mr. Roberts believed was a special court- martial that did not have the authority to discharge him, that a discharge proceeding would be recommended and that most likely he would receive a General Discharge. AR 34.

Response: Defendant has no way of knowing what Plaintiff "recalls."  This "fact" is not material as the ABCMR considered the evidence and found it insufficient to overcome the presumption of regularity.  AR 89.

7. On May 13, 1969, Mr. Roberts waived his right to counsel, a hearing, and the right to submit statements in his own behalf and submitted to a proceeding to discharge him from the Army for unfitness under the provisions of Army Regulation 635-212.  The waiver specifically recited that he could receive either a General or a Discharge Under Conditions Other Than Honorable ("UCOTH"). See Complaint, Attach. I, Ex. D, (document not in AR).

2

Response:  Agree that Plaintiff waived his right to counsel, to a hearing and to submit statements. While the waiver does inform Plaintiff of the consequences of both a General Discharge and an Undesirable Discharge, it does not specify what discharge Plaintiff was eligible to receive.

8. Mr. Roberts' field medical file reflects that on May 18, 1969, he may have attempted suicide. AR 327.

Response:  Agreed.

9. The Army Board for the Correction of Military Records ("ABCMR" or "the Board") Memorandum of September 6, 2001, points out that because Mr. Roberts was discharged under paragraph 6a(1) of Army Regulation 635-212 a "UD" (undesirable or UCOTH discharge) "was normally considered appropriate." AR 88.

Response:  Agreed.

10. Paragraph 4a of Army Regulation 635-212, in effect at the time, provided that "an individual separated by reason of unfitness will be furnished an undesirable discharge" except in special situations for which Mr. Roberts could not qualify. See Complaint, Attach. I, Ex. G (document not in AR).

Response:  Agree that AR 635-212 provided that "an individual separated by reason of unfitness will be furnished an undesirable discharge." However the exceptions listed include "or if warranted by the particular circumstances in a given case."  It is unclear what Plaintiff means by "Mr. Roberts could not qualify."

11. On June 6, 1969, a Military Police correctional officer, Lt. Raymond Reass, recommended Mr. Roberts' discharge under AR 635-212 to the Commanding General, stating: "In view of this soldier's record of disciplinary actions, request waiver of counseling and (further) transfer for

rehabilitation" AR 254 - 257 (256 and 257 are transposed).

Response:  Agreed.

12. In an undated "Action," the Commander of the Eighth Field Army Support Command, noting the correctional officer's recommendation that the counseling and further rehabilitation required by Army Regulation 635-212 be waived, ordered an Undesirable Discharge. AR 228.

Response:  Agreed.

13. Paragraph 7a of Army Regulation 635-212, in effect at the time, required that service members discharged under paragraph 6a(1) must receive counseling, and a specific memorandum made of that fact. Paragraph 7b(2) required rehabilitation through reassignment. Paragraph 7c(2) and (3) provided that counseling and rehabilitation can only be waived by the general court-martial authority "when he determines that further duty of the individual will, in his best judgment, create serious disciplinary problems or a hazard to the military mission or to the individual." See Complaint, Attach. I, Ex. G (document not in AR).

Response:  Agreed.

14. No waiver containing the specific finding described in paragraph 7c(2) and (3) of Army Regulation 635-212, in effect at the time, appears in the Administrative Record or in any other part of the record of this case.

Response:  Disagree that no waiver is found in the record.  AR 228 contains a waiver of counseling and transfer and is signed by the Commander of the Eighth Field Army Support Command.  Nothing in the regulation requires that the Court-martial convening authority recite the findings stated in paragraph 7c(2).

15. Paragraph 10 of AR 635-212, in effect at the time, required the individual's unit commander

4

to initiate the discharge process: "The unit commander of the individual will recommend action under this regulation ...." Paragraph 12 requires the individual's commander to forward a "Commanding officer's report" through the appropriate intermediate commander, if appropriate, to the general court-martial convening authority. See Complaint, Attach. I, Ex. G (document not in AR).

Response:  Agree that Plaintiff accurately quotes the regulation.

16. The discharge recommendation prepared by Correctional Officer Reass is not labeled a "commanding officer's report and is signed by Lt. Reass as Mr. Roberts' "correctional officer," not "commanding." AR 254 - 257 (256 and 257 are transposed). There is no indication in the record that Lt. Reass ever commanded a unit to which Mr. Roberts was assigned or that the recommendation ever reached the general court-martial authority through the appropriate intermediate commander.

Response: AR 228 notes the recommendations that "counseling and further rehabilitation be waived" and certainly provides evidence that the appropriate recommendations were made and received by the General Court-Martial Convening Authority.

17. Correctional Officer Reass's recommendation to General Holm was reviewed by Gen. Holm's Staff Judge Advocate, Lt. Col. George Taylor, Jr., who appended records of two separate non-judicial punishments under UCMJ Article 15 that Mr. Roberts received on March 5 and April 22, 1968, while in basic airborne training at Fr. Benning, Georgia. AR 256 (AR 256 and 257 are transposed).

Response:  Agreed

18. Mr. Roberts had been transferred several times subsequent to the imposition of these two

separate non-judicial punishments more than one year earlier. AR 249.

Response:  Agreed.

19. Army Regulation 27-10, in effect at the time, specifically forbade the mention of one-year-old or older non-judicial punishments in a proceeding against him if the individual had been subsequently transferred and one year had elapsed.

Response: This is not a statement of fact but rather of law.  Plaintiff misstates the law.  As reported in U.S. v. Cohan, 43 C.M.R. 309, 311 (1971) a report of Non-Judicial Punishment could be retained for more than 1 year if the soldier was transferred.  According to Cohan, the regulation provided for destruction at transfer "provided that at the time of transfer, a period of 1 year has elapsed since **imposition of the punishment** and that **all punishment imposed has been executed** (with forfeitures collected and any period of detention of pay expired) and **action has been completed on any appeal from such punishment**. If these conditions do not exist at time of transfer, the copy of the record of proceedings will be retained in the individual's personnel records which accompany him to his new assignment and retained therein until the foregoing conditions no longer exist." [AR 27-10, paragraph 3-15d, at page 3-11.] United States V. Cohan, 20 U.S.C.M.A. 469, 471 (C.M.A. 1971) (emphasis added).  The record does not indicate whether all three of these provisions were met.  Nor is this supposed "fact" material as it was not raised to the ABCMR and does not constitute new evidence justifying reconsideration.

20. The September 6, 2001, Board decision recites that "On 10 February 1969, the applicant's commander initiated a recommendation to bar him from reenlistment and cited the applicant's conviction by a special court-martial and three NJPs [non-judicial punishments] as the basis for

the action. On 25 March 1969, the appropriate authority approved the imposition of the bar to

reenlistment." AR. 85.

Response: Agreed

21. The Administrative Record contains a March 25, 1969, approval of what appears to be a

February 10, 1969, recommendation (AR 265), and Defendants' Material Fact No. 8 refers to a

February 10, 1969, recommendation. However no February 10, 1969, recommendation appears

in the Administrative Record. The Administrative Record does contain a February 5, 1969,

recommendation, but that recommendation only mentions one non-judicial punishment. AR 320.

Response: Agreed except to the extent Plaintiff implies that the March 25, 1969 approval refers

to the February 5, 1969 recommendation.

22. The February 5, 1969, commander's recommendation for a bar to re-enlistment that does

appear in the Administrative Record (AR 320) relies on a "pending court-martial" that is, at this

point, more than two months in the future.

Response: Agreed.

23. On July 22, 1969, Mr. Roberts received a UCOTH discharge by reason of unfitness under the

provisions of Army Regulation 635-212. He was properly awarded the National Defense Service

Medal, the Vietnam Service Medal, the Air Medal and the Combat Infantryman Badge. AR 49.

Response: Agreed.

24. On May 10, 1971, Mr. Robert applied to the Army Discharge Review Board ("ADRB") for

an upgrade to his discharge. AR 237.

Response: Agreed.

25. On July 28, 1971, Mr. Roberts re-enlisted in the Army for another three-year period. AR 199.

Response:  Agree that on July 28, 1971, Plaintiff enlisted in the Army for a second time.

26. On August 19, 1971, Mr. Roberts was discharged from his second enlistment with an Honorable Discharge on the basis of erroneous enlistment. AR 187.

Response:  Agreed.

27. On December 18, 1972, the ADRB denied Mr. Roberts' May 10, 1971, request for an upgraded discharge. AR 231.

Response:  Agreed.

28. On May 29, 2001, Mr. Roberts applied to the ABCMR. AR 93. His application attached Department of Veterans Affairs ("VA") medical records indicating that he had been diagnosed as suffering from combat-related post-traumatic stress disorder ("PTSD"). He also attached a letter from the Coordinator of his VA PTSD Clinical Team, who noted that Mr. Roberts' condition was overlooked or misdiagnosed at the time and that his lack of treatment resulted in "his incarceration, mistreatment and discharged with other than an honorable discharge, instead of a medical due to combat related PTSD." AR 96-97.

Response:  Agreed but notes that the recommendation from the VA recites combat actions and injuries that the ABCMR concluded could not have occurred.  AR 87.

29. In a September 6, 2001, Memorandum of Consideration the Board rejected Mr. Roberts' request for an upgrade of his discharge, finding that he failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice. AR 83-90. The Board's decision referred to a second version of Plaintiff's July 22, 1969 DD Form 214, Report of Discharge, that indicated Plaintiff received an Honorable discharge and additional decorations that the ABCMR could not substantiate.  The Board noted that it received this version of his DD

Form 214 Afrom an unknown source (AR 86).

Response:  Agreed except the Board's decision says that the information on the second DD 214 came from an unknown source, not that the Board received the DD 214 from an unknown source.

30. Although Mr. Roberts' requested copies of his military records from the National Personnel Records Center ("NPRC") on February 13, 2004, (AR 36, 37), on April 9, 2004 (AR 38), and on May 6, 2004 (AR 39), the so-called alternate version of Mr. Roberts' 1969 discharge that is described in the Board's September 6, 2001, decision (AR 188) was not produced for Mr. Roberts until the Administrative Record was filed in this litigation.

Response:  Agree that Mr. Roberts requested, through counsel, his military records on February 13, 2004, on April 9, 2004, and on May 6, 2004, the alternate version of Mr. Roberts' 1969 discharge that is described in the Board's September 6, 2001, decision and that the document was provided in the Administrative Record filed in this litigation.   When Plaintiff received the document is not a material fact as the Board's only finding with regard the two versions of the DD 214 was that the one Plaintiff refers to as the "alternate DD 214" was not accurate.

31. The September 6, 2001, Memorandum of Consideration relied upon a DD Form 398, Statement of Personal History, that Mr. Roberts signed in connection with his second enlistment. This document has never been made available to Mr. Roberts (AR 33-35) and is not part of the Administrative Record.

Response: The document was omitted from the AR and is included with Defendant's Opposition and Reply.

32. On May 16, 2002, the ABCMR, noting its decision of September 6, 2001, determined that

Mr. Roberts had "failed to submit sufficient relevant evidence to demonstrate the existence of

probable error or injustice." AR 67-69. The Board's decision lists only Mr. Roberts' military

records and his May 8, 1968, court-martial and not his statement of reconsideration, under "New

Evidence or Information." AR 68.

Response:  Agreed but note that the decision specifically states that it considered Plaintiff's

application which includes his statement of reconsideration.  AR 67.

33. On January 21, 2003, the Board wrote to Mr. Roberts stating that his original application was

denied on September 6, 2001, and that the Board staff had reviewed Mr. Roberts' June 10, 2002,

application and determined that his case should not be reopened. AR 47.

Response:  Agreed.

34. On July 15, 2003, the Board wrote again to Mr. Roberts stating that his original application

was denied on September 6, 2001, that Plaintiff's first request for reconsideration was

Administratively denied by the staff on January 21, 2003, and that his December 27, 2002,

request did not contain evidence sufficient to re-open the September 6, 2001 decision. AR 45.

Response:  Agreed.

35. On June 4, 2004, Mr. Roberts filed by counsel a Request for Reconsideration reciting that it

was the first request that he had filed with the direct assistance of legal counsel. AR 2. The

request noted that the accompanying twenty-nine page memorandum (AR 3-32) and fifty-four

pages of exhibits (Complaint Attach. I) in support of his request raised a number of issues and

facts that had never been presented to or considered by the Board.

Response:  Agreed except with regard to counsel's argument that in support of his request he

raised a number of issues and facts that had never been presented to or considered by the Board.

This "fact" is not material as Army Regulation 15-185 ¶2-15a allows a single request for reconsideration within one year of the original denial.  As plaintiff's request had previously been reconsidered, as well as being more than one year from the decision, the request is invalid even if it contained new arguments and issues.

36. On March 17, 2005, the Board returned the June 4, 2004, memorandum and exhibits filed by Mr. Roberts' counsel directly to Mr. Roberts. AR 1. The Board's letter noted that Mr. Roberts' case was considered on September 6, 2001, that no further ABCMR action is contemplated, that he had exhausted all of his administrative remedies, and that Mr. Roberts had the option of seeking relief in a court of appropriate jurisdiction.

Response:  Agreed.

Respectfully submitted,

_____/s/_____
KENNETH L.  WAINSTEIN, D.C.  Bar #451058
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS D.C. Bar No.  434122
Assistant United States Attorney


_____/s/_____
KEVIN K. ROBITAILLE
Special Assistant U.S.  Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
(202) 353-9895

Of Counsel:
LT. COL. JOSEPH C. FETTERMAN
MAJOR CHRISTOPHER P. SOUCIE
U.S. Army Legal Services Agency

901 North Stuart Street
Arlington, Virginia  22203-1837
Attorneys for Defendant