UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THOMAS ROBERTS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 05-2430 (ESH) |
| ) | |
| FRANCIS J. HARVEY, ) | |
| Secretary of the Army, *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

Plaintiff Thomas Roberts, a former soldier in the United States Army and Vietnam veteran who has been diagnosed by United States Department of Veterans Affairs personnel as suffering from chronic and severe post-traumatic stress disorder ("PTSD"), brings this action under the Administrative Procedure Act, 5 U.S.C. § 701, *et seq.*  Currently represented by counsel, plaintiff seeks judicial review of the denial by the Army Board for Corrections of Military Records ("ABCMR" or the "Board") of his *pro se* application for an upgraded discharge and subsequent Board decisions denying his repeated requests for reconsideration.  Plaintiff further seeks a declaration setting aside the ABCMR's decisions and petitions the Court to issue a writ of mandamus directing the Board to recharacterize his discharge from the Army as either honorable or general.  In the alternative, plaintiff asks that the case be remanded to the Board with instructions to consider arguments and material evidence previously raised by plaintiff, which the Board has failed to address.

The matter is before the Court on defendants' motion to dismiss, in part, and for summary judgment and on plaintiff's cross-motion for summary judgment. For the reasons explained herein, the Court will grant plaintiff's motion in part, deny defendants' motion, and remand the matter to the Board.

## BACKGROUND

Plaintiff's military service began on July 13, 1967, when he voluntarily enlisted in the United States Army for a period of three years. (A.R. 302.) On March 1, 1968, he received a nonjudicial punishment ("NJP"), under the provisions of Article 15, Uniform Code of Military Justice, 10 U.S.C. § 815, for addressing a superior with disrespectful language and for disobeying an order. (A.R. 239-41.) On April 13, 1968, plaintiff received another NJP, this time for being absent without leave for approximately one week. (A.R. 242.) Then on May 8, 1968, before a special court-martial, plaintiff entered a plea of guilty to the charge of willfully disobeying a lawful order and was sentenced to 30 days restriction. (A.R. 244.)

On June 17, 1968, having completed his initial training as a light weapons infantryman, plaintiff was ordered to Vietnam as a scout observer. (A.R. 249.) Plaintiff subsequently was reassigned to Korea on August 28, 1969, under the provisions of Army Regulation 614-17 (Apr. 4, 1968), which provided deferments of Vietnam service for soldiers with family members already serving in Vietnam. Plaintiff's time in Korea was not without incident, for on March 28, 1969, he was placed in pre-trial confinement in the Eighth Army Stockade located in Seoul, Korea. (A.R. 34, 60.)[1] On April 17, 1969, plaintiff was convicted by a special court-

---

[1] According to plaintiff, it is impossible to verify from his service records the date on which his pre-trial confinement began because the records inexplicably fail to show that he was subject to confinement while serving in Korea in 1969. (*See* Plaintiff's Memorandum of Points

martial of various offenses occurring between December 25, 1968, and March 18, 1969. Specifically, he was convicted of leaving his place of duty without proper authority, violating curfew, stealing Army property, wrongfully appropriating an Army truck, wrongful possession of marijuana, and breaking restriction. (A.R. 251, 323-25.) On May 7, 1969, plaintiff's conviction was finalized, and he was sentenced to six months confinement at hard labor. (A.R. 34, 60, 323-25.)

On May 13, 1969, after 48 days in pre-trial confinement, and awaiting another 132 days of confinement at hard labor, plaintiff agreed to be discharged from the Army by reason of unfitness under the provisions of Army Regulation 635-212. In doing so, plaintiff also waived his right to counsel, a hearing or personal appearance before a board of officers, and the right to submit statements on his own behalf to the discharge authority. The generic waiver form that plaintiff signed, which was not a part of the administrative record,[2] further provided:

> I understand that I may expect to encounter substantial prejudice in civilian life in the event a general discharge under honorable conditions is issued to me. I further understand that, as the result of the issuance of an undesirable discharve [sic] under conditions other than honorable, I may be ineligible for many or all benefits as a veteran under both Federal and State laws, and that I may expect to encounter substantial prejudice in civilian life.

(Compl., Attach. I, Exhibit D.) A fair reading of the document suggests that by signing the form and thereby waiving the rights listed therein, plaintiff reasonably understood that a general

---

and Authorities (1) in Opposition to Defendants' Motion to Dismiss, in Part, and for Summary Judgment and (2) in Support of Plaintiff's Cross-Motion for Summary Judgment ["Pl.'s Opp'n"] at 4 n.2.) Defendants, however, concede that plaintiff was placed in pre-trial confinement on March 28, 1969. (*See* Defendants' Counter-Statement of Facts ¶ 4.)

[2] Plaintiff submitted a copy of this document to the ABCMR on June 4, 2004. (Pl.'s Opp'n at 1.)

discharge was a realistic option. Indeed, as plaintiff has recounted the circumstances surrounding his decision to waive his rights and to submit to a discharge by reason of unfitness in his submission to the ABCMR on December 26, 2001:

> On or about 28 March 69 I was brought to Ascom Stockade, located in Seoul, Korea, there I was detain and incapacitated though incarceration by being confined to a six (6) feet by six (6) feet jail cell without reasoning, for I had not been tried for any crime, at the stockade I had no contact with other inmates, no physical exercise, eating bread, lettuces, tomatoes, carrots, and drinking water, for a period of two (2) weeks at intervals, then I was allow to eat a regular meal for a period of two (2) weeks, I endured this injustice for over four (4) months, two (2) weeks on bad food, then two (2) weeks on good food, so when CPT. David V. Foley appeared to advise me on the contemplated separation under AR 635-212, what did I know?, I never heard of this before, all I know was that this was my way out of the Military . . . .
>
> \*       \*       \*
>
> [O]n 13 May 1969 here comes a JAGC lawyer by the name of CPT. David V. Foley who offered me a way out of the stockade, I was under duress, I wanted out, I could'nt believe the base commander did this to me. The JAGC lawyer said that I most likely received a General Discharge under Honorable Condition, but that didn't happen. (A.R. 73.)

Under applicable Army regulations in effect at the time, however, plaintiff's decision to initiate procedures to accomplish his separation from the Army by reason of unfitness, accompanied by his waiver of rights, made it all but a certainty that plaintiff would receive a discharge under conditions other than honorable, and *not*, as plaintiff appears to have believed, a discharge under honorable conditions. Paragraph 4(a) of Army Regulation 635-212 provided that "[a]n individual separated by reason of unfitness *will be furnished an undesirable discharge* . . . except that an honorable discharge . . . may be awarded if the individual being discharged has been awarded a personal decoration or if warranted by the particular circumstances in a given

case." *Id.*[3] (emphasis added)  Plaintiff had not been awarded a personal decoration at the time of his discharge,[4] and having waived his rights to a hearing and to submit statements on his own behalf, he essentially relinquished the opportunity that he otherwise would have had to persuade the discharge authority that his "particular circumstances" warranted an honorable discharge.

Thereafter, on July 22, 1969, plaintiff was discharged from the Army under conditions other than honorable.  (A.R. 49.)  On May 10, 1971, plaintiff applied to the Army Discharge Review Board ("ADRB") for an upgrade to his discharge.[5]  (A.R. 237.)  On July 28, 1971, while his application was pending before the ADRB, plaintiff re-enlisted in the Army for another three-year period.  (A.R. 199.)  Less than one month later, however, on August 19, 1971, he was discharged with an honorable discharge on the basis of erroneous enlistment.  (A.R. 214.)  Subsequently, on December 18, 1972, the ADRB denied plaintiff's May 10, 1971 application for an upgrade to his 1969 discharge.  (A.R. 231.)[6]

Almost thirty years later, on May 29, 2001, plaintiff submitted a *pro se* application for an

---

[3] A discharge under conditions other than honorable constitutes an undesirable discharge. *See White v. Sec'y of the Army*, 878 F.2d 501, 503 n.6 (D.C. Cir. 1989); *id.* at 502-04 (describing and comparing the five types of Army discharges and the requirements for each).

[4] Plaintiff's report of discharge on DD Form 214, however, does indicate that he received certain non-personal decorations -- the National Defense Service Medal, the Vietnam Service Medal, the Air Medal, and the Combat Infantryman Badge.  (A.R. 49.)

[5] Unlike the ABCMR, which is composed of civilians appointed by the Secretary of the Army, *see* 10 U.S.C. § 1552(a), the ADRB may be composed of military members, 10 U.S.C. § 1553.  *See Wilson v. Sec'y of the Navy*, 417 F.2d 297 (3d Cir. 1969) (The ["Army Discharge"] Review Board is to be distinguished from the Correction Board, created pursuant to 10 U.S.C. §1552.  That statute requires that the Correction Board be composed of civilians . . . .").  In plaintiff's case, the ADRB was composed entirely of military members.  (A.R. 230.)

[6] Plaintiff does not seek review of the ADRB's decision.

upgraded discharge to the ABCMR. (A.R. 93.) Plaintiff attached to his application Veterans Affairs ("VA") medical records indicating that he had been diagnosed as suffering from combat-related PTSD. He also attached a letter from the Coordinator of his Veterans Affairs PTSD Clinical Team, Captain Jose R. Vasquez, who wrote that plaintiff's medical condition was "overlooked or misdiagnosed" at the time of his military service and that plaintiff's lack of treatment resulted in his "incarceration," "mistreatment," and a discharge under conditions other than honorable, "instead of a medical [discharge] due to combat related PTSD." (A.R. 96-97.)

On September 6, 2001, the ABCMR denied plaintiff's application, finding that he had failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice. (A.R. 83-90.) The Board's Memorandum of Consideration included a summary of the proffered basis for plaintiff's application, as well as a summary of the information contained in plaintiff's military personnel records, including his previously mentioned misconduct. Although plaintiff's "discharge packet is missing from his military records," the Board noted that a copy of plaintiff's report of discharge on DD Form 214 "shows he was administratively discharged on [July 22, 1969], under the provisions of Army Regulation 635-212, by reason of unfitness." (A.R. 86.) The Board further noted that paragraph 6(a)(1) of Army Regulation 635-212, in effect at that time, "provided, in pertinent part, that members involved in frequent incidents of a discreditable nature with civil or military authorities were subject to separation for unfitness and an [undesirable discharge] was normally considered appropriate." (A.R. 88.) Accordingly, "[l]acking evidence to the contrary, the Board presume[d] administrative regularity in [plaintiff's] administrative separation under the provisions of Army Regulation 635-212, for unfitness." (A.R. 89.)

Specifically addressing plaintiff's contention that he should have received a medical discharge due to his PTSD, the Board stated that it found no evidence that (1) plaintiff was under a medical profile due to any wounds received in combat[7] or that he was suffering from a diagnosed PTSD at the time of his discharge or (2) that the character of his service was significantly different before or after his tour of duty in Vietnam or that his misconduct was the result of suffering from a PTSD due to his combat experience in Vietnam. (A.R. 89.) Further addressing plaintiff's arguments, the Board added:

> The specific diagnosis label of PTSD was given to him by the VA some 30 years after his discharge. It used information that is not verified in the record and does not call into question the application of the then existing medical fitness standards used by the Army at the time, which found the applicant medically fit for retention/separation on the date of his discharge. Therefore, the Board finds that relief is not warranted based on these issues. (*Id.*)

On December 26, 2001, plaintiff submitted a *pro se* application for reconsideration of the ABCMR's decision. Attached to his application was a three-page statement, in which plaintiff asserted that, while in Korea, he encountered racial prejudice and discrimination, an "oversight by the Doctors in their Physical, and mental evaluation," and "a tremendous amount of psychological trauma that led to a classification of Unfitness." (A.R. 72.) Plaintiff also alleged that at the time of his discharge, there was an "on going [sic] practice in the Military to bar all black veterans from any benefits." (*Id.*) Most importantly for present purposes, however, plaintiff's statement included the above-quoted description of the circumstances surrounding his decision, upon the advice of counsel, to initiate procedures to accomplish his separation from the

---

[7] For example, the Board stated that "[a] review of the [Vietnam] Casualty Roster, maintained by the Total Army Personnel Command, did not reveal that the applicant had ever been wounded in action or medically evacuated from [Vietnam]." (A.R. 87.)

Army by reason of unfitness and to waive his rights. (A.R. 73.) On May 16, 2002, finding plaintiff's "latest submissions and arguments . . . insufficient as a basis for the Board to reverse its previous decision" (A.R. 68), the ABCMR denied plaintiff's request for reconsideration. (A.R. 69.) The Board's Memorandum of Consideration is silent with respect to the circumstances surrounding plaintiff's initiation of administrative discharge procedures or his waiver of rights. In fact, the waiver of rights form was not even a part of the record before the Board, and there is no mention of the issue in the Memorandum of Consideration.

Continuing to proceed *pro se* before the Board, plaintiff applied for reconsideration again on June 10, 2002, and yet again on December 27, 2002. By letters dated January 21, 2003 and July 15, 2003, the Board informed plaintiff that Board "staff" had determined that his applications did not warrant resubmission to the Board. (A.R. 45, 47.)[8]

On June 4, 2004, plaintiff submitted a fourth application for reconsideration, this time with the direct assistance of legal counsel. (A.R. 2.) Attached to plaintiff's application was a

---

[8] Paragraph 2-15(b) of Army Regulation 15-185, 32 C.F.R. § 581.3(g)(4)(ii) (Feb. 29, 2000), in effect at the time that plaintiff submitted all of the applications for reconsideration at issue in this litigation, provided:

> If the ABCMR receives the request more than 1 year after the ABCMR's action or after the ABCMR has already considered one request for reconsideration, the ABCMR staff will review the request to determine if substantial relevant evidence is submitted showing fraud, mistake of law, mathematical miscalculation, manifest error, or the existence of substantial relevant new evidence discovered contemporaneously or within a short time after the ABCMR's original consideration. If the ABCMR staff finds such evidence, it will be submitted to the ABCMR for its determination of whether a material error or injustice exists and the proper remedy. If the ABCMR staff does not find such evidence, the application will be returned to the applicant without action.

twenty-nine page memorandum (A.R. 3-32) with fifty-four pages of exhibits. (Compl., Attach. I.) According to plaintiff's submission, this fourth application raised a number of issues and facts that had not previously been presented to or considered by the Board. (A.R. 7.)

On September 7, 2004, while plaintiff's fourth application for reconsideration was pending, the Honorable Ricardo M. Urbina issued *Lipsman v. Secretary of the Army*, 335 F. Supp. 2d 48 (D.D.C. 2004), wherein he concluded that paragraph 2-15(b) of Army Regulation 15-185 violated the provisions of 10 U.S.C. § 1552, because it permitted the Board's staff members, rather than the Board itself, to perform statutory functions committed to the Board. *Id.* at 53-54. As the Court noted, "10 U.S.C. § 1552(a)(1) expressly requires that the Secretary, when exercising his discretion to correct military records, must 'act through boards of civilians.'" *Id.* at 53. Reasoning that the statute "does not distinguish between original applications and subsequent requests for reconsideration," the Court concluded that "the Secretary [is] bound to act through the [Board], not its staff members" when evaluating the merits of requests for reconsideration. *Id.* at 54.

By letter dated March 17, 2005, the ABCMR returned the June 4, 2004 application for reconsideration to plaintiff. (A.R. 1.) The Board's letter noted that plaintiff's' case was considered on September 6, 2001, that no further Board action is contemplated, that plaintiff had exhausted all of his administrative remedies, and that he had the option of seeking "relief in a court of appropriate jurisdiction." (*Id.*) Without citing *Lipsman* specifically, the Board referred to "a recent court decision" ordering the deletion of paragraph 2-15(b) of Army Regulation 15-185, and stated that the effect of the decision "now permits an applicant to request reconsideration of an earlier [Board] decision if the request is received within one year of the

[Board's] original decision and it has not been previously reconsidered." (*Id.*)

Plaintiff filed the instant action on December 20, 2005, alleging that the ABCMR's September 6, 2001 decision, and its subsequent decisions of May 16, 2002, January 21, 2003, and July 15, 2003 violate the APA, because the Board relied upon documents not in the record and not available to plaintiff or his attorneys; made conclusions that were either contradicted or not supported by the record; and ignored the Army's failure to follow its regulations governing the discharge of soldiers. (Compl. ¶ 31.) Plaintiff also alleges that the Board's March 17, 2005 refusal to consider his June 4, 2004 application for reconsideration violated the APA. (Compl. ¶ 33.) Finally, plaintiff alleges that the Board's decisions of January 21, 2003 and July 15, 2003 violated 10 U.S.C. § 1552, as interpreted by *Lipsman*, because they were made by Board staff. (Compl. ¶ 35.) Plaintiff asks the Court to set aside all of the Board's decisions at issue and to direct the Board to recharacterize his 1969 discharge as either honorable or general. Alternatively, plaintiff requests a remand to the ABCMR with instructions to consider the new issues and the new evidence included in his counsel's June 4, 2004 submission.

## ANALYSIS

### I. Legal Standard

Judicial review of the final decision of a military correction board is limited to a determination of whether the board's decision "is arbitrary and capricious, contrary to law, or unsupported by substantial evidence." *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997); *see generally Piersall v. Winter*, 435 F.3d 319, 321-25 (D.C. Cir. 2006). Furthermore, a party seeking review of a board decision bears the burden of overcoming "the strong, but rebuttable, presumption that administrators of the military, like other public officers, discharge their duties

correctly, lawfully and in good faith." *Frizelle*, 111 F.3d at 177 (internal quotations and citation omitted); *see also Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000).

As a general matter, "[t]he scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto Ins. Co.*, 463 U.S. 29, 43 (1983). Accordingly, a court "will not disturb the decision of an agency that has 'examined the relevant data and articulated a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" *MD Pharm. v. Drug Enforcement Admin.*, 133 F.3d 8, 16 (D.C. Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43); *see also Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) ("A reviewing court will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned.") (internal quotations and citation omitted); *Smith v. Dalton*, 927 F. Supp. 1, 5 (D.D.C. 1996) ("[I]f the record contains such evidence that a reasonable mind might accept, the court must accept the board's findings.").

As the D.C. Circuit has recognized, the final decisions of military correction boards are reviewed under "an unusually deferential application of the 'arbitrary and capricious' standard." *Kreis v. Air Force*, 866 F.2d 1508, 1515 (D.C. Cir. 1989); *accord Piersall*, 435 F.3d at 324; *Musengo v. White*, 286 F.3d 535, 538 (D.C. Cir. 2002); *Cone*, 223 F.3d at 793. This high degree of deference arises from the statutory language authorizing a Secretary of a military department -- acting through civilian boards -- to correct military records "when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). As the Court in *Kreis* reasoned:

> It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act " *when he considers it necessary* to correct an error or remove an injustice," 10 U.S.C. § 1552(a) (emphasis added), than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.*, that there has been an error or injustice.

*Kreis*, 866 F.2d at 1514.  Although only the "most egregious" Board decisions will fail to satisfy this deferential standard of review, *id.* at 1515, a plaintiff nevertheless can establish that the Board's decision-making process was flawed and in violation of the APA by showing that the Board did not consider or respond to an argument that does not appear "frivolous" on its face and "could affect the Board's ultimate disposition."  *Frizelle*, 111 F.3d at 177; *see also Calloway v. Brownlee*, 366 F. Supp. 2d 43, 53 (D.D.C. 2005) ("[A]n agency action is arbitrary and capricious if the agency . . . has entirely failed to consider an important aspect of the case presented.").

## II.     The Initial ABCMR Decision: September 6, 2001

Plaintiff argues that the Board's September 6, 2001 decision violated the APA because it (1) failed to recognize errors in plaintiff's 1969 discharge procedure; (2) relied on documents not contained in the record; and (3) reached conclusions not supported by the record.  (*See* Pl.'s Opp'n at 21-32.)  The Court cannot agree.

First, there is no evidence to support plaintiff's argument that the Board violated the APA by failing to recognize violations of Army regulations or procedural or administrative errors in connection with plaintiff's 1969 discharge.  In fact, plaintiff alleged no such violations or errors in his May 29, 2001 application for an upgraded discharge.  *See* Army Reg. 15-185 ¶ 2-9, 32 C.F.R. § 581.3(e)(2) ("The ABCMR begins its consideration of each case with the presumption of administrative regularity.  The applicant has the burden of proving an error or injustice by a

preponderance of the evidence."). Rather, plaintiff simply asserted that he should have received a medical discharge because he was suffering from combat-related PTSD. As a result, the ABCMR's consideration of plaintiff's application appropriately focused on his military personnel records and his VA medical records. In the absence of evidence to the contrary in the record, the Board did not violate the APA by "presum[ing] administrative regularity in [plaintiff's] administrative separation under the provisions of Army Regulation 635-212, for unfitness." (A.R. 89.)

Plaintiff's argument that the Board's decision was arbitrary and capricious because it relied on documents that were not in the record or were not available to plaintiff at the time is unavailing. In this regard, plaintiff points to the Board's several references to alleged misstatements and unsubstantiated data contained in an alternate version of plaintiff's 1969 report of discharge on DD Form 214 -- of unknown origin -- and in plaintiff's statement of personal history on DD Form 398, which plaintiff apparently signed when he re-enlisted in 1971. (Pl.'s Opp'n at 28-29.) According to plaintiff, neither of these documents appears in the VA copy of his service records.[9] Plaintiff's arguments fail for several reasons. First, there is no evidence whatsoever that the Board relied on the so-called alternate version of plaintiff's 1969 DD Form 214. To the contrary, after comparing certain information appearing in the document with information contained elsewhere in plaintiff's military service records, the ABCMR expressly concluded that the data appearing in the alternate DD Form 214 "cannot be verified by

---

[9] The so-called alternate version of plaintiff's 1969 DD Form 214 appears in the administrative record at A.R. 188. Plaintiff's DD Form 398, which is not included in the administrative record, is attached as Exhibit A to Defendants' Reply.

the official records and appear[s] to be erroneous."[10]  (A.R. 89.)  In other words, the Board made it clear that it did *not* rely on this document.  The Board similarly did not rely on plaintiff's DD Form 398, which post-dates plaintiff's 1969 discharge by two years, in reaching its conclusion that plaintiff appropriately received a discharge under conditions other than honorable in 1969.  Instead, the Board merely discussed this document in connection with its separate conclusion -- not challenged by plaintiff in this lawsuit -- that the discharge authority mischaracterized his separation from the Army in 1971.  (A.R. 90.)[11]

In short, although the Board's Memorandum of Consideration references documents that do not appear in the VA copy of plaintiff's service records, in view of the strong presumption that military administrators discharge their duties correctly, *see Frizelle*, 111 F.3d at 177, the Court concludes that plaintiff has provided no basis upon which to infer that the Board's decision was based on evidence that was not included in the administrative record or not available to plaintiff.

Moreover, there is more than ample evidence in the record, and on which the Board did rely, to support its decision to deny plaintiff's request for an upgraded discharge.  For example, as shown in the record and summarized in the Board's Memorandum of Consideration, plaintiff received a NJP on multiple occasions and was convicted by a special-court martial for disobeying an order prior to his tour in Vietnam.  (A.R. 85.)  Then, shortly after being reassigned to Korea,

---

[10] Among other unsubstantiated pieces of information contained in this alternate DD Form 214 are notations showing that plaintiff was given an honorable discharge in 1969 and that he received a Distinguished Service Cross, Silver Star, and Purple Heart.  (A.R. 86, 188.)

[11] The Board also referred to plaintiff's DD Form 398 in connection with its attempts to verify information contained in the alternate version of plaintiff's 1969 DD Form 214.  (A.R. 86, 90)

plaintiff was convicted by a special court-martial again, this time for a variety of offenses. (*Id.*) These facts are entirely consistent with the Board's conclusion that plaintiff was discharged under conditions other than honorable, in light of applicable Army regulations in effect at the time, which "provided, in pertinent part, that members involved in frequent incidents of a discreditable nature with civil or military authorities were subject to separation for unfitness and an [undesirable discharge] was normally considered appropriate." (A.R. 88.) The Board's denial of plaintiff's request for an upgraded discharge therefore contains "a rational connection between the facts found and the choice made." *Dickson*, 68 F.3d at 1404 (citation omitted).

### III.   Denial of Plaintiff's First Request for Reconsideration: May 16, 2002

On the other hand, the Board's May 16, 2002 denial of plaintiff's December 26, 2001 *pro se* application for reconsideration violates the APA because the Board failed to address a potentially meritorious argument raised by plaintiff regarding the validity of his waiver of his right to counsel, a hearing or personal appearance before a board of officers, and the right to submit statements on his own behalf to the discharge authority. Specifically, the three-page "Statement of Reconsideration" that accompanied plaintiff's application included the statements, quoted at length *supra*, regarding the duress that he alleged he was under and the erroneous advice of counsel on which he had relied. (A.R. 73.) While these statements are not a model of clarity, it nevertheless is clear from the entire record in this case that they relate to his argument -- subsequently raised by plaintiff's counsel with far greater clarity -- that the 1969 proceeding leading to his discharge was fatally defective because plaintiff was under duress at the time and was misled into waiving his rights to counsel and a hearing based upon arguably erroneous advice of counsel. (Compl. ¶ 2.) As the Court in *Calloway* recognized, when presented with the

question of whether a *pro se* applicant who is seeking the correction of his military personnel records has raised an argument before the Board with sufficient clarity, "this Court and the agency must take pains to protect the rights of *pro se* parties against the consequences of technical errors." *Calloway*, 366 F. Supp. 2d at 55 (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). The Court accordingly concluded that the Board had acted arbitrarily in failing to respond to an argument, squarely presented to the district court by the plaintiff's counsel, even though it was "not explicitly clear that the plaintiff raised [the] argument at the agency level." *Calloway*, 366 F. Supp. 2d at 55 n.4.

Here too, the Court concludes that plaintiff sufficiently raised the argument before the ABCMR that he waived his rights under duress[12] or was misled by counsel into agreeing to be discharged from the Army by reason of unfitness under the provisions of Army Regulation 635-212 based on the mistaken belief that he would be honorably discharged. And, as plaintiff plainly has demonstrated, albeit with the assistance of counsel, this argument is far from frivolous. *See generally White v. Sec'y of the Army*, 878 F.2d 501 (D.C. Cir. 1989) (ordering the Secretary of the Army to recharacterize the undesirable discharge of a former servicemember who had initiated discharge proceedings upon the erroneous advice of counsel). Accordingly, the Board's failure to address this argument renders its May 16, 2002 decision arbitrary and "requires a remand for a more fully reasoned explanation" by the Board.[13] *Robinson v. Dalton*, 45 F. Supp.

---

[12] With respect to plaintiff's assertion that he was under duress at the time that he waived his rights and agreed to be discharged from the Army by reason of unfitness, the Court notes that according to plaintiff's field medical file, which is a part of the administrative record, plaintiff attempted suicide on May 18, 1969 -- a mere five days after he signed his waiver. (A.R. 327.)

[13] Given the absence of the waiver purportedly signed by the applicant on May 13, 1969 (Compl., Attach. I, Exhibit D), it is clear that even if one could assume that the Board considered

2d 1, 4 (D.D.C. 1998); *see also Frizelle*, 111 F.3d at 177, 179; *Calloway*, 366 F. Supp. 2d at 55 (because the Board failed to address plaintiff's non-frivolous argument, "this case must be remanded to the Secretary of the Army to review this argument in the first instance"); *Mudd v. Caldera*, 26 F. Supp. 2d 113, 120-24 (D.D.C. 1998) (remanding decision to the Secretary of the Army for failure to address "seemingly meritorious argument").

As this Court observed in *Homer v. Roche*, 226 F. Supp. 2d 222 (D.D.C. 2002), "the Court cannot find that the [Board] acted in a non-arbitrary fashion . . . . The Court's role here may be limited, but it is not that of a rubber stamp. The military's discretion may be broad, but, as the statute plainly indicates, it is not boundless." *Id.* at 226. Moreover, while a court "must uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned," *State Farm*, 463 U.S. at 43, the Court simply cannot determine whether the Board's May 16, 2002 decision was a proper exercise of its discretion, for it failed to grapple with what appears to be a substantial issue. On remand, the Board is of course free to decline to consider plaintiff's claim on the merits, but if it continues to follow that course, it will have to articulate its reasons for doing so. *See Frizelle*, 111 F.3d at 179; *Puerto Rico Higher Ed. Assistance Corp. v. Riley*, 10 F.3d 847, 853 (D.C. Cir. 1993); *Kreis*, 866 F.2d at 1512.[14]

---

plaintiff's argument (which is doubtful), it lacked the necessary evidence to properly evaluate it.

[14] Because the Court has concluded that the ABCMR's May 16, 2002 decision violated the APA and will therefore remand the case to the Board, it need not address plaintiff's claims regarding the ABCMR's subsequent decisions on January 21, 2003, July 15, 2003, and March 17, 2005. In addition, while the parties dispute whether the Court has the power to direct the Secretary to upgrade plaintiff's discharge, the Court need not address that issue at this time. The ABCMR must first be given an opportunity to address plaintiff's arguments.

## CONCLUSION

For the reasons stated, plaintiff's cross-motion for summary judgment is granted, in part, defendant's motion is denied, and this matter is remanded to the Secretary of the Army for proceedings consistent with this Memorandum Opinion. A separate Order accompanies this Memorandum Opinion.

                                                                                     s/
                                          ELLEN SEGAL HUVELLE
                                          United States District Judge

Date:   August 3, 2006