UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                               )
THOMAS ROBERTS,                )
              Plaintiff        )
                               )
v.                             )
                               )   Civil Action No. 05-2430 (ESH)
Hon. Pete GEREN,¹              )
Secretary of the Army, et al., )
                               )
              Defendants       )
_____)
```

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT**

Because the Army Board for the Correction of Military Records ("ABCMR" or "Board") has made a decision on the claim remanded by the Court, but not on other claims addressed in the original complaint, and because the Board's decision on the remanded claim contains errors, Plaintiff Thomas Roberts, by counsel, moves for leave to file an amended complaint. Pursuant to LCvR 7(a), this memorandum of points and authorities is respectfully submitted in support of that motion.

**Jurisdiction**

There may be a question whether this Court has retained jurisdiction over this

---

[1] Pursuant to Fed.R.Civ.P. 25(d)(1), the Hon. Pete Geren, who became the Acting Secretary of the Army on March 10, 2007, is automatically substituted as a proper defendant.

matter. The Court's Memorandum Opinion (R 19 ("Mem. Op."))[2] did not specifically retain jurisdiction, nor did it indicate that the case could be reopened within a specified period of time or that the matter could be reinstated. *Cf.*, Kean for Congress Comm. v. Federal Election Commission, 2005 U.S. Dist. LEXIS 2429 (D.D.C. Feb. 15, 2005) (remanded for period not to exceed sixty days, status conference scheduled for end of period); Smith v. Dalton, 927 F.Supp. 1, 10 (D.D.C. 1996) (either party may move to reopen within 30 days of final administrative action); March 30, 2005, Order at n.1, No. 04-239, Calloway v. Brownlee, 366 F.Supp.2d 43 (D.D.C. 2005) ("Should the plaintiff be dissatisfied with the Army's review of his matter, he simply needs to file a notice with this Court requesting that this matter be reinstated."). Apparently, Defendants believed the case was closed because they did not advise the Court or Plaintiff's counsel of the agency's action on remand. *Cf.*, Miller v. Roche, 2006 U.S. Dist. LEXIS 7705 (D.D.C. Feb. 10, 2006) ("The case was remanded to the Air Force for further consideration by a Special Selection Board ("SSB'). Thereafter, the Air Force submitted the full SSB report and moved for summary judgment."). At least one other plaintiff in Mr. Roberts' situation elected to re-file the case after an unsuccessful remand. *See*, Complaint for Declaratory and Injunctive Relief (Dkt. #1), Kreis v. Secretary of the Air Force, No. 02-2317, filed Nov. 22, 2002.

However, rather than filing a new case, Mr. Roberts respectfully requests the Court to permit him to file an amended complaint. This Court is already familiar with the case and the positions of both parties, the record in the case, which includes documents not filed with the Administrative Record, is already before the Court, and it would appear to be

---

[2] "R" followed by a number refers to the document corresponding to that number in the docket sheet of the District Court. "AR" followed by a number refers to the page of the administrative record before the District Court.

in the interests of both parties and judicial efficiency if this Court would continue to hear this case.

**Background**

The original Complaint (R 1) sought judicial review of five distinct Board decisions: (1) the Board's September 6, 2001, initial decision denying Mr. Roberts' application for an upgraded discharge, (2) a May 16, 2002, decision denying Mr. Roberts' request for reconsideration, (3) a January 21, 2003, staff decision that his June 10, 2002 application did not warrant submission to the Board, (4) a July 15, 2003, staff decision that his December 27, 2002, application did not warrant submission to the Board, and (5) a March 16, 2005, refusal to consider a request for reconsideration filed by Mr. Roberts' attorney. Complaint (R 1) at 12, 13.

On August 3, 2006, this Court ordered the matter remanded to the Board for "further proceedings consistent with the Court's Memorandum Opinion." R 18. That Memorandum Opinion (R 19) determined that the Board's September 6, 2001, decision did not violate the Administrative Procedure Act ("APA"). However, the Court ruled that the Board's second decision of May 16, 2002, did violate the APA in that it failed to address Mr. Roberts' arguments that his 1969 discharge proceeding was fatally defective because he was under duress when he waived his rights to a hearing, counsel, and to submit statements in his own behalf and because he was misled by an Army lawyer into believing that he would receive a discharge under honorable conditions. The Court did not decide Mr. Roberts' remaining claims:

> Because the Court has concluded that the ABCMR's May 16, 2002 decision violated the APA and will therefore remand the case to the Board, it need not

      address plaintiff's claims regarding the ABCMR's subsequent decisions on January 21, 2003, July 15, 2003, and March 17, 2005.  In addition, while the parties dispute whether the Court has the power to direct the Secretary to upgrade plaintiff's discharge, the Court need not address that issue at this time.  The ABCMR must first be given an opportunity to address plaintiff's arguments.

Mem. Op. 17, n. 14.

      On September 1, 2006, Plaintiff's counsel wrote to the Board, asking it how it intended to proceed with respect to the remand and whether a hearing would be held.  On September 15, 2006, Plaintiff's counsel received a telephone call from Walter Avery, Chief of the ABCMR Case Management Division, who said that there would be no hearing, only a records review, and that Plaintiff should submit whatever documents he wanted the Board to review.  On September 28, 2006, Plaintiff's counsel submitted to the Board copies of:

      -- the Complaint, which attached Plaintiff's June 4, 2004, Memorandum in Support of Request for Reconsideration with Attachments and Exhibits (R 1; Original Complaint[3]),

      -- Plaintiff's Memorandum of Points and Authorities (i) in Opposition to Defendants' Motion to Dismiss, in Part, and for Summary Judgment and (ii) in Support of Plaintiff's Cross-Motion for Summary Judgment with Exhibits (R 10),

      -- Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue (R 10, Ex. 6),

      -- Plaintiff's Supplemental Statement of Material Facts as to Which There is No Genuine Issue (R 15), and

      -- the Court's August 3, 2006, Memorandum and Order (R 19).

*See* Exhibit A to Amended Complaint.

---

[3] Exhibits C through J to Plaintiff's June 4, 2004, submission to the Board, a total of 51 pages, were never included in the Administrative Record. The exhibits are, however, attached to the original Complaint in this action.

When neither Mr. Roberts nor his counsel received a response, his counsel telephoned Mr. Avery on March 5, 2007, leaving a message describing the case and asking for its status.  On March 7, Plaintiff's counsel called Mr. Avery again, leaving a similar message.  On the afternoon of March 9, 2007, Mr. Avery telephoned to say that the Board denied Mr. Roberts' claim on December 5, 2006, and that he would send a copy of the Board's decision to Plaintiff's counsel by electronic mail.  To date, this is the only document that either Mr. Roberts or his counsel has received from the Board regarding the remand.  *See* Exhibit B to Amended Complaint.[4]

**The Board's December 5, 2006 decision**

On remand, the Board examined only the specific issue remanded by the Court relating to the Board's denial of Mr. Roberts' first request for reconsideration.  It did not address the Board's decisions of January 21, 2003, July 15, 2003, and March 17, 2005, which were not decided by the Court:

---

[4] The address the Board used for Mr. Roberts was an outdated P.O. Box that he listed on his July 15, 2003, submission to the Board.  His most recent address appeared on the complaint.  This is the second time in this case that Board has failed to notify Plaintiff's counsel of a Board decision.  Plaintiff's counsel was never notified of the Board's March 16, 2005, refusal to consider the brief filed on behalf of Mr. Roberts.  Whether the Board's failure to correspond with counsel is an isolated instance or whether it is a pattern or practice is unclear.  For similar treatment of other litigants, see Thalasinos v. Harvey, 2007 U.S.Dist. LEXIS 21684 at 6,7 (March 27, 2007) ("On January 4, 2000 and February 1, 2000, plaintiff's counsel made written requests for a copy of the summarized record of the Board proceedings and a copy of the tape of the hearing. ... Plaintiff did not receive a copy of the summarized proceedings until some point in 2005, nearly two years after the [ABCMR] made its decision.  Plaintiff still has not received a tape of the proceedings") and Plaintiff's Status Report, and Unopposed Motion for Leave to Continue Stay of Proceedings at 1, Wielkoszewski v. Caldera, 398 F.Supp.2d 102 (D.D.C. 2005) (No. 00-2236; Dkt. #62): "[N]either plaintiff nor his counsel were aware of a BCMR decision until today  ....  Counsel early last week called [the ABCMR] to obtain a case status ....  Today [January 31, 2006], counsel obtained a fax copy sent to his office last Friday of ABCMR Record of Proceedings dated November 8, 2005."

>This case is being reconsidered based on [the Court's August 3, 2006 Memorandum and Order].  This reconsideration will be limited to the issue raised in these court documents, and will not address issues and relief requests from the applicant or his counsel that were previously addressed by the Board with which the court took no issue.  The reconsideration is basically addressing only the argument raised by the applicant in his 16 [26?] December 2001 statement of reconsideration, as clarified by counsel in his July [June?] 2004 memorandum in support of the applicant's reconsideration request.

Amended Complaint Exhibit B at 3.

For the reasons set forth more fully below, the Court should now address the three issues that it did not decide in its August 3, 2006, Memorandum Opinion.  Moreover, as explained below, the obvious errors in the Board's December 5, 2006, reconsideration of Mr. Roberts December 16, 2001, Statement of Reconsideration requires that that decision be reviewed and set aside.

**The Board's December 5, 2006, decision violated the APA because it addressed in an irrational and arbitrary fashion the specific issue remanded by this Court.**

The Court concluded that "plaintiff sufficiently raised the argument before the ABCMR that he waived his rights under duress or was misled by counsel into agreeing to be discharged from the Army by reason of unfitness under the provision of Army Regulation 635-212 based on the mistaken belief that he would he honorably discharged."  Mem. Op. at 16.  However, the Board's explanation of its review of this issue on remand not only inaccurately describes the record, but is irrational.  For example, the second sentence of paragraph 4 of the Board's December 5, 2006, Discussion and Conclusions, notes that "There is no indication that [Mr. Roberts] received erroneous information from this qualified JAG attorney, or that he was given an expectation that he would receive a GD [General Discharge]."  Two sentences later the Board acknowledged that Mr. Roberts' December 26, 2001, letter to the Board stated, as this Court's memorandum opinion noted, that "[t]he JAG

lawyer said that <u>I most likely received</u> a General Discharge under honorable conditions, but that didn't happen."  See Amended Complaint Exhibit B at 6 (emphasis in original).

The Board then declared that Mr. Roberts "should have known that he was not guaranteed a GD.  The first time an argument or assertion is raised that he remembers being told he would receive a GD is in later submissions from his counsel in 2004."  This, of course, is incorrect.  The Court's Memorandum Opinion quotes Mr. Roberts December 26, 2001, submission to the Board: "The JAGC lawyer said that I most likely received a General Discharge under Honorable Condition, but that didn't happen."  Mem.Op. at 4.  Moreover, neither Mr. Roberts nor his counsel has ever maintained that Mr. Roberts was "guaranteed," or even promised that he would receive, a General Discharge.  Mr. Roberts attached his affidavit to his June 4, 2004, submission to the Board declaring that "my defense counsel explained that ... most likely a General Discharge would result."  Plaintiff's counsel has been careful to repeat the "most likely" language, using it on pp. 12 and 20 of the June 5, 2004, submission (AR 18, 27).  Even the Board's Statement of the Evidence describes at paragraph 5, page 3, Mr. Roberts recalling that he was told that he "most likely" would receive a General Discharge, not that he was "guaranteed" a General Discharge.  It appears that the Board reconsidered Mr. Roberts' December 26, 2001, Statement of Reconsideration on the mistaken assumption that he was claiming that the Army lawyer "guaranteed" him an honorable discharge.  This, of course, is incorrect and another example of error.

The role of the Army attorney advising Mr. Roberts during his 1969 discharge proceeding is curious.  He certainly was not Mr. Roberts' counsel because Mr. Roberts had waived his right to counsel.  See Mem. Op. at 3.  There is no evidence to support the Board's conclusion that Mr. Roberts "consulted" or sought advice from the JAG attorney (paragraph

9, page 5).  Rather, the evidence is to the contrary.  As Mr. Roberts noted in his December 26, 2001, statement of reconsideration: "... so when CPT. David V. Foley appeared to advise me on the contemplated separation under AR 635-212, what did I know?  ... on 13 May 69 here comes a JAGC lawyer by the name of CPT. David V. Foley who offered me a way out of the stockade, I was under duress ...."  AR 73.

The Board's December 5, 2006, decision contains more errors.  For example, the Court's Memorandum Opinion notes that the special exceptions in Army Regulation 635-212, which requires an Undesirable Discharge for separations for unfitness -- exceptions that would have permitted an Honorable Discharge instead of the normal Undesirable Discharge -- did not apply to Mr. Roberts' situation.  The inapplicability of these exceptions "made it all but a certainty that plaintiff would receive a discharge under conditions other than honorable, and *not*, as plaintiff appears to have believed, a discharge under honorable conditions." (Mem. Op. at 4 (emphasis in original)).  The Board echoed this conclusion in paragraph 7 of its Discussion and Conclusions:  "There is no evidence of special circumstances that would have supported a GD at the time of the applicant's discharge ...."  Yet, in the preceding paragraph 5, the Board cites these special, yet inapplicable, exceptions, as support for its conclusion that Mr. Roberts "was properly counseled" when he waived his rights:  "The governing regulation in effect at the time did indicate that an UD ... was normally considered appropriate for members separating for unfitness; however, it also provided for the separation authority to issue a GD under special circumstances.  Therefore, the applicant was properly counseled ...."  *See* Amended Complaint Exhibit B at 6.  Because the Board admitted that it was impossible for Mr. Roberts to receive a General Discharge, the Board's December 5, 2006, decision was arbitrary, capricious, irrational, and an abuse of discretion when it found

that Mr. Roberts was not misled when the Army lawyer told him that if he waived his rights to counsel, a hearing, and the right to make a statement in his behalf, he "most likely" would receive a General Discharge.

**The Board's December 5, 2006, decision violated the APA because it failed to address all of the issues raised by Mr. Roberts in his December 26, 2001, submission.**

The December 5, 2006, decision on remand purports to reconsider the Board's May 16, 2002, decision, but Mr. Roberts December 26, 2001, Statement of Reconsideration asserts claims that the Board ignored in both its decisions of May 16, 2002, and December 5, 2006. For example, the Court's Memorandum Opinion noted that Mr. Roberts' December 26, 2001, *pro se* application for reconsideration -- the application the Board was supposed to review -- asserted that; "while in Korea, he encountered racial prejudice and discrimination, an 'oversight by the Doctors in their Physical, and mental evaluation,' and 'a tremendous amount of psychological trauma that led to classification of Unfitness.'" The Court's Memorandum Opinion also observed: "Plaintiff also alleged that at the time of his discharge, there was an 'on going [sic] practice in the Military to bar all black veterans from any benefits.'" Mem. Op. at 7. Neither the Board's May 16, 2002, decision, nor its December 5, 2006, decision, specifically addresses these claims in Mr. Roberts' December 26, 2001, Statement of Reconsideration -- claims (i) that much of his Army difficulties were based on racial prejudice, (ii) that the psychiatric clearance for his discharge proceeding was based on an incomplete medical evaluation, and (iii) that his unfitness determination was unfairly based on his actions that were the result of psychological trauma that he had suffered in the Army.

The only part of the Discussion portion of the May 16, 2002, decision that remotely touches on these claims is the Board's statement that "His argument that he was being discriminated against while in Korea because of his medical profile against shaving is not convincing."  AR 68.  Of course, Mr. Roberts' claims of racial discrimination go much farther than being discriminating against for having a medical profile that permitted a beard.  His December 26, 2001, Statement of Reconsideration asserts:  "The above charges were fabricated in order to promote racism, and to hinder all minorities by any means, because their (sic) was at the time a on going [sic] practice in the Military to bar all black veterans from any benefits."  AR 72.   He described his Korean garrison as "very racial, the area was poison."  AR 73.  The Army may have responses to Mr. Roberts' claims, but the APA entitles Mr. Roberts to hear them.

The Board December 5, 2006, reconsideration stated that on remand it was limiting its review "to the issue raised in court documents" (Ex. B at 3), yet it ignored this Court's observation that Mr. Roberts attempted suicide five days after he signed the waiver of his rights.  Mem. Op. at 16, n. 12.  A suicide attempt is probative of the duress that Mr. Roberts' was under when he signed away his rights.  It is evidence that the Board must confront.[5]

---

[5] Less that a year after Pvt. Roberts signed the waiver of his rights, the Army amended AR 635-212 to permit the withdrawal of a waiver at any time prior to the date of actual discharge.  See Exhibit H to Mr. Roberts' June 4, 2004, submission to the Board.

**Because the Board's December 5, 2006, decision avoided the issues not decided in this Court's August 3, 2006, Memorandum Decision, Mr. Roberts asks the Court to address them now.**

The Board's December 5, 2006, decision did not address the Board's decisions of January 21, 2003, July 15, 2003, and March 17, 2004, which were not decided by the Court.

**The Board's decisions of January 21, 2003, and July 15, 2003.**

On June 10, 2002, Mr. Roberts submitted a second application for reconsideration (R 48) which attached copies of his discharge (R 49), the psychiatric clearance for his discharge proceeding (R 50), a copy of his court martial conviction (R 51), photos of various civilian master plumber licenses that he held subsequent to his discharge (R 52), an enrollment form from an Alabama community college indicating course enrollment (R 53), and a June 4, 2002, typewritten statement describing racial prejudice in the Army and indicating that he has heard nothing from the Board since he submitted his application six months previously (R 54).

As the Court's Memorandum Opinion notes, on January 21, 2003, the Board responded to his June 10, 2002, request by advising him that the Board's staff had determined that his application did not warrant resubmission to the Board.  R 47, Mem. Op. at 8.  The Board's January 21, 2003, decision cited paragraph 2-15b of Army Regulation 15-185, which, at the time of the decision, provided that requests for reconsideration received more than one year after the original decision would be reviewed by the Board's staff for evidence of certain criteria for re-opening a decision and if the staff does not find such

- 11 -

evidence the application will be returned to the applicant without action. See Mem. Op. at 8, n.8.

On December 27, 2002, Mr. Roberts submitted a third request for reconsideration – a typewritten application with no attachments. R 46. On July 15, 2003, the Board responded to Mr. Roberts with a letter, similar to its January 21, 2002, letter advising him once again that the under the applicable version of paragraph 2-15b of Army Regulation 15-185, the "staff of the Board has determined that your current application does not contain evidence" that meets the cited criteria. R 45.

Because the decisions of January 21 and July 15, 2003, were made by staff and not by the Board, they were in violation of 10 U.S.C. § 1552. As this Court noted in its Memorandum Opinion, the Hon. Ricardo M. Urbina has already held in Lipsman v. Secretary of the Army, 335 F.Supp. 2d 48 (D.D.C. 2004) that section 1552 requires the ABCMR to act through boards of civilians, not its staff members, regardless of whether it is deciding an original application or a subsequent request for reconsideration. Mem. Op. at 9.

**The Board's decision of March 17, 2005.**

As the Court's Memorandum Opinion notes: "On June 4, 2004, plaintiff submitted a fourth application for reconsideration, this time with the direct assistance of legal counsel. Attached to plaintiff's application was a twenty-nine page memorandum with fifty-four pages of exhibits" that raised new issues and attached new and material evidence that had not been previously presented to the Board. Mem. Op. at 9; R 2-39.[6] Much of the June 4, 2004, submission addressed issues concerning apparent defects in the Board's initial

---

[6] See n. 3 *supra*.

September 6, 2001, decision -- issues which the Court's August 3, 2006, Memorandum Opinion has already considered and are no longer present in this case. Other parts of the Plaintiff's June 4, 2004, submission dealt with the issues of duress and waiver of rights during Mr. Roberts 1969 discharge proceeding, issues that this Court has already considered in its August 3, 2006, Memorandum Opinion and which resulted in the Court's remand order.

However, Plaintiff's June 4, 2006, submission to the Board raised other issues that have not been considered by either the Board or this Court. For example, Plaintiff's submission showed that the Army's 1969 Undesirable Discharge must be set aside because the procedure for Mr. Roberts' discharge did not follow the requirements of Army Regulation 635-212 in effect at the time for the discharge of soldiers. The June 4, 2004, submission showed that Mr. Roberts' 1969 discharge procedure failed (i) to make required findings with respect to the waiver of the required counseling and rehabilitation, (ii) to be initiated by the required recommendation by the unit commander, and (iii) to exclude records of prior non-judicial punishments as required by Army Regulation 27-10 in effect at the time.

As this Court's Memorandum Opinion noted, the Board returned Mr. Roberts' June 4, 2004, application for reconsideration, apparently unread. The Board's March 17, 2005, letter noted that Mr. Roberts' case was considered on September 6, 2001, that no further ABCMR action is contemplated, that he had exhausted all of his administrative remedies, and that Mr. Roberts had the option of seeking "relief in a court of appropriate jurisdiction." Without citing Lipsman, the Board referred to "a recent court decision" ordering the deletion of paragraph 2-15b of AR 15-185, and stated that the effect of the decision "now permits an applicant to request reconsideration of an earlier ABCMR decision

if the request is received within one year of the ABCMR's original decision and it has not been previously reconsidered." Mem. Op. at 9; AR 1.

Lipsman was decided on September 7, 2004, while Mr. Roberts' June 4, 2004, application was pending at the Board. Clearly, the staff-decisions-violate-10 U.S.C. § 1552 holding of Lipsman applies to the dispositive staff decisions made March 17, 2005 as well as to those made on January 21 and July 15, 2003. Moreover, the post-Lipsman Army Regulation amending paragraph 2-15(b) of Army Regulation 15-185 did not become effective until May 1, 2006, five months after the original complaint in this action had been filed. R 10, Ex. E, Army Regulation 15-185, dated 31 March 2006; Summary of Change: ("This rapid action revision dated 31 March 2006 [u]pdates policies and procedures ... to comply with ... the decision [in Lipsman]").

**Conclusion.**

As described above, the Board's December 5, 2006, reconsideration of Mr. Roberts' December 26, 2001, Statement of Reconsideration violated the APA because it addressed the specific issue referred by this Court in an irrational and arbitrary fashion and because it failed to address all of the issues raised by Mr. Roberts in his December 26, 2001, submission. Because the Board's December 5, 2006, reconsideration avoided the issues not decided in this Court's August 3, 2006, Memorandum decision, *viz*. the Board's decisions of January 21 and July 15, 2003 and its March 17, 2004 decision, Mr. Roberts respectfully asks the Court to address them now. By granting Mr. Robert's motion for leave to file an amended complaint the Court can address both the new issues raised by the Board's

- 14 -

December 5, 2006, decision as well as the issues not decided in its August 3, 2006, Memorandum Opinion.

                                        Respectfully Submitted,

                                              /S/
                                        _____
                                        Michael W. Dolan, Esq.
                                              D.C. Bar No. 3384
                                        2021 L Street, N.W.
                                        Suite 204
                                        Washington, D.C.  20036
                                        202/293-2776
                                        *Counsel for Plaintiff*