

**DEPARTMENT OF THE ARMY**
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

SFMR-RBR

December 11, 2006

MEMORANDUM FOR US ARMY REVIEW BOARDS AGENCY SUPPORT DIVISION, ST. LOUIS (SFMR-RBR-SL), 9700 PAGE AVENUE, ST. LOUIS, MO 63132-5200

SUBJECT: Army Board for Correction of Military Records Record of Proceedings for Roberts, Thomas, SSN 377461141, AR20060012979

The application submitted by the individual concerned has been denied by the Army Board for Correction of Military Records.

Encl

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

CF:
( ) OMPF
( )

EXHIBIT B



**DEPARTMENT OF THE ARMY**
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

December 11, 2006

AR20060012979, Roberts, Thomas

Mr. Thomas Roberts
PO Box 746
Leighton AL  35646 0746

Dear Mr. Roberts:

I regret to inform you that the Army Board for Correction of Military Records denied your application.

The Board considered your application under procedures established by the Secretary of the Army.  I have enclosed a copy of the Board's Record of Proceedings. This decision explains the Board's reasons for denying your application.

This decision in your case is final.  You may request reconsideration of this decision within one year only if you can present new evidence or argument that was not considered by the Board when it denied your original application.

Sincerely,

**Signed**

Carl W. S. Chun
Director, Army Board for Correction
of Military Records

Enclosure





**DEPARTMENT OF THE ARMY**
BOARD FOR CORRECTION OF MILITARY RECORDS
1901 SOUTH BELL STREET 2ND FLOOR
ARLINGTON, VA 22202-4508

## RECORD OF PROCEEDINGS

IN THE CASE OF:    ROBERTS, THOMAS

BOARD DATE:        5 December 2006
DOCKET NUMBER:  AR20060012979

I certify that hereinafter is recorded the true and complete record of the proceedings of the Army Board for Correction of Military Records in the case of the above-named individual.

| | |
|---|---|
| Mr. Carl W. S. Chun | Director |
| Mr. Joseph A. Adriance | Analyst |

The following members, a quorum, were present:

| | |
|---|---|
| Ms. Linda D. Simmons | Chairperson |
| Mr. Patrick H. McGann | Member |
| Mr. Donald W. Steenfott | Member |

The Board considered the following evidence:

Exhibit A - Application for correction of military records.

Exhibit B - Military Personnel Records (including advisory opinion, if any).

ABCMR Record of Proceedings (cont)                    AR20060012979

THE APPLICANT'S REQUEST, STATEMENT, AND EVIDENCE:

1. This case is being reconsidered as a result of a Court Order and
Memorandum of Opinion issued by the United States District Court for the District
of Columbia, both dated 3 August 2006, which remanded the applicant's case to
the Army Board for Correction of Military Records (ABCMR) for further
proceedings.

2. As outlined in the Memorandum of Opinion of 3 August 2006, the court
determined that the ABCMR acted arbitrarily and capriciously in its 16 May 2002
review of the applicant's case by failing to address a potentially meritorious
argument raised by the applicant that he was under duress, and relied on the
erroneous advice of counsel when he completed his waiver of rights in
connection with his 1969 separation processing. This argument was
subsequently clarified by the applicant's counsel, who asserted that the 1969
proceeding leading to the applicant's discharge was fatally defective. The court
concluded the applicant sufficiently raised the argument that he waived his rights
under duress, or was misled by counsel into agreeing to be discharged from the
Army by reason of unfitness on the mistaken belief that he would be honorably
discharged. The court found that the Board's failure to address this argument
renders its 16 May 2002 decision arbitrary and requires remand for a more fully
reasoned explanation by the Board.

3. In a Statement of Reconsideration submitted by the applicant with his
26 December 2001 application for correction of military records requesting
reconsideration of his request to upgrade his discharge, which had been
previously considered and denied by the Board on 6 September 2001, the
applicant indicated, in part, that he was placed in a six by six foot cell in the
stockade in March 1969, for no reason. He claims he had no contact with other
inmates, no physical exercise, and that he endured this injustice for over four
months, at which time he was advised of his rights in conjunction with his being
processed for separation by a Judge Advocate General (JAG) attorney. He
claims he had never heard of this before, but it was his way of getting out, and he
wanted out.

4. In a memorandum in support of the applicant's request for reconsideration,
dated 4 June 2004, the applicant's counsel alleged the applicant's waiver of
counsel and a hearing was fatally defective because it was secured under
misleading terms.

5. In his 4 June 2004 memorandum, counsel asserted, in pertinent part, that
after 48 days in prison with another 132 days halfway around the world from
home, the applicant waived his right to counsel and to consideration of his case

ABCMR Record of Proceedings (cont)                                AR20060012979

by a board of officers, two important procedural rights. Counsel stated that the
applicant signed a waiver that specifically noted that he could receive a general,
under honorable conditions discharge (GD) or an UD, under conditions other
than honorable discharge. He further stated that that in fact, the applicant
recalled being told that most likely he would receive a GD. However, the
ABCMR's 6 September 2001 decisional document points out that an UD was
normally considered appropriate for members separated under unfitness
provisions of the regulation. Counsel claims that while the applicant was sitting
in his cell in Korea, he waived his right to counsel and a hearing thinking he was
risking either a GD or UD, under conditions other than honorable conditions, and
was told he would likely receive a GD; however, in reality, a GD was not an
option, and the applicant unwittingly agreed to an UD, under conditions other
than honorable.

CONSIDERATION OF EVIDENCE:

1. This case is being reconsidered based on a United States District Court for
the District of Columbia Court Order and Memorandum Opinion, both dated
3 August 2006. This reconsideration will be limited to the issue raised in these
court documents, and will not address issues and relief requests from the
applicant or his counsel that were previously addressed by the Board with which
the court took no issue. The reconsideration is basically addressing only the
argument raised by the applicant in his 16 December 2001 statement of
reconsideration, as clarified by his counsel in his July 2004 memorandum in
support of the applicant's reconsideration request.

2. Incorporated herein by reference are military records which were summarized
in the previous consideration of the applicant's case by the Army Board for
Correction of Military Records (ABCMR) in Docket Number AR2001058201 on
6 September 2001 and in Docket Number AR2002067525 on 16 May 2002.

3. The applicant's record shows that he initially enlisted in the Regular Army and
entered active duty on 13 July 1967. He was trained in, awarded, and served in
military occupational specialty (MOS) 11B (Infantryman). He also attended the
basic airborne course at Fort Benning, Georgia, and was released from this
course and permanently disqualified due to a lack of adaptability on 9 February
1968.

4. The applicant's record further shows he served in the Republic of Vietnam
(RVN) from 17 June 1968 through 4 September 1968, at which time he was
reassigned to Korea. It further shows that during his active duty tenure, he
earned the National Defense Service Medal (NDSM), Vietnam Service Medal

ABCMR Record of Proceedings (cont)                AR20060012979

(VSM), Air Medal (AM), Combat Infantryman Badge (CIB), Expert Marksmanship
Qualification Badge with Machinegun Bar, and the Sharpshooter Marksmanship
Qualification Badge with Rifle Bar.

5. The applicant's disciplinary record shows he accepted non-judicial
punishment (NJP) under the provisions of Article 15 of the Uniform Code of
Military Justice (UCMJ) on three separate occasions between 1 March and 28
December 1968, and that he was convicted of violations of the UCMJ by special
court-martial (SPCM) on 8 May 1968 and again on 7 May 1969. It also confirms
he accrued 27 days of time lost due to being absent without leave (AWOL) and in
confinement.

6. On 10 February 1969, the unit commander initiated action to bar the applicant
from reenlistment and cited the applicant's record of NJP and 8 May 1968 SPCM
conviction as the basis for taking the action. On 25 March 1969, the appropriate
authority approved the imposition of a bar to reenlistment on the applicant.

7. On 26 March 1969, the applicant was placed in pre-trial confinement in Korea,
pending court-martial. On 7 May 1969, a SPCM convicted him of violating the
following Articles of the UCMJ by committing the offenses indicated: Article 86,
by failing to go to his appointed place of duty without authority on or about
26 January 1969; Article 92, by violating a lawful general regulation on or about
26 January 1969; Article 121, by stealing property of the United States Army
valued at $30.00 on or about 28 December 1968; Article 134 (3 Specifications)
by wrongfully and unlawfully leaving the scene of an accident without making his
identity known on or about 26 January 1969, by wrongfully having in his
possession 2.6 grams, more or less, of marijuana on or about 25 December
1968, and by breaking restriction on or about 28 December 1968; and
Article 121 (2 Specifications), by stealing 20 blankets valued at $152.98 on or
about 18 March 1969 and by wrongfully appropriating a truck on or about
18 March 1969. The resultant sentence was confinement at hard labor for six
months, forfeiture of $73.00 per month for six months, and reduction to
private/E-1 (PV1). On 7 May 1969, the SPCM convening authority approved the
sentence and ordered it executed.

8. The unit commander recommended the applicant be required to appear
before a board of officers convened under the provisions of Army Regulation
635-212 for the purpose of determining whether he should be discharged before
the expiration of his term of service. The applicant's frequent acts of misconduct
that were a discredit to the military service was the stated basis for separation
action. The unit commander also recommended waiver of further counseling and
of a rehabilitation transfer.

ABCMR Record of Proceedings (cont)                    AR20060012979

9. On 13 May 1969, the applicant consulted with a JAG attorney and was advised of the basis for his contemplated separation, its effects, and of the rights available to him. Subsequent to receiving this legal counsel, the applicant elected to waive consideration of his case by a board of officers, personal appearance before a board of officers, representation by counsel, and he elected not to submit a statement in his own behalf.

10. In his waiver of rights statement, the applicant acknowledged that he understood that he could encounter substantial prejudice in civilian life in the event he received a GD, and that he further understood that, as a result of receiving an UD, under conditions other than honorable, he could be ineligible for many or all benefits as a veteran under both Federal and State laws, and that he could expect to encounter substantial prejudice in civilian life. The applicant and the JAG attorney authenticated this document with their signatures.

11. The separation authority, the proceedings of a board of officers having been properly and effectively waived, waived counseling and rehabilitative transfer, and directed the applicant be discharged for unfitness under the provisions of Section II, Army Regulation 635-212, and that he receive an UD. On 22 July 1969, the applicant was discharged accordingly.

12. Army Regulation 635-212, in effect at the time, provided the authority for the separation of members by reason of unsuitability and unfitness. The regulation established that members separated for unfitness would normally receive an UD; however, it also provided for the issue of a GD under special circumstances. It also stipulated that counsel for consulting for a waiver of consideration by a board of officers would be a lawyer, and it provided a sample waiver of rights statement to be completed by individuals being processed for separation, which was the one used in the applicant's case.

DISCUSSION AND CONCLUSIONS:

1. The contentions of the applicant and his counsel that the applicant was under duress, and relied on the erroneous advice of counsel when he completed his waiver of rights in connection with his 1969 separation processing, and the supporting documents provided by the court, the applicant, and his counsel, were carefully considered. However, there is insufficient evidence to support these claims.

2. There is no evidence of record supporting the applicant's assertions that he was unjustly confined, or that shows he was treated differently than any other member in the stockade at the time. The applicant's confinement was the result of his misconduct. Any duress he was feeling was clearly related to his justified

5

ABCMR Record of Proceedings (cont)                         AR20060012979

confinement, which was the result of the offenses he committed that ultimately
led to his SPCM conviction, and there is no indication that this duress was
extraordinary.

3. Further, there is no evidence of record or credible independent evidence that
would support a conclusion that the applicant was treated unfairly while in
confinement, or that he was coerced into waiving his rights. To the contrary, the
evidence shows the applicant voluntarily elected to waive his right to
representation by counsel and a hearing before a board of officers in order to
avoid further confinement and to expedite his discharge, which in effect were his
goals at the time, as he admits in his 26 December 2001 statement of
reconsideration.

4. Further, it is clear that the applicant received counsel from a qualified
JAG attorney on the basis for his contemplated separation, its effects, and
of the rights available to him during the completion of his waiver of rights
statement. There is no indication that he received erroneous information from
this qualified JAG attorney, or that he was given an expectation that he would
receive a GD. In fact, the applicant makes no such assertion in the statement of
reconsideration, dated 26 December 2001, referred to by the court. The
applicant states in this letter "[t] he JAG lawyer said that I most likely received a
General Discharge under honorable conditions, but that didn't happen. This
statement when considered with the language of the applicant's election form
concerning the effects of the possible characterizations, makes clear that the
applicant knew or should have known that he was not guaranteed a GD. The
first time an argument or assertion is raised that he remembers being told he
would receive a GD is in later submissions from his counsel in 2004.

5. The governing regulation in effect at the time did indicate that an UD, under
conditions other than honorable, was normally considered appropriate for
members separating for unfitness; however, it also provided for the separation
authority to issue a GD under special circumstances. Therefore, the applicant
was properly counseled on the effects of both a GD and UD by his legal counsel
when he completed his waiver of rights statement.

6. The waiver of rights statement completed and authenticated by the applicant
with his signature confirms that he was indeed properly counseled regarding the
ramifications connected with receiving an UD, under conditions other than
honorable. In it, he acknowledged his understanding of the effects of receiving
an UD. As a result, there is no evidence that would support a conclusion that he
was given erroneous counsel, or that he was not aware of the possible

6

ABCMR Record of Proceedings (cont)                          AR20060012979

consequences of receiving an UD. Nothing in the record rebuts the presumption that the applicant's election to waive his rights was made knowingly and intelligently.

7. The evidence of record confirms the applicant's separation processing was accomplished in accordance with the governing regulation in effect at the time, and there is no indication of fatal procedural errors that would support overturning this valid discharge action at this time. The waiver of rights statement completed by the applicant, after being fully and properly counseled by his JAG attorney, was the appropriate statement provided in the governing regulation. Further, the applicant's UD was clearly supported by his record of misconduct, and it accurately reflects his overall record of service. There is no evidence of special circumstances that would have supported a GD at the time of the applicant's discharge, or that would support an upgrade of his discharge now.

8. In order to justify correction of a military record the applicant must show to the satisfaction of the Board, or it must otherwise satisfactorily appear, that the record is in error or unjust. The applicant has failed to submit evidence that would satisfy this requirement.

BOARD VOTE:

_____  _____  _____    GRANT FULL RELIEF

_____  _____  _____    GRANT PARTIAL RELIEF

_____  _____  _____    GRANT FORMAL HEARING

_____  _____  _____    DENY APPLICATION

BOARD DETERMINATION/RECOMMENDATION:

1. The evidence presented does not demonstrate the existence of a probable error or injustice. Therefore, the Board determined that the overall merits of this case are insufficient as a basis for correction of the records of the individual concerned, or to amend the decisions of the ABCMR set forth in Docket Number Docket Number AR2002067525, dated 16 May 2002.

_____
CHAIRPERSON