UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| THOMAS ROBERTS,<br>　　　　　Plaintiff<br><br>v.<br><br>Hon. PETE GEREN,<br>Acting Secretary of the Army, et al.,<br><br>　　　　　Defendants | )<br>)<br>)<br>)<br>)<br>)   Civil Action No. 05-2430 (ESH)<br>)<br>)<br>)<br>)<br>) |

PLAINTIFF'S STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE

　　　　Pursuant to LCvR 7(h) and 56.1, Plaintiff respectfully submits the following statement of material facts as to which there is no genuine issue.  This statement is submitted in support of Plaintiff's Opposition to Defendants' Motion to Dismiss, in part, and for Summary Judgment.  It is also submitted in support of Plaintiff's Cross-Motion for Summary Judgment.

　　　　1.  Thomas Roberts' three year enlistment in the U.S. Army began on July 13, 1967.  AR 302.

　　　　2.  On June 17, 1968, he was ordered to Vietnam as a scout observer.  AR 249.

      3.  While serving as a scout observer in Vietnam, both his conduct and efficiency were rated as "excellent."  AR 249.

      4.  On August 28, 1968, he was ordered to Korea under the provisions of Army Regulation 614-17, which provided deferments of Vietnam service for soldiers with family members already serving in Vietnam.  Court's August 3, 2006, Memorandum Opinion (R 19) ("Memorandum Opinion") at 2.

      5.  On March 28, 1969, Mr. Roberts was placed in pre-trial confinement in the Eighth Army Stockade in Seoul, Korea.  AR 34, 60.

      6.  On April 17, 1969, while still in confinement, Mr. Roberts was tried by special court-martial for the following offenses occurring between December 25, 1968, and March 18, 1969:  leaving his place of duty without proper authority, violating curfew, stealing Army property, wrongfully appropriating an Army truck, wrongful possession of marijuana, and breaking restriction.  AR 251, 323-325.  The specification of Charge IV and Charge IV and specification 4 of Charge V were dismissed for lack of sufficient evidence.  AR 325.  On May 7, 1969, he was sentenced to six months confinement at hard labor.  AR 34, 60, 323-325.

      7.  Mr. Roberts recalls being told by the defense counsel at his court-martial, which Mr. Roberts believed was a special court- martial that did not have the authority to discharge him, that a discharge proceeding would be recommended and that most likely he would receive a General Discharge.  AR 34.

      8.  On May 13, 1969, Mr. Roberts waived his right to counsel, a hearing, and the right to submit statements in his own behalf and submitted to a proceeding to discharge him from the Army for unfitness under the provisions of Army Regulation 635-212.  The

waiver specifically recited that he could receive either a General or a Discharge Under Conditions Other Than Honorable ("UCOTH"). See Complaint, Attach. I, Ex. D, (R 1) document not in AR).

9. Mr. Roberts' field medical file reflects that on May 18, 1969, he attempted suicide. AR 327; Memorandum Opinion at 16, n. 12.

10. The Army Board for the Correction of Military Records ("ABCMR" or "the Board") memorandum of September 6, 2001, points out that because Mr. Roberts was discharged under paragraph 6a(1) of Army Regulation 635-212 a "UD" (undesirable or UCOTH discharge) "was normally considered appropriate." AR 88.

11. Paragraph 4a of Army Regulation 635-212, in effect at the time, provided that "an individual separated by reason of unfitness will be furnished an undesirable discharge" except in special situations for which Mr. Roberts could not qualify. See Complaint, Attach. I, Ex. G (R 1) (document not in AR).

12. On June 6, 1969, a Military Police correctional officer, Lt. Raymond Reass, recommended Mr. Roberts' discharge under AR 635-212 to the Commanding General, stating: "In view of this soldier's record of disciplinary actions, request waiver of counseling and (further) transfer for rehabilitation" AR 254 - 257 (256 and 257 are transposed).

13. In an undated "Action," the Commander of the Eighth Field Army Support Command, noting the correctional officer's recommendation that the counseling and further rehabilitation required by Army Regulation 635-212 be waived, ordered an Undesirable Discharge. AR 228.

14. Paragraph 7a of Army Regulation 635-212, in effect at the time, required that service members discharged under paragraph 6a(1) must receive counseling, and a specific memorandum made of that fact. Paragraph 7b(2) required rehabilitation through reassignment. Paragraph 7c(2) and (3) provided that counseling and rehabilitation can only be waived by the general court-martial authority "when he determines that further duty of the individual will, in his best judgment, create serious disciplinary problems or a hazard to the military mission or to the individual." See Complaint, Attach. I, Ex. G (R 1) (document not in AR).

15. No waiver of counseling and rehabilitation through reassignment containing the specific finding described in paragraph 7c(2) and (3) of Army Regulation 635-212, in effect at the time, "that further duty of the individual will ... create serious disciplinary problems or a hazard to the military mission or to the individual" appears in the Administrative Record or in any other part of the record of this case.

16. Paragraph 10 of AR 635-212, in effect at the time, required the individual's unit commander to initiate the discharge process: "The unit commander of the individual will recommend action under this regulation ...." Paragraph 12 requires the individual's commander to forward a "Commanding officer's report" through the appropriate intermediate commander, if appropriate, to the general court-martial convening authority. See Complaint, Attach. I, Ex. G (R 1) (document not in AR).

17. The discharge recommendation prepared by Correctional Officer Reass is not labeled a "commanding officer's report and is signed by Lt. Reass as Mr. Roberts' "correctional officer," not "commanding." AR 254 - 257 (256 and 257 are transposed). There is no indication in the record that Lt. Reass ever commanded a unit to which Mr.

- 5 -

Roberts was assigned or that the recommendation ever reached the general court-martial authority through the appropriate intermediate commander.

18. Correctional Officer Reass's recommendation to General Holm was reviewed by Gen. Holm's Staff Judge Advocate, Lt. Col. George Taylor, Jr., who appended records of two separate non-judicial punishments under UCMJ Article 15 that Mr. Roberts received on March 5 and April 22, 1968, while in basic airborne training at Ft. Benning, Georgia. AR 256 (AR 256 and 257 are transposed).

19. Mr. Roberts had been transferred several times subsequent to the imposition of these two separate non-judicial punishments more than one year earlier. AR 249.

20. Army Regulation 27-10, in effect at the time, specifically forbade the mention of one-year-old or older non-judicial punishments in a proceeding against him if the individual had been subsequently transferred and one year had elapsed.

21. The September 6, 2001, decision of the Army Board for Correction of Military Records ("ABCMR" or "the Board") recites that "On 10 February 1969, the applicant's commander initiated a recommendation to bar him from reenlistment and cited the applicant's conviction by a special court-martial and three NJPs [non-judicial punishments] as the basis for the action. On 25 March 1969, the appropriate authority approved the imposition of the bar to reenlistment." AR. 85.

22. The Administrative Record contains a March 25, 1969, approval of what appears to be a February 10, 1969, recommendation (AR 265), and Defendants' Material Fact No. 6 refers to a February 10, 1969, recommendation. However no February 10, 1969, recommendation appears in the Administrative Record. The Administrative Record does

contain a February 5, 1969, recommendation, but that recommendation only mentions one non-judicial punishment.  AR 320.

23. The February 5, 1969, commander's recommendation for a bar to re-enlistment that does appear in the Administrative Record (AR 320) relies on a "pending court-martial" that is, at this point, more than two months in the future.

24. On July 22, 1969, Mr. Roberts received a UCOTH discharge by reason of unfitness under the provisions of Army Regulation 635-212.  He was properly awarded the National Defense Service Medal, the Vietnam Service Medal, the Air Medal and the Combat Infantryman Badge.  AR 49.

25. On May 10, 1971, Mr. Robert applied to the Army Discharge Review Board ("ADRB") for an upgrade to his discharge.  AR 237.

26. On July 28, 1971, Mr. Roberts re-enlisted in the Army for another three-year period.  AR 199.

27. On August 19, 1971, Mr. Roberts was discharged from his second enlistment with an Honorable Discharge on the basis of erroneous enlistment.  AR 187.

28. On December 18, 1972, the ADRB denied Mr. Roberts' May 10, 1971, request for an upgraded discharge.  AR 231.

29. On May 29, 2001, Mr. Roberts applied to the ABCMR.  AR 93.  His application attached Department of Veterans Affairs ("VA") medical records indicating that he had been diagnosed as suffering from combat-related post-traumatic stress disorder ("PTSD").  He also attached a letter from the Coordinator of his VA PTSD Clinical Team, who noted that Mr. Roberts' condition was overlooked or misdiagnosed at the time and that

his lack of treatment resulted in "his incarceration, mistreatment and discharged with other than an honorable discharge, instead of a medical due to combat related PTSD." AR 96-97.

30. In a September 6, 2001, Memorandum of Consideration the Board rejected Mr. Roberts' request for an upgrade of his discharge, finding that he failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice. AR 83-90.

31. On December 26, 2001, Mr. Roberts submitted a pro se application for reconsideration of the Board's decision, attaching a three-page typewritten statement wherein he noted that while in the Army stockade that he was under duress when he signed a waiver of his rights to a hearing, a lawyer, and to present evidence on his own behalf and agreed to be discharged from the Army for unfitness. Mr. Roberts also noted that an Army lawyer advised him that he most likely would receive a general discharge under honorable conditions. AR 71-74.

32. His December 26, 2001, application also asserted that while in Korea, he encountered racial prejudice and discrimination, an "oversight by the Doctors in their Physical, and Medical evaluation," and "a tremendous amount of psychological trauma that led to the classification of Unfitness." Furthermore, he asserted that "the charges [against him] were fabricated in order to promote racism, and to hinder all minorities by any means, because their (sic) was at the time a[n] ongoing practice in the Military to bar all black veterans from any benefits." AR 72-74.

33. On May 16, 2002, the ABCMR denied Plaintiff's December 26, 2001, requests for reconsideration, determining that Mr. Roberts had "failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice." AR 67-69.

The Board's decision lists only Mr. Roberts' military records and his May 8, 1969, court-martial and not his statement of reconsideration, under "New Evidence or Information." AR 68.

34. On June 10, 2002, Mr. Roberts submitted a second application for reconsideration (AR 48) which attached copies of his discharge (R 49), the psychiatric clearance for his discharge proceeding (AR50), a copy of his court-martial conviction (AR 51), photos of various civilian master plumber licenses that he held subsequent to his discharge (AR 52), an enrollment form from an Alabama community college indicating course enrollment (AR 53), and a June 4, 2002, typewritten statement describing racial prejudice in the Army and indicating that he has heard nothing from the Board since he submitted his application six months previously (AR 54).

35. On December 27, 2002, Mr. Roberts submitted a third request for reconsideration – a typewritten application with no attachments. AR 46.

36. On January 21, 2003, the Board responded to Mr. Roberts' June 10, 2002, request by advising him that the Board's staff had determined that his application did not warrant resubmission to the Board. R 47. The Board's January 21, 2003, decision cited paragraph 2-15(b) of Army Regulation 15-185, which, at the time of the decision, provided that requests for reconsideration received more than one year after the original decision would be reviewed by the Board's staff for evidence of certain criteria for re-opening a decision and if the staff does not find such evidence, the application will be returned to the applicant without action. See Memorandum Opinion at 8, n. 8.

37. On July 15, 2003, the Board wrote again to Mr. Roberts stating that his original application was denied on September 6, 2001, that Plaintiff's first request for

reconsideration was "administratively denied" by the staff on January 21, 2003, and that under the applicable version of paragraph 2-15(b) of Army Regulation 15-185, the "staff of the Board has determined that your current application does not contain evidence" that meets the cited criteria. AR 45.

38. On June 4, 2004, Mr. Roberts filed by counsel a Request for Reconsideration reciting that it was the first request that he had filed with the direct assistance of legal counsel. AR 2. The request noted that the accompanying twenty-nine page memorandum (AR 3-32) and fifty-four pages of exhibits (Original Complaint Attach. I (R 1)) in support of his request raised a number of issues and facts that had never been presented to or considered by the Board.

39. On September 7, 2004, while Plaintiff's application was still pending at the ABCMR, Judge Ricardo Urbina of this Court issued a Memorandum Opinion in Lipsman v. Sec'y of the Army, 335 F.Supp.2d 48 (Sept. 7, 2004), finding that subsection 2-15(b) of Army Regulation 15-185 violated the provisions of 10 U.S. C. § 1552, the ABCMR's operating statute, because it permitted ABCMR staff and not the Board to make decisions identical with those made in Plaintiff's applications. The Court specifically found that the Board's delegation of actions to its staff was arbitrary or capricious and not in accordance with law.

40. By letter dated March 17, 2005, the Board returned the June 4, 2004, memorandum and exhibits filed by Mr. Roberts' counsel directly to Mr. Roberts. AR 1. The Board's letter noted that Mr. Roberts' case was considered on September 6, 2001, that no further ABCMR action is contemplated, that he had exhausted all of his administrative

remedies, and that Mr. Roberts had the option of seeking "relief in a court of appropriate jurisdiction."

41. On December 20, 2005, Plaintiff filed the original complaint in this action seeking judicial review of five distinct decisions of the Board: (1) the Board's September 6, 2001, initial decision denying Mr. Roberts' application for an upgraded discharge, (2) a May 16, 2002, decision denying Mr. Roberts' request for reconsideration, (3) a January 21, 2003, staff decision that his June 10, 2002 application did not warrant submission to the Board, (4) a July 15, 2003, staff decision that his December 27, 2002, application did not warrant submission to the Board, and (5) a March 16, 2005, refusal to consider a request for reconsideration filed by Mr. Roberts' attorney.   Original Complaint (R 1) at 12, 13.

42. On August 3, 2006, this Court ordered the matter remanded to the Board for "further proceedings consistent with the Court's Memorandum Opinion."  R 18.  The Court ruled that the Board's second decision, that of May 16, 2002, violated the Administrative Procedure Act in that it failed to address Mr. Roberts' arguments that his 1969 discharge proceeding was fatally defective because he was under duress when he waived his rights to a hearing, counsel, and to submit statements in his own behalf and because he was misled by an Army lawyer into believing that he would receive a discharge under honorable conditions.

43. The Court did not decide Mr. Roberts' remaining claims regarding the ABCMR's subsequent decisions on January 21, 2003, July 15, 2003, and March 17, 2005. Memorandum Opinion at 17, n. 14.

44. On September 28, 2006, Plaintiff's counsel submitted to the Board copies of:

-- the Complaint, which attached Plaintiff's June 4, 2004, Memorandum in Support of Request for Reconsideration with Attachments and Exhibits (R 1; Original Complaint),

-- Plaintiff's Memorandum of Points and Authorities (i) in Opposition to Defendants' Motion to Dismiss, in Part, and for Summary Judgment and (ii) in Support of Plaintiff's Cross-Motion for Summary Judgment with Exhibits (R 10),

-- Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue (R 10, Ex. 6),

-- Plaintiff's Supplemental Statement of Material Facts as to Which There is No Genuine Issue (R 15), and

-- the Court's August 3, 2006, Memorandum and Order (R 19).

*See* Exhibit A to Amended Complaint (R 31).

45. The Board's December 5, 2006, decision on remand, examined only the specific issue remanded by the Court relating to the Board's denial of Mr. Roberts' first request for reconsideration. It did not address the Board's decisions of January 21, 2003, July 15, 2003, and March 17, 2005, which presented issues not decided by the Court. AR 367.

Respectfully submitted,

/S/
_____
Michael W. Dolan, Esq.
    D.C. Bar No. 3384
2021 L Street, N.W.
Suite 204
Washington, D.C. 20036
202/293-2776
*Attorney for Plaintiff*