UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                            )
THOMAS ROBERTS,                             )
                        Plaintiff           )
                                            )
v.                                          )
                                            )        Civil Action No. 05-2430 (ESH)
Hon. PETE GEREN,                            )
Acting Secretary of the Army, et al.        )
                                            )
                        Defendants          )
_____)


PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES (1) IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS, IN PART, AND FOR SUMMARY
JUDGMENT AND (2) IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR
SUMMARY JUDGMENT

Michael W. Dolan, Esq.
        D.C. Bar No. 3384
2021 L Street, N.W.
Suite 204
Washington, D.C.  20036
202/293-2776
*Attorney for Plaintiff*

# TABLE OF CONTENTS

Page

I. INTRODUCTION ............................. ............................................................. 1

II. BACKGROUND ........................... ....................................................................... 1

III. STATEMENT OF FACTS ...................................................................................... 4

IV. ARGUMENT .............................................................................................. 4

    A. The Amended Complaint Should Not Be Dismissed
    and Defendants Are Not Entitled To Summary Judgment.............................. 4

        1. Standard of Review for a Motion to Dismiss ......................................... 5

        2. Judicial Review Under the APA is Not Limited...................................... 5

        3. The Court Has Subject Matter Jurisdiction Over Plaintiff's
           Requested Mandamus Relief.......................................................... 8

        4. Plaintiff's Claims Are Not Barred by any Statute of Limitations ......... 13

    B. The Board's Decisions Were Arbitrary, Capricious, an Abuse Of
    Discretion, Unsupported by Substantial Evidence or Otherwise Contrary
    to Law or Regulation ..................................................................... 17

        1. The Board's December 5, 2006, decision.............................................. 17

        2. Standard of Review for Summary Judgment ....................................... 18

        3. The Board's Decisions of January 21 and July 15, 2003, Were
           Arbitrary,   Capricious, an Abuse of Discretion, Unsupported by
           Substantial Evidence or Otherwise Contrary to Law or Regulation ..... 18

        4. The Board's Decisions of January 21 and July 15, 2003, Cannot be
           Rehabilitated by Arguing That Plaintiff's Second and Third
           Reconsideration Requests Submitted No New Evidence...................... 21

        5. The Board's March 17, 2005, Decision was Arbitrary, Capricious,
           an Abuse of Discretion, Unsupported by Substantial Evidence or
           Otherwise Contrary to Law or Regulation ........................................... 23

a. The Board's March 17, 2005, Decision Violated the APA
Because it was Made by Staff and Not The Board as
Required by Statute ................................................................ 24

b. The Board's March 17, 2005, Decision Violated the APA
Because it Ignored Plaintiff's Argument that His 1969
Discharge Proceeding Was Defective as a Matter of Law........ 26

(i). Mr. Roberts' 1969 Discharge Procedure Failed to
Make Required Findings With Respect to the Waiver
of the Required Counseling And Rehabilitation.............. 27

(ii) Mr. Roberts' 1969 Discharge Procedure Was Not
Initiated By the Required Recommendation By the
Unit Commander.............................................................. 28

(iii). Mr. Roberts' 1969 Discharge Procedure Failed to
exclude records of prior non-judicial punishments as
required by Army Regulation 27-10 in effect at the
time.................................................................................. 28

6. The Board's Decision of December 5, 2006, was Arbitrary,
Capricious, an Abuse of Discretion, Unsupported by Substantial
Evidence or Otherwise Contrary to Law and Regulation..................... 32

a. The Board's December 5, 2006, decision violated the APA
because it addressed in an irrational and arbitrary fashion the
specific issue raised by this Court ................................................ 32

b. The Board's December 5, 2006, decision violated the APA
because it failed to address all of the issues raised by Mr. Roberts
in his December 26, 2001 submission........................................... 35

c. The Board's December 5, 2006, decision violated the APA
because it relied on a defective bar to reenlistment..................... 37

V. CONCLUSION .......................................................................................... 38

## TABLE OF AUTHORITIES

### CASE AUTHORITY

Page

Appleby v. Harvey,
2007 U.S.Dist.LEXIS 38432 (D.D.C. May 29, 2007)....................................................... 31

Anderson v. Liberty Lobby, Inc.,
 477 U.S. 242 (1986) ........................................................................................................ 18

Arbaugh v. Y & H Corp.,
 546 U.S. 500 (2006) .......................................................................................................... 8

Baxter v. Claytor,
652 F.2d 181, 185 (D.C. Cir. 1981)........................................................................... 16 n. 7

Bittner v. Sec'y of Defense,
625 F.Supp. 1022 (D.D.C. 1985)............................................................................... 16 n. 7

Blassingame v. Sec'y of the Navy,
 811 F.2d 65 (2d Cir. 1987), rev'd on other grounds after remand,
 866 F.2d 556 (1989) .................................................................................................. 14, 30

Calloway v. Brownlee,
 366 F.Supp.2d 43 (D.D.C. 2005) .................................................................................... 31

Carter v. Dep't of the Navy,
2006 U.S.Dist. LEXIS 59767 (D.D.C. Aug. 24, 2006)............................................. 16 n. 7

Chappell v. Wallace,
 462 U.S. 296 (1983) ................................................................................................... 11, 12

Chevron U.S.A. Inc. v. Natural Res. Def. Council,
 467 U.S. 837 (1984) ..................................................................................................... 7, 26

Cone v. Caldera,
 223 F.3d 789 (D.C. Cir. 2000) ........................................................................................ 12

Conley v. Gibson,
 355 U.S. 41 (1957) ............................................................................................................ 5

Dep't of the Navy v. Egan,
 484 U.S. 518 (1988) ........................................................................................................ 11

\* Authorities upon which Plaintiff chiefly relies.

* <u>Dickson v. Sec'y of Defense,</u>
  68 F.3d 1396 (D.C.Cir. 1995) .......................................................... 7, 14, 16 n. 7, 22, 35

<u>Dilley v. Alexander</u> ("<u>Dilley I</u>"),
  603 F.2d 914 (D.C. Cir. 1979) ...................................................................... 10, 39

* <u>Dilley v. Alexander</u> ("<u>Dilly II</u>"),
  627 F.2d 407 (D.C. Cir. 1980) .................................................................. 9, 13, 38, 39

<u>Dougherty v. U.S. Navy Bd. for Corr. of Naval Records,</u>
  784 F.2d 499 (3d Cir. 1986) ...................................................................... 14, 15

<u>Feres v. U.S.,</u>
  340 U.S. 135 (1950) ................................................................................ 11

<u>Florida Power & Light Co. v. Lorion,</u>
  470 U.S. 729 (1985) ............................................................................. 1 n. 1

<u>Frizelle v. Slater,</u>
  111 F.3d 172 (D.C.Cir. 1997) ........................................................... 7, 12 n.6, 31

<u>Gay Veterans Assoc., Inc. v. Sec'y of Defense,</u>
  850 F.2d 764 (D.C. Cir. 1988)................................................................... 16 n.7

<u>Geyen v. Marsh,</u>
  775 F.2d 1303 (5th Cir. 1985), <u>aff'd</u>, 849 F.2d 1469 (1988) .................................... 14, 15

<u>Gilligan v. Morgan,</u>
  413 U.S. 1 (1973) ................................................................................... 10

<u>Glick v. Dep't of the Army,</u>
  1991 U.S.Dist. LEXIS 2204 (D.D.C. 1991).................................................... 16 n. 7

<u>Greater Boston Television Corp. v. F.C.C.,</u>
  444 F.2d 841 (1970) ................................................................................. 25

<u>Greenberg v. England,</u>
  2005 U.S.Dist.LEXIS 22688, (D.Del. October 6, 2005)....................................................22

<u>Guerrero v. Stone,</u>
  970 F.2d 626 (9th Cir. 1992) ................................................... 9, 10, 13, 14, 16 n. 7, 31, 39

<u>Hollingsworth v. Balcom,</u>
  441 F.2d 419 (6th Cir. 1971) ................................................................... 11 n. 5

**\*** Authorities upon which Plaintiff chiefly relies.

Homcy v. Resor,
455 F.2d 1345 (D.C. Cir. 1971)................................................................. 16 n. 7

Homer v. Roche,
 226 F.Supp. 2d 222 (D.D.C. 2002) ...................................................... 6

Hoskin v. Resor,
 324 F.Supp. 271 (D.D.C. 1971) .......................................... 9, 10, 14, 16 n. 7

Humane Society of the U.S. v. Dept. of Commerce,
432 F.Supp.2d 4, 17 (D.D.C. 2006)....................................................... 22

Johnson v. West,
1999 U.S.Dist.LEXIS 5145 (1999)....................................................... 16 n. 7

Kidwell v. Dept. of the Army,
56 F.3d 279 (D.C. Cir. 1995)............................................................... 16 n. 7

Kosnik v. Peters,
31 F.Supp.2d 151 (D.D.C. 1998)......................................................... 16 n. 7

Kreis v. Sec'y of the Air Force ("Kreis I"),
 866 F.2d 1508 (D.C. Cir. 1989) ...................................................... 5, 6, 7

Kreis v. Sec'y of the Air Force ("Kreis II"),
 406 F.3d 684 (D.C.Cir. 2005) ........................................................ 6, 38
.
Larsen v. U.S. Navy,
 346 F.Supp.2d 122 (D.D.C. 2004) .................................................. 5, 12

Lassalle v. Geren,
2007 U.S.Dist.LEXIS 31056 (D.D.C. April 27, 2007)............................. 22, 23

Lebrun v. England,
 212 F.Supp.2d 5 (D.D.C. 2002),................................... 7, 13, 14, 15, 16, 16 n. 7

Levant v. Roche,
384 F.Supp.2d 262 (D.D.C. 2005)....................................................... 16 n. 7

Lewis v. Sec'y of the Navy,
1990 WL 454624 (D.D.C. 1990) ..................................................... 14, 16 n. 7

* Lipsman v. Sec'y of the Army ("Lipsman I"),
 257 F.Supp.2d 3 (D.D.C. 2003) .................................................. 5, 7, 16 n. 7

* Authorities upon which Plaintiff chiefly relies.

\* <u>Lipsman v. Sec'y of the Army</u> ("<u>Lipsman II</u>"),
  335 F.Supp.2d 48 (Sept. 7, 2004) ...................... 19, 20, 21, 21 n. 9, 22, 23, 24, 25, 38, 39

<u>Martin v. Secretary of the Army</u>,
  455 F.Supp. 634 (D.D.C. 1977) .............................................. 29, 30, 30 n. 12

<u>Miskill v. Lehman</u>,
  566 F.Supp. 1486, 1489 (D.D.C. 1983)...................................................... 16 n.7

<u>Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Auto. Ins.</u>,
  463 U.S. 29 (1983) ................................................................................. 22, 25

<u>Mozur v. Orr</u>,
  600 F.Supp. 772 (E.D. Pa. 1985) ........................................................ 9, 11, 12

<u>Mudd v. Caldera</u> ("<u>Mudd I</u>"),
  26 F.Supp.2d 113 (D.D.C. 1998) .................................................. 14, 16 n. 7, 31

<u>Mudd v. Caldera</u> ("<u>Mudd II</u>"),
  134 F.Supp.2d 138 (D.D.C. 2001) ........................................................ 26, 38

<u>Musengo v. White</u>,
  286 F.3d 535 (D.C. Cir. 2002) .................................................................. 7, 12

<u>Nethery v. Orr</u>,
  566 F.Supp. 804 (D.D.C. 1983).............................................................. 16 n. 7

<u>Nihiser v. White</u>,
  211 F.Supp.2d 125 (D.D.C. 2002) ................................................................. 16

<u>Orloff v. Willoughby</u>,
  345 U.S. 83 (1953) ................................................................................ 10, 13

<u>Ortiz v. Sec'y of Defense</u>,
  41 F.3d 738 (D.C.Cir. 1994)................................................................... 16 n.7

\* <u>Piersall v. Winter</u>,
  435 F.3d 319 (D.C. Cir. 2006) ........................................... 5, 6, 7, 11, 12 n. 6

<u>Pleus v. Peters</u>,
  1999 U.S. Dist. LEXIS 10065 (D.D.C. June 17, 1999) ...................... 15, 16 n. 7

**\*** Authorities upon which Plaintiff chiefly relies.

Robinson v. Dalton,
  45 F.Supp.2d 1 (D.D.C. 1998) ........................................................................ 14, 16 n. 7

* Robinson v. Resor,
  469 F.2d 944 (D.C. Cir. 1972) ............................................. 9, 10, 13, 16 n. 7, 39, 39 n. 15

SEC v. Chenery Corp.,
  332 U.S. 194, 196 (1947)............................................................................................ 22

Smalls v. U.S.,
  87 F.Supp. 2d 1055 (D.Haw. 2000) ........................................................................ 15

Smith v. Dalton,
  927 F.Supp. 1 (D.D.C. 1996) ............................................................................. 12, 12 n 6

Smith v. Marsh,
  787 F.2d 510 (10th Cir. 1986) ........................................................................ 9, 11, 13, 14

Smith v. Peters,
  1999 U.S.Dist.LEXIS 6980 (1999)........................................................................ 16 n. 7
.
Smith v. Resor,
  406 F.2d 141 (2d Cir. 1969) ........................................................................ 11 n. 5, 13, 30

Steel Co. v. Citizens for a Better Environment,
  523 U.S. 83 (1998) ........................................................................................................ 8

Swierkiewicz v. Sorema N.A.,
  534 U.S. 506 (2002) ................................................................................................... 5, 10

Thalasinos v. Harvey,
  479 F.Supp. 2d 45 (D.D.C. 2007).............................................................................. 4, n. 4

U.S. v. Cohan,
  43 C.M.R. 309 (1971) ........................................................................ 29, 30, 30 n. 12, 30

U.S. v. Turner,
  45 C.M.R. 130 (1972) ................................................................................................... 29

U.S. ex rel Accardi v. Shaughnessy,
  347 U.S. 260, 268 (1954)............................................................................................. 30

Van Bourg v. Nitze,
  388 F.2d 557 (D.C. Cir. 1967) ........................................................................ 16 n. 7, 30

* Authorities upon which Plaintiff chiefly relies.

VanderMolen v. Stetson,
 571 F.2d 617 (D.C. Cir. 1977) .......................................................................... 9, 10, 13, 31

Vietnam Veterans of America v. Sec'y of the Navy,
 843 F.2d 528, 532 (D.C. Cir. 1988)......................................................................... 16 n. 7

Walters v. Sec'y of Defense,
 725 F.2d 107 (D.C. Cir. 1983) ...................................................................................... 15, 16

* White v. Sec'y of the Army,
 878 F.2d 501 (D.C. Cir. 1989) ............................................................... 8, 9, 13, 16 n. 7, 38

Wielkoszewski v. Caldera,
398 F.Supp.2d 102 (D.D.C. 2005).................................................................. 4 n. 4, 16 n. 7

Wood v. Sec'y of Defense,
496 F.Supp. 192, 198 (D.D.C. 1980)......................................................................... 16 n. 7

## STATUTORY AUTHORITY

* Administrative Procedure Act, 5 U.S.C. § 706 .. 2, 6, 7, 8, 11, 14, 19, 23, 26, 32, 35-37, 39

* 10 U.S.C. § 1552 ....................................................... 6, 7, 8, 9, 12, 19, 22, 26, 31

 10 U.S.C. § 1553 ......................................................................................................... 14

* 28 U.S.C § 1331 ......................................................................................................... 8

 28 U.S.C § 1361 .................................................................................................. 11, n. 5

 28 U.S.C. § 2401(a) .............................................................................................. 13, 16

## REGULATORY AUTHORITY

* Army Regulation 15-185 (February 29, 2000) ............................. 18, 19, 20, 20 n. 8, 24, 25

 Army Regulation 15-185 (March 31, 2006) ............................................................ 20, 25, 26

 Army Regulation 27-10 (November 26, 1968) ................................. 27, 29, 30 n. 12, 37, 38

 Army Regulation 635-212 (April 4, 1968) ................................ 27, 28, 30, 32, 34, 37 n.13
 * Authorities upon which Plaintiff chiefly relies.

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed.R.Civ.P. 8(a)(2) .......................................................................................................... 5

Fed.R.Civ.P. 12(b)(1) ..................................................................................................... 4, 5

Fed.R.Civ.P. 12(b)(6) ..................................................................................................... 4, 5

Fed.R.Civ.P. 56................................................................................................................. 4

## <u>GLOSSARY</u>

| | |
|---|---|
| ABCMR | Army Board for the Correction of Military Records |
| ADRB | Army Discharge Review Board |
| APA | Administrative Procedure Act, 5 U.S.C. §§ 701-706 |
| AR | The Administrative Record |
| Board | Army Board for the Correction of Military Records |
| NJP | Non-judicial Punishment |
| PTSD | Post-traumatic stress disorder |
| UCOTH | Under Conditions Other Than Honorable |

# I.  INTRODUCTION

Plaintiff, Thomas Roberts, by and through undersigned counsel, respectfully submits this Memorandum of Points and Authorities in opposition to Defendants' Motion to Dismiss, in Part, and for Summary Judgment ("Defendants' Memorandum") and respectfully asks this Court to deny Defendant's motion.  Plaintiff also submits this Memorandum of Points and Authorities to support his Cross-Motion for Summary Judgment and respectfully asks this Court to grant Plaintiff's Cross-Motion for Summary Judgment.  Part A of this memorandum addresses Defendant's main arguments for dismissal.  However, to avoid needless repetition of facts and argument, several of Defendants' arguments for dismissal and for summary judgment will be addressed in part B, which argues for Plaintiff's cross-motion for summary judgment.

# II.  BACKGROUND

The events that led Plaintiff, Thomas Roberts, to file the original Complaint in this case are described in the Court's August 3, 2006, Memorandum Opinion ("Mem. Op.") (R 19)[1].  The original Complaint (R 1) sought judicial review of five distinct decisions of the Army Board for Correction of Military Records ("ABCMR" or "the Board") :  (1) the Board's September 6, 2001, initial decision denying Mr. Roberts' application for an upgraded discharge, (2) a May 16, 2002, decision denying Mr. Roberts' request for reconsideration, (3) a January 21, 2003, staff decision that his June 10, 2002 application did not warrant submission to the Board, (4) a July 15, 2003, staff decision that his December 27,

---

[1]  "R" followed by a number refers to the document corresponding to that number in the docket sheet of the District Court.  "AR" followed by a number refers to the page of the administrative record before the District Court.

2002, application did not warrant submission to the Board, and (5) a March 16, 2005, refusal to consider a request for reconsideration filed by Mr. Roberts' attorney.   Complaint (R 1) at 12, 13.

On August 3, 2006, this Court ordered the matter remanded to the Board for "further proceedings consistent with the Court's Memorandum Opinion."  R 18.  That Memorandum Opinion determined that the Board's September 6, 2001, decision did not violate the Administrative Procedure Act ("APA").  Mem.Op. (R 19) at 12.   However, the Court ruled that the Board's second decision, that of May 16, 2002, did violate the APA in that it failed to address Mr. Roberts' arguments that his 1969 discharge proceeding was fatally defective because he was under duress when he waived his rights to a hearing, counsel, and to submit statements in his own behalf and because he was misled by an Army lawyer into believing that he would receive a discharge under honorable conditions.  The Court did not decide Mr. Roberts' remaining claims:  "Because the Court has concluded that the ABCMR's May 16, 2002 decision violated the APA and will therefore remand the case to the Board, it need not address plaintiff's claims regarding the ABCMR's subsequent decisions on January 21, 2003, July 15, 2003, and March 17, 2005."  Mem. Op. 17, n. 14.

On September 1, 2006, Plaintiff's counsel wrote to the Board, asking it how it intended to proceed with respect to the remand and whether a hearing would be held.  On September 15, 2006, Plaintiff's counsel received a telephone call from Walter Avery, Chief of the ABCMR Case Management Division, who said that there would be no hearing, only a records review, and that Plaintiff should submit whatever documents he wanted the Board to review.  On September 28, 2006, Plaintiff's counsel submitted to the Board copies of:

-- the Complaint, which attached Plaintiff's June 4, 2004, Memorandum in Support of Request for Reconsideration with Attachments and Exhibits (R 1; Original Complaint[2]),

-- Plaintiff's Memorandum of Points and Authorities (i) in Opposition to Defendants' Motion to Dismiss, in Part, and for Summary Judgment and (ii) in Support of Plaintiff's Cross-Motion for Summary Judgment with Exhibits (R 10),

-- Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue (R 10, Ex. 6),

-- Plaintiff's Supplemental Statement of Material Facts as to Which There is No Genuine Issue (R 15), and

-- the Court's August 3, 2006, Memorandum and Order (R 19).

*See* Exhibit A to Amended Complaint (R 31).

When neither Mr. Roberts nor his counsel received a response, his counsel telephoned Mr. Avery on March 5, 2007, leaving a message describing the case and asking for its status.  On March 7, Plaintiff's counsel called Mr. Avery again, leaving a similar message.  On the afternoon of March 9, 2007, Mr. Avery telephoned to say that the Board denied Mr. Roberts' claim on December 5, 2006,[3] and that he would send a copy of the Board's decision to Plaintiff's counsel by electronic mail.  Until the Defendants supplemented the administrative record in this case on August 17, 2006, (R 34-5), this is the

---

[2] Exhibits C through J to Plaintiff's June 4, 2004, submission to the Board, a total of 51 pages, were never included in the Administrative Record. The exhibits are, however, attached to the original Complaint in this action (R 1).

[3] Defendants' pleadings date the Board's December, 2006, decision as December 11, the date Defendant Chun forwarded the Board's record of proceedings to the Army Review Board's Support Division (AR 364). With the Court's permission, to be consistent with the dating of other Board decisions described in the Court's Memorandum Opinion, Plaintiff will continue to use the December 5 date of the Board's actual decision.  See AR 365, 371.

- 3 -

only document that either Mr. Roberts or his counsel has received from the Board regarding the remand.  *See* Exhibit B to Amended Complaint.[4]

## III. STATEMENT OF FACTS

Plaintiff respectfully refers the Court to Plaintiff's Statement of Material Facts as to Which There is No Genuine Issue that is filed simultaneously herewith.

## IV. ARGUMENT

### A. The Amended Complaint Should Not Be Dismissed and Defendants Are Not Entitled To Summary Judgment.

Citing Fed.R.Civ.P. 12(b)(1) & (6), Defendants argue that the claims for relief in Plaintiff's Amended Complaint should be dismissed in part for failure to state a claim upon which relief can be granted and because the Court lacks jurisdiction to grant Plaintiff's mandamus relief.   Defendants also argue that they are entitled to summary judgment under Fed.R.Civ.P. 56, alleging that there is no genuine issue as to any material fact and that the

---

[4] The address the Board used for Mr. Roberts was an outdated P.O. Box that he listed on his July 15, 2003, submission to the Board.   His most recent address appeared on the complaint. This is the second time in this case that the Board has failed to notify Plaintiff's counsel of a Board decision.  Plaintiff's counsel was never notified of the Board's March 16, 2005, refusal to consider the brief filed on behalf of Mr. Roberts.  Whether the Board's failure to correspond with counsel is an isolated instance or whether it is a pattern or practice is unclear.  For similar treatment of other litigants, see Thalasinos v. Harvey, 479 F.Supp. 2d 45, 48 (D.D.C. 2007) ("On January 4, 2000 and February 1, 2000, plaintiff's counsel made written requests for a copy of the summarized record of the Board proceedings and a copy of the tape of the hearing. ... Plaintiff did not receive a copy of the summarized proceedings until some time in 2005, nearly two years after the [ABCMR] made its decision.  Plaintiff still has not received a tape of the proceedings.") and Plaintiff's Status Report, and Unopposed Motion for Leave to Continue Stay of Proceedings at 1, Wielkoszewski v. Caldera, 398 F.Supp.2d 102 (D.D.C. 2005) (No. 00-2236; Dkt. #62): "[N]either plaintiff nor his counsel were aware of a BCMR decision until today  ....  Counsel early last week called [the ABCMR] to obtain a case status ....  Today [January 31, 2006], counsel obtained a fax copy sent to his office last Friday of ABCMR Record of Proceedings dated November 8, 2005."

Board's decisions are supported by law and regulation.  Plaintiff's response to Defendants'
summary judgment argument is contained in Part B, *infra*, which also addresses several of
Defendants' arguments for their motion to dismiss.


**1. Standard of Review for a Motion to Dismiss**

       Plaintiff has no objection to the standards of review for subject matter
jurisdiction (Rule 12(b)(1)) and failure to state a claim (Rule 12(b)(6)) set forth in
subparagraphs IV.A.1. of Defendants' Memorandum, except to note the following with
respect to Rule 12(b)(6).  "For a complaint to survive a Rule 12(b)(6) motion to dismiss, it
need only provide a short and plain statement of the claim and the grounds on which it rests."
Lipsman v. Sec'y of the Army, 257 F.Supp.2d 3, 6 (D.D.C. 2003) ("Lipsman I"), citing
Fed.R.Civ.P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957).  Moreover, a complaint
need not establish a prima-facie case.  *See* Lipsman I, 257 F.Supp.2d at 7, and Larsen v. U.S.
Navy, 346 F.Supp.2d 122, 134 (D.D.C. 2004), both cases citing Swierkiewicz v. Sorema
N.A., 534 U.S. 506, 511-14 (2002).


**2.  Judicial Review Under the APA Is Not Limited.**

       As this Circuit has noted:  "These are not uncharted waters.  We have many
times reviewed the decisions of boards for correction of military records 'in light of familiar
principles of administrative law,'" Piersall v. Winter, 435 F.3d 319, 321 (D.C. Cir. 2006),
(quoting Kreis v. Sec'y of the Air Force 866 F.2d 1508, 1511 (D.C. Cir. 1989) (Kreis I)
(citations omitted).  The court in Piersall went on to note: "We are aware of no reason,

therefore, to reconsider the well-settled rule that the decisions of boards for correction of military records are subject to review under the APA." Id. at 324.

The amount of deference that the court should extend to Board decisions is limited. The Court's Memorandum Opinion notes at 17: "As this Court observed in Homer v. Roche, 226 F.Supp. 2d 222 (D.D.C. 2002) ... 'The Court's role here may be limited, but it is not that of a rubber stamp. The military's discretion may be broad, but, as the statute plainly indicates, it is not boundless.' Id. at 226." This Circuit's observation in Piersall, 435 F.3d at 323, is applicable to Mr. Roberts' case: "The military justice system ... is not under review in this case; Piersall challenges not the decision of a military court or even of his commanding officer but the decision of a civilian administrative board ...." Congress determined that corrections boards be composed of civilians (see 10 U.S.C. § 1552(a)); the boards do not make military decisions.

The Government is fond of citing Kreis v. Sec'y of the Air Force, 866 F.2d 1508 (D.C. Cir. 1989) ("Kreis I"), where an active duty officer's claim for retroactive promotion was held non-justiciable: "To grant such relief would require us to second-guess the Secretary's decision about how best to allocate military personnel in order to serve the security needs of the nation." However, the court declared that it had jurisdiction "to evaluate, in light of familiar principles of administrative law, the reasonableness of the Secretary's decision not to take certain corrective action with respect to [the officer's military] record." Id. at 1511. The officer's claim worked its way to back the D.C. Circuit where, in Kreis v. Sec'y of the Air Force, 406 F.3d 684, 686 (D.C.Cir. 2005) ("Kreis II"), the court again sent the case back to the Board after declaring that deference to military is *not* required if the "issue before the court does not involve a military judgment requiring military

expertise, but rather review of the Board's application of a procedural regulation governing its case adjudication process."   Mr. Roberts, of course, is not in the military, and only seeks a ruling from a board of civilians for a re-characterization of his discharge.

Defendants cite Kreis I, Frizelle v. Slater, 111 F.3d 172 (D.C.Cir. 1997), Dickson v. Sec'y of Defense, 68 F.3d 1396 (D.C.Cir. 1995) and Piersall for the proposition that APA review of military records decisions is limited.  Yet, in spite of whatever deference was paid to the military, all of these decisions ultimately resulted in a remand to the corrections board for further proceedings.

The Defendants' Memorandum notes at p. 12 that Lebrun v. England, 212 F.Supp.2d 5, 14 (D.D.C.), referred to the "unusually deferential application of the arbitrary or capricious standard of the APA" language in Musengo v. White, 286 F.3d 535, 538 (D.C. Cir. 2002).  Of course the Lebrun court was referring not to any deference to a military agency, but to the normal deference that a reviewing court owes to any administrative agency.  The court in Lebrun immediately followed the Musengo quotation with the statement that "Accordingly, the Court must determine only whether the Secretary's decision is flawed for one or more or the reasons enumerated in 5 U.S.C. § 706(2), not whether the decision was correct" – a statement with which Plaintiff agrees.

Nor is the Board decision entitled to agency deference under Chevron U.S.A. Inc. v. Natural Res. Def. Council, 467 U.S. 837, 866 (1984).  See Lipsman I, 257 F.Supp.2d at 8 (because 10 U.S.C. § 1552(a) applies to all of the service departments, "resolving the parties' dispute over the proper application of Chevron is unnecessary in light of this circuit's precedent regarding statutes that are implemented by multiple agencies.  When an agency

shares responsibility for the administration of a statute with other agencies, the court owes

the agency's statutory interpretation no <u>Chevron</u> deference." (citations omitted)).


### 3.  The Court Has Subject Matter Jurisdiction Over Plaintiff's Requested Mandamus Relief.

This court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §

1331, with the "federal question" statutes being the APA and 10 U.S.C. § 1552(a).   Neither

statute limits this Court's authority to direct a result on the merits.  Defendants may quarrel

with Plaintiff's claim, but they cannot quarrel with this Court's jurisdiction to award it.  *See*

<u>Steel Co. v. Citizens for a Better Environment</u>, 523 U.S. 83, 89 (1998) ("It is firmly

established in our cases that the absence of a valid (as opposed to arguable) cause of action

does not implicate subject-matter jurisdiction, *i.e.* the courts' statutory or constitutional

*power* to adjudicate the case." (citations omitted, emphasis in original); <u>Arbaugh v. Y & H</u>

<u>Corp.</u>,  546 U.S. 500, 511 (2006) (quoting <u>Steel Co</u>. and describing cases that confuse the

"subject-matter jurisdiction/ingredient-of-claim-for relief dichotomy as 'drive-by

jurisdictional rulings' that have no precedential effect").

In note 14 of its Memorandum Opinion, this Court declined to address "at this

time" the issue of whether the Court has the power to direct the Secretary to upgrade

Plaintiff's discharge.  However, this and other Circuits have not hesitated to direct the

ABCMR to upgrade a discharge.  *See, e.g*., <u>White v. Sec'y of the Army</u>, 878 F.2d 501, 504,

506 (D.C. Cir. 1989) (seventeen years after UCOTH discharge, remand to Sec'y with

instructions to re-characterize "discharge as honorable or general, using the standards

applicable to those discharged at the expiration of the normal term of their service"; soldier

had "two court-martial convictions, ...eight AWOL incidents ... and his inevitable conviction

by the third court-martial for his most recent AWOL"); Dilley v. Alexander, 627 F.2d 407,

413 (D.C. Cir. 1980) ("Dilly II") ("The first step ... toward implementation of this relief is for

the Secretary of the Army to order the correction of appellants' military records in

accordance with our opinion.  While we recognize that the terms of 10 U.S.C. § 1552(a),

authorizing the correction of records by the Secretary, are permissive, we cannot agree with

the Army's contention that correction in this instance is within the 'discretion' of the

Secretary.  Although the district court remanded to the Secretary for implementation of relief,

this relief must follow our opinion, which we make more explicit here."); VanderMolen v.

Stetson, 571 F.2d 617, 625, 626-27 (D.C. Cir. 1977) (because Air Force did not provide

required procedural protections, discharge negated and officer reinstated on active duty);

Robinson v. Resor, 469 F.2d 944 (D.C. Cir. 1972) (remand to District Court "for entry of an

appropriate order insuring that appellant ... will not be given a discharge under other than

honorable conditions"); Guerrero v. Stone, 970 F.2d 626, 638 (9th Cir. 1992) (district court

directed to issue writ of mandamus to Sec'y of the Army to correct records of veteran);

Hoskin v. Resor, 324 F.Supp. 271 (D.D.C. 1971) (under admittedly unique facts, plaintiffs

granted Honorable discharges in U.S. Army fifty years after service in the Russian Railway

Service Corps).  Of course, all of these decisions dealt with what Defendants characterize as

"discretionary military decisions."  *See also*, Smith v. Marsh, 787 F.2d 510, 511 (10th Cir.

1986); Mozur v. Orr, 600 F.Supp. 772 (E.D. Pa. 1985) discussed below.

   Defendants argue that because courts should defer to military decisions, Mr.

Roberts' request for the Court to upgrade his discharge should be dismissed as non-

justiciable.  However, this argument is contradicted by the cases -- White, Dilley II,

Vandermolen, Robinson v. Resor, Guerrero, and Hoskin -- in which courts ordered upgraded

or specific discharge-related actions.

 In Dilley v. Alexander, 603 F.2d 914 (D.C. Cir. 1979) ("Dilley I"), this Circuit

found the ABCMR's actions contrary to law and ordered appellants reinstated to active duty.

Recognizing the restricted role of courts with respect to the internal affairs of the military, the

Dilley I court observed:

> This logic is wholly inappropriate, however, when a case presents an issue
> that is amenable to judicial resolution. It is a basic tenet of our legal system
> that a government agency is not at liberty to ignore its own laws and that
> agency action in contravention of applicable statues and regulations is
> unlawful. The military departments enjoy no immunity from this proscription.
> It is the duty of the federal courts to inquire whether an action of a military
> agency conforms to the law, or is instead arbitrary, capricious, or contrary to
> the statutes and regulations governing that agency (citations omitted). Id. at
> 920.

 Before remanding to the district court for an order insuring that appellant

would not be given a UCOTH Discharge, this Circuit in Robinson v. Resor, 469 F.2d at 949

(D.C. Cir. 1972), acknowledged limited review of military service's actions, but nevertheless

found those actions "indefensible by any acceptable standard of due process and elemental

justice."

 Defendants cite Gilligan v. Morgan, 413 U.S. 1 (1973), which presented "a

broad call on judicial power to assume continuing regulatory jurisdiction over the activities

of the Ohio National Guard" and "a judicial evaluation of the appropriateness of the 'training

weaponry and orders' of the Ohio National Guard." Id. at 5. Another cited case by

Defendants, Orloff v. Willoughby, 345 U.S. 83 (1953), dealt with the habeas corpus petition

of a lawful inductee who sought a discharge from active duty because he was not assigned

the duties nor the rank to which he claimed entitlement.[5]  Dep't of the Navy v. Egan, 484

U.S. 518 (1988) examined whether the Merit Systems Protection Board could review the

Navy denial of a security clearance of a civilian working on Navy nuclear submarines.

   All of this is a bit remote from Mr. Roberts' request for a court order directed

at a civilian agency within the Department of the Army.  In Piersall v. Winter, 435 F.3d 319,

323 (D.C. Cir. 2006), involving a challenge by an officer, presumably on active duty, to a

correction board decision not to reverse the effects of a non-judicial punishment, this Circuit

dispensed with a non-justiciability argument: ("... we do know that the principle forbidding

judicial interference with military decisions, which principle underlies Feres [v. U.S., 340

U.S. 135 (1950)] , Chappell [v. Wallace, 462 U.S. 296 (1983)], and related cases, does not

preclude review under the APA of decisions of military boards of correction." Id. at 323).

Although the court declined to proceed to the merits and chose to remand to the district court,

it obviously believed that it could have proceeded to the merits:  "The district court, having

dismissed the case for lack of jurisdiction, did not have the benefit of briefing ....  Therefore

we shall remand the matter to the district court without reaching the merits of Piersall's

case."  435 F.3d at 325.

   In Smith v. Marsh, 787 F.2d 510, 511 (10th Cir. 1986), the court upheld the

trial court's order to the Army to issue the plaintiff an Honorable discharge.  In Mozur v. Orr,

600 F.Supp. 772 (E.D. Pa. 1985), the service member argued for a direct order to the Air

---

[5]  Other courts have permitted habeas corpus petitions of service members.  See, e.g.,
Hollingsworth v. Balcom, 441 F.2d 419 (6th Cir. 1971) (habeas petition of a conscientious
objector resulted in remand to the service to insure compliance with Defense Department
regulations); Smith v. Resor, 406 F.2d 141 (2d Cir. 1969) (habeas petition by reservist called
to active duty is justiciable and should be treated as an action for mandamus under 28 U.S.C.
§1361).

Force Board for Correction of Military Records. Although the court thought remand was a better route, it acknowledged its authority to order the relief requested: "In this situation, the court may either look to the record as a whole, without giving much deference to the conclusion of the Board, to determine whether the plaintiff should be awarded the relief requested ... or remand the matter to the AFBCMR for reconsideration ...." Id. at 783. Mozur was quoted by this Court in Smith v. Dalton, 927 F.Supp. 1, 29 (D.D.C. 1996) for an identical holding.

Chappell v. Wallace, 462 U.S. 296 (1983), cited by Defendants for the notion that courts should be hesitant to intrude on military affairs, nevertheless quoted 10 U.S.C. § 1552(a), the statute before this Court, observing that "Board decisions are subject to judicial review and can be set aside if they are arbitrary, capricious, or not based on substantial evidence." Id. at 303.

It should be remembered that Mr. Roberts is a civilian; directing the Army to upgrade his discharge will not interfere with military personnel decision-making. Defendants cite on p. 19 of their Memorandum Musengo v. White, 286 F.3d 535 (D.C. Cir. 2002) and Cone v. Caldera, 223 F.3d 789 (D.C. Cir. 2000). In both of these cases, officers who were apparently on active duty challenged their officer evaluation reports. Although active duty officers have obtained reversal of correction board decisions not to alter their personnel records,[6] in terms of interference with the military, these challenges are admittedly much more troublesome than the situation presented by a civilian such as Mr. Roberts trying to update a thirty-eight year-old discharge. Mr. Roberts is not seeking a commission in the Army. See Larsen v. U.S. Navy, 346 F.Supp.2d 122, 127 (D.D.C. 2004) ("Although the

_____

[6] See, e.g. Piersall, 435 F.3d at 325; Frizelle v. Slater, 111 F.3d 172, 177 (D.C.Cir. 1997); Smith v. Dalton, 927 F. Supp. 1 (D.D.C. 1996).

court realizes the importance of letting the Navy run the Navy [citing <u>Orloff</u>], the court finds

it difficult to comprehend what an allegedly unconstitutional practice in hiring Navy

chaplains has to do with 'operational readiness.'").

      This Court has jurisdiction to upgrade Mr. Roberts' discharge whether by

mandamus (*See, e.g.*, <u>Guerrero</u>, 970 F.2d at 639; <u>Smith v. Resor</u>, 406 F.2d at 147) or by a

remand to Defendants with instructions to re-characterize the discharge as honorable or

general (<u>See, e.g.</u>, <u>White</u> at 878 F.2d 504, 506; <u>Smith v. Marsh</u>, 787 F.2d at 511; <u>Dilley II</u>,

627 F.2d at 413); <u>VanderMolen</u>, 571 F.2d at 625, 626-27); <u>Robinson v. Resor</u>, 469 F.2d at

952).


**4.  Plaintiff's Claims are not Barred by any Statute of Limitations.**

      Mr. Roberts is challenging decisions of the ABCMR.  He has not sought

review, nor can his Amended Complaint be construed to seek review, of the 1973 decision of

the Army Discharge Review Board, which is an entity completely separate from the

ABCMR.  *See* Memorandum Opinion at note 5.  Defendants' statute of limitations argument

fails to make clear that "judicial review of a claim of wrongful discharge is distinct and

independent from judicial review of a claim challenging the Correction Board's review of the

underlying discharge decision."  <u>Lebrun v. England</u>, 212 F.Supp.2d 5, 19 (D.D.C. 2002),

<u>aff'd per curium</u>, 2003 U.S.App. LEXIS 3490 (2003).

      To the extent that Defendants argue that the six-year statute of limitations in

28 U.S.C. §2401(a) bars a direct challenge to the 1969 discharge, they have misconstrued the

Amended Complaint, which does not challenge the Army's 1969 decision directly, but rather

the ABCMR's refusal in 2002, 2003, and 2005 to correct the 1969 discharge.  *See* Amended

Complaint ¶¶ 40 - 46.

To the extent that Defendants assert that the 28 U.S.C. § 2401(a) six-year

statute of limitations runs, not from the date of the administrative action complained of, but

from the date of the discharge, their argument was implicitly rejected by this Court's August

3, 2006, decision.  Moreover, such an argument ignores a number of decisions in this Circuit.

As this Court noted in Lebrun, 212 F.Supp.2d at 17:

> While the District of Columbia Circuit has not directly considered this issue, it
> is evident that of those Circuit Courts that have addressed the question, an
> overwhelming majority have found that the right to obtain judicial review of a
> Board of Corrections' decision under the APA ... accrues at the time of the
> final agency decision, or the exhaustion of all administrative remedies, rather
> than at the time when the underlying discharge ... occurred.  Blassingame v.
> Sec'y of the Navy, 811 F.2d 65, 71 (2d Cir. 1987), rev'd on other grounds
> after remand, 866 F.2d 556 (1989); Dougherty v. U.S. Navy Bd. for Corr. of
> Naval Records, 784 F.2d 499, 501-02 (3d Cir. 1986); Geyen v. Marsh, 775
> F.2d 1303, 1306 (5th Cir. 1985), aff'd, 849 F.2d 1469 (1988);  Smith v.
> Marsh, 787 F.2d 510, 512 (10th Cir. 1986) (footnote omitted).

*See also*, Robinson v. Dalton, 45 F.Supp.2d 1 (D.D.C. 1998): (petition to the Board for

Correction of Naval Records to remove a sixteen-year letter of reprimand not time barred);

Lewis v. Sec'y of the Navy, 1990 WL 454624 (D.D.C. 1990) ("the right to obtain APA

review of the decision of a military appeals board accrues at the time of the board's decision

rather than at the time of the underlying discharge.").

Of course, the time between the offending military record and the application

to the Board is immaterial.  *See, e.g.*, Dickson v. Sec'y of Defense, 68 F.3d 1396, 1399-1400

(D.C.Cir. 1995) (three plaintiffs: 20, 30 & 22 years); Guerrero, 970 F.2d. at 638 (50 years);

Hoskin, 324 F. Supp at 277 (D.D.C. 1971) (50 years, claim apparently made directly to Sec'y

of Army rather that ABCMR); Mudd v. Caldera ("Mudd I"), 26 F.Supp.2d 113, 117 (D.D.C.

1998) (121 years).  The statutory scheme itself sets up the possibility that applications can be made long after the date of the offending discharge.  Under 10 U.S.C. § 1553(a), applications to the ADRB can be made within 15 years of the date of discharge.  After 15 years have elapsed, applicants turn to the ABCMR, as Mr. Roberts did.  AR 79.  If the six-year statute were to run from the date of discharge, any ADRB or ABCMR rulings after that period would be beyond the reach of judicial review.  A review board or corrections board that received an application the day after discharge could insulate itself from judicial review merely by taking six years to complete its review.  *See* Pleus v. Peters, 1999 U.S. Dist. LEXIS 10065 (D.D.C. June 17, 1999) ("Under defendant's reading of the statute of limitations, if the review board were to need more than six years to decide the case, plaintiff would be barred from  bringing his action in federal court.  This would be an undesirable result....").   Moreover, as the court in Lebrun pointed out, "since an action for correction of records involves judicial review based on the administrative record, the statute of limitations should begin to run when the administrative record is complete.  That is, the action is not ripe for review until the correction board has rendered its final decision."  212 F.Supp. 2d at 21 (quoting Smalls v. U.S., 87 F.Supp. 2d 1055 (D.Haw. 2000) and citing Dougherty, 784 F.2d at 501.)

Defendants' statute of limitations argument cites Geyen v. Marsh, 775 F.2d 1303 (5th Cir. 1985), aff'd, 849 F.2d 1469 (1988) and Walters v. Sec'y of Defense, 725 F.2d 107 (D.C. Cir. 1983).  However, as noted in the above quotation from Lebrun, Geyen holds that an action for agency review accrued when the ABCMR rendered its decision.  *See*, Geyen, 775 F.2d 1303.  As for Walters, the footnote omitted from the above Lebrun

- 15 -

quotation notes: "This Court has not overlooked <u>Walters</u> ..., where the District of Columbia

Circuit found that a class action seeking to upgrade discharges was barred by the statute of

limitations. However, the judicial review that was being sought there was the underlying

discharge and not of an agency's review of the discharge decision." <u>Lebrun</u>, 212 F.2d at 17

n.11. <u>Nihiser v. White</u>, 211 F.Supp.2d 125 (D.D.C. 2002), cited by Defendants, also holds

that the six-year period runs from the ABCMR denial, not the date of discharge.

Set forth in the margin is a partial list of decisions that would have been either

unnecessary, their holdings reversed, or their reasoning rendered incorrect, if this Court were

to determine that the six-year statute of limitations of 28 U.S.C. § 2401(a) begins to run on

the date of the offending military record rather than on date the administrative agency refused

to correct that record.[7]

---

[7]  <u>Dickson v. Sec'y of Defense</u>, 68 F.3d 1396, 1399-1400 (D.C. Cir. 1995) (three plaintiffs:
20, 30 & 22 years between discharge and administrative action); <u>Kidwell v. Dept. of the
Army</u>, 56 F.3d 279 (D.C. Cir. 1995) (17 years between discharge and initial civil action);
<u>Ortiz v. Sec'y of Defense</u>, 41 F.3d 738 (D.C.Cir. 1994)(14 years between discharge and
application to Discharge Review Board; <u>White v. Sec'y of the Army</u>, 878 F.2d 501, 504, 506
(D.C. Cir. 1989) (17 years between discharge and court remand); <u>Gay Veterans Assoc., Inc.
v. Sec'y of Defense</u>, 850 F.2d 764 (D.C. Cir. 1988) (reviewing discharges dating from "the
late 1950s and early 1960s"); <u>Vietnam Veterans of America v. Sec'y of the Navy</u>, 843 F.2d
528, 532 (D.C. Cir. 1988) (8 & 12 years between discharge and administrative application);
<u>Baxter v. Claytor</u>, 652 F.2d 181, 185 (D.C. Cir. 1981) (20 years between court-martial and
civil action); <u>Robinson v. Resor</u>, 469 F.2d 944 (D.C. Cir. 1972) (11 years between discharge
and civil action); <u>Homcy v. Resor</u>, 455 F.2d 1345 (D.C. Cir. 1971) ( 23 years between
discharge and civil action); <u>Van Bourg v. Nitze</u>, 388 F.2d 557 (D.C.Cir. 1967) (16 years
between discharge and administrative proceeding); <u>Guerrero v. Stone</u>, 970 F.2d 626, 638 (9th
Cir. 1992) (50 years between offending record and civil action); <u>Carter v. Dep't of the Navy</u>,
2006 U.S.Dist. LEXIS 59767 (D.D.C. Aug. 24, 2006) (27 years between discharge and civil
action, pro se plaintiff granted leave to amend complaint with respect to corrections board
applications); <u>Wielkoszewski v. Harvey</u>, 398 F.Supp. 2d 102 (D.D.C. 2005) (at least 20 years
between discharge and civil action); <u>Levant v. Roche</u>, 384 F.Supp.2d 262 (D.D.C. 2005) (12
years between denial of promotion and civil action); <u>Lipsman v. Sec'y of the Army</u>, 257
F.Supp. 2d 3 (D.D.C. 2003) (38 years between discharge and civil action); <u>Lebrun v.
England</u>, 212 F.Supp.2d 5, 19 (D.D.C. 2002), aff'd per curium, 2003 U.S.App. LEXIS 3490
(2003) (33 years between resignation from service academy and civil action); <u>Pleus v. Peters</u>,

**B. The Board's Decisions Were Arbitrary, Capricious, an Abuse of Discretion, Unsupported by Substantial Evidence or Otherwise Contrary to Law or Regulation.**

**1. The Board's December 5, 2006, decision**

On remand, the Board examined only the specific issue remanded by the Court relating to the Board's denial of Mr. Roberts' first request for reconsideration. It did not address the Board's decisions of January 21, 2003, July 15, 2003, and March 17, 2005, which presented issues not decided by the Court:

> This case is being reconsidered based on [the Court's August 3, 2006 Memorandum and Order]. This reconsideration will be limited to the issue raised in these court documents, and will not address issues and relief requests from the applicant or his counsel that were previously addressed by the Board with which the court took no issue. The reconsideration is basically addressing only the argument raised by the applicant in his 16 [26?] December 2001 statement of reconsideration, as clarified by counsel in his July [June?] 2004 memorandum in support of the applicant's reconsideration request.

AR 367.

For the reasons set forth more fully below, this Motion respectfully asks the Court to address now the three decisions that it did not review in its August 3, 2006,

---

1999 U.S. Dist. LEXIS 10065 (D.D.C. June 17, 1999) (8 years between discharge and civil action); <u>Smith v. Peters</u>, 1999 U.S.Dist.LEXIS 6980 (1999) (9, 8, & 7 years between offending report and civil action); <u>Johnson v. West</u>, 1999 U.S.Dist.LEXIS 5145 (1999) (13 years between discharge and civil action); <u>Robinson v. Dalton</u>, 45 F.Supp.2d 1 (D.D.C. 1998) (18 years between letter of reprimand and civil action); <u>Kosnik v. Peters</u>, 31 F.Supp.2d 151 (D.D.C. 1998) (13 years between offending report and civil action); <u>Mudd v. Caldera</u>, 26 F.Supp.2d 113, 117 (D.D.C. 1998) (121 years between offending military record and administrative application); <u>Glick v. Dep't of the Army</u>, 1991 U.S.Dist. LEXIS 2204 (D.D.C. 1991) (16 years between discharge and BCMR petition); <u>Lewis v. Sec'y of the Navy</u>, 1990 WL 454624 (D.D.C. 1990) (18 years between discharge and civil action); <u>Bittner v. Sec'y of Defense</u>, 625 F.Supp. 1022 (D.D.C. 1985) (multiple plaintiffs whose discharges occurred more than 6 years before civil action; <u>White v. Sec'y of the Army</u>, 629 F.Supp.64 (D.D.C. 1984) (10 years between discharge and civil action); <u>Nethery v. Orr</u>, 566 F.Supp. 804 (D.D.C. 1983) (24 years between discharge and administrative proceeding); <u>Miskill v. Lehman</u>, 566 F.Supp. 1486, 1489 (D.D.C. 1983) (10 years between resignation and civil action); <u>Wood v. Sec'y of Defense</u>, 496 F.Supp. 192, 198 (D.D.C. 1980) (multiple plaintiffs, all more than six years after discharge); <u>Hoskin v. Resor</u>, 324 F. Supp at 277 (D.D.C. 1971) (50 years, claim apparently made directly to Sec'y of Army rather that ABCMR).

Memorandum Opinion.  Moreover, as explained below, the obvious errors in the Board's December 5, 2006, reconsideration of Mr. Roberts' December 26, 2001, Statement of Reconsideration requires that that decision be set aside as arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence or otherwise contrary to law or regulation.

**2. Standard of Review for Summary Judgment.**

Plaintiff has no objection to the standards for summary judgment set forth in subparagraphs IV.A.2. of Defendants' Memorandum, except to note that in ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

**3.  The Board's Decisions of January 21 and July 15, 2003, were Arbitrary, Capricious, an Abuse of Discretion, Unsupported by Substantial Evidence or Otherwise Contrary to Law or Regulation.**

On June 10, 2002, Mr. Roberts submitted a second application for reconsideration (AR 48) which attached copies of his discharge (AR 49), the psychiatric clearance for his discharge proceeding (AR 50), a copy of his court martial conviction (AR 51), photos of various civilian master plumber licenses that he held subsequent to his discharge (AR 52), an enrollment form from an Alabama community college indicating course enrollment (AR 53), and a June 4, 2002, typewritten statement describing racial prejudice in the Army and indicating that he has heard nothing from the Board since he submitted his application six months previously (AR 54).

As the Court's Memorandum Opinion notes, on January 21, 2003, the Board responded to Mr. Roberts' June 10, 2002, request by advising him that the Board's staff had determined that his application did not warrant resubmission to the Board.  R 47, Mem. Op. at 8.   The Board's January 21, 2003, decision cited paragraph 2-15b of Army Regulation 15-185, which, at the time of the decision, provided that requests for reconsideration received more than one year after the original decision would be reviewed by the Board's staff for evidence of certain criteria for re-opening a decision and, if the staff does not find such evidence, the application would be returned to the applicant without action. Because the Board's staff determined that no new evidence met those criteria, the Board denied Mr. Roberts' June 10, 2002, application (AR 47).  Paragraph 2-15(b) of Army Regulation 15-185, 32 C.F.R. § 581.3(g)(4)(ii)(Feb. 29, 2000), in effect at the time that Mr. Roberts submitted all of the applications for reconsideration, is quoted at Mem. Op. at 8, n.8 and is attached as an exhibit to Defendants' Memorandum (R 34-2).

On December 27, 2002, Mr. Roberts submitted a third request for reconsideration – a typewritten application with no attachments.  R 46.  On July 15, 2003, the Board responded to Mr. Roberts with a letter, similar to its January 21, 2002, letter advising him once again that the under the applicable version of paragraph 2-15b of Army Regulation 15-185, the "staff of the Board has determined that your current application does not contain evidence" that meets the cited criteria.  R 45.

Because the decisions of January 21 and July 15, 2003, were made by staff and not by the Board, they were in violation of 10 U.S.C. § 1552.  As this Court noted in its Memorandum Opinion, the Hon. Ricardo M. Urbina has already held in Lipsman v. Secretary of the Army, 335 F.Supp. 2d 48 (D.D.C. 2004) (Lipsman II) that section 1552

requires the ABCMR to act through boards of civilians, not its staff members, regardless of

whether it is deciding an original application or a subsequent request for reconsideration.

Mem. Op. at 9.  The Lipsman II court specifically found that the Board's delegation of

actions to its staff violated the APA because it was arbitrary or capricious and not in

accordance with law.  335 F.Supp. at 53.

Defendants' Memorandum notes (p. 18) that Army Regulation 15-185

contained paragraph 2-15b when the Board's staff made its decisions announced on January

21 and July 15, 2003, but that the Lipsman II decision "ordered the Army to strike paragraph

2-15b."  Of course, Lipsman II was decided on September 7, 2004, more than a year after the

latest of the two Board decisions on Mr. Roberts' applications and more than three months

after Mr. Roberts submitted his June 4, 2004 Request for Reconsideration.

The amendment to Army Regulation 15-185, in the form described in

Defendants' Memorandum, was not made until March 31, 2006, more than three months

after this action was filed, and did not even become effective until May 1, 2006, more than

three weeks after Defendants filed their first motion to dismiss in this case (R 6).  *See* R 34-3,

the exhibit to Defendants Memorandum, Army Regulation 15-185, dated 31 March 2006;

Summary of Change: ("This rapid action revision dated 31 March 2006 Updates policies and

procedures ... to comply with ... the decision [in Lipsman II]").  In other words, it is difficult

to apply the amendment to the January 21 and July 15, 2003, Board decisions when the

amendment did not become effective until months after this suit was filed, and almost three

years after the latest of the two Board decisions.[8]  It is simply not enough for Defendants to

_____

[8] Indeed the ABCMR's website continues to post its "Applicant's Guide to Applying to the
ABCMR," item 14 of which describes paragraph 2-15b of Army Regulation 15-185, as it
existed before the amendment:  "If a request for reconsideration is received more than one

argue that the ABCMR is without authority "under current Army Regulations" to reconsider decisions made more than three years before the regulation was amended.[9]

Of course, the amendment does not make the <u>Lipsman II</u> decision-by-staff-rather-than-Board issue moot as Defendants' Memorandum (p. 22) alleges. This issue in <u>Lipsman</u> was not what decision the staff made or when it made it, but the very fact that the staff, and not the Board, made it. The Board cannot moot pending litigation by subsequently promulgating regulations.

**4.  The Board's Decisions of January 21 and July 15, 2003, Cannot Be  Rehabilitated By Arguing That Plaintiff's Second and Third Reconsideration Requests Submitted No New Evidence.**

Defendants argue in part D.3. of their Memorandum that even if the ABCMR erred by not reconsidering Plaintiff's requests of June 10 and December 27, 2002, it wouldn't have mattered anyway because they assert that those requests did not submit any evidence that had not been already considered by the Board.  Moreover, Defendants now appear to argue that <u>Lipsman</u> is not applicable because, in rejecting Mr. Roberts' requests, the Board's staff was not weighing the relative merits of the evidence that was submitted, but merely determining that no new evidence was being submitted to the Board.

---

year after the Board's original consideration or after the Board has already reconsidered the case, the staff of the Board will review the request for reconsideration to determine if substantial relevant evidence has been submitted that shows fraud, mistake in law, mathematical miscalculation, manifest error, or if substantial relevant new evidence has been discovered after the Board's original decision. If the staff finds such evidence, the case will be submitted for reconsideration by the ABCMR." See, *http: //arba.army.pentagon.mil/ abcmr.htm.*

[9] Defendants' disregard for the effective date of Army regulations is not limited to their Memorandum's discussion (at pp. 22-23) of the <u>Lipsman</u> issue.  The initial footnote in Defendants Memorandum, while adequately describing current law, ignores Army regulations as they existed at the time of Plaintiff's discharge.  See, Mem. Op. at 5, n. 3.

Of course, this new argument that the staff was not examining evidence runs afoul of the <u>Chenery</u> doctrine. "A reviewing court 'may not supply a reasoned basis for the agency's decision that the agency itself has not given.'" <u>Dickson v. Sec'y of Defense</u>, 68 F.3d 1396, 1405, n. 16, (D.C. Cir. 1995), quoting <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co</u>., 463 U.S. 29, 43 (1983) (citing <u>SEC v. Chenery Corp</u>., 332 U.S. 194, 196 (1947)); <u>Humane Society of the U.S. v. Dept. of Commerce</u>, 432 F.Supp.2d 4, 17 (D.D.C. 2006) ("[A] reviewing court 'must judge the propriety of [the agency's] action solely by the grounds invoked by the agency.'") (quoting <u>Chenery Corp</u>., 332 U.S. at 194).

Defendants' assertion that all the evidence presented by Mr. Roberts in his second and third requests for reconsideration had previously been considered by the Board overlooks several items. For example, Mr. Roberts' June 10, 2002, (second) request for reconsideration attached a June 4, 2002, typewritten statement of his history of racial discrimination in the Army, which he specifically described as "an issue to deal with under the provision of title 10, U.S. Code, section 1552." He also submitted evidence of his master plumbers licenses and his community college attendance (AR 52, 53) – evidence of his post-discharge achievements that, whether rightly or wrongly, is often considered by corrections boards. *See, e.g.*, <u>Greenberg v. England</u>, 2005 U.S.Dist.LEXIS 22688, *14 (D.Del. October 6, 2005) (BCNR considered evidence of 'good post-service conduct."). Contrary to Defendants' statements, none of this evidence was previously considered by the Board (AR 84).

Lastly, citing this Court's decision in <u>Lassalle v. Geren</u>, 2007 U.S.Dist.LEXIS 31056 (D.D.C. April 27, 2007), Defendants also now argue that a second remand would serve no useful purpose because with the August 2, 2006, remand from this Court, the

ABCMR has now considered all evidence submitted by Mr. Roberts – including all of the evidence submitted in Plaintiff's July 2004 memorandum.   The <u>Lipsman</u> plaintiffs submitted new evidence with their requests for reconsideration, Jose Lassalle did not.  <u>Lassalle</u>, 2007 U.S.Dist.LEXIS 31056, *17.  The rationale of <u>Lassalle</u> is not applicable here -- not only has the Board ignored the evidence Plaintiff submitted in his second request for reconsideration, but, as pointed out in much more detail in part B.1. *supra*, the Board reconsideration on remand was limited to the sole issue raised in the Court's August 3, 2006, remand order and memorandum opinion, a fact that Defendants admit in note 6 on page 25 of Defendants Memorandum.  The arguments and evidence in Plaintiff's second request for reconsideration (described above) and in his much more comprehensive June 4, 2004, request for reconsideration (described in part 5 *infra*) have never been considered by the Board.


**5. The Board's March 17, 2005, Decision Was Arbitrary, Capricious, an Abuse of Discretion, Unsupported by Substantial Evidence or Otherwise Contrary to Law or Regulation.**

This Court has already found that on June 4, 2004, Mr. Roberts filed by counsel a Request for Reconsideration accompanied by a twenty-nine page memorandum (AR 3-32) and fifty-four pages of exhibits (Original Complaint Attach. I).  The request listed the earlier decision files and noted that this was the first request filed with the direct assistance of legal counsel and that it  raised a number of issues and facts that had never been presented to, or considered by, the Board (AR 2).  *See* Mem. Op. at 8.   As this Court's Memorandum Opinion noted, the Board returned Mr. Roberts' June 4, 2004, application for reconsideration, apparently unread.  Mem. Op. at 9; AR 1.

### a.  The Board's March 17, 2005, Decision Violated The APA Because It Was Made By Staff And Not The Board As Required By Statute.

While Mr. Roberts' June 4, 2004, request was pending at the Board, this

Court's September 7, 2004, <u>Lipsman II</u> decision was handed down.  After holding Mr.

Roberts' request for more than nine months, the Board, on March 17, 2005, returned the June

4, 2004, memorandum and exhibits filed by Mr. Roberts' counsel directly to Mr. Roberts.

AR 1.  The Board's letter noted that Mr. Roberts' case was considered on September 6, 2001,

that no further ABCMR action is contemplated, that he had exhausted all of his

administrative remedies, and that Mr. Roberts had the option of seeking "relief in a court of

appropriate jurisdiction."   Although not citing <u>Lipsman</u>, the Board referred to a recent court

decision "ordering the deletion of paragraph 2-15b of AR 15-185," and stated that the effect

of the decision "now permits an applicant to request reconsideration of an earlier ABCMR

decision if the request is received within one year of the ABCMR's original decision and it

has not been previously reconsidered" (AR 1).  *See* Mem. Op. at 9.

Neither the Board's letter nor Defendants' Memorandum mentioned the fact

that <u>Lipsman II</u> did much more than merely order the deletion of paragraph 2-15b; it also

ordered the Board to consider the applications of the <u>Lipsman</u> plaintiffs -- plaintiffs who are

in the exact same position as Mr. Roberts.  Moreover, this Court in <u>Lipsman II</u> ordered the

Board to reconsider the applications of all members of NABVETS, the National Association

of Black Veterans, whose second requests to the Board contained new evidence.[10]   The

Board's March 17, 2004, response to Mr. Roberts' Request for Reconsideration mentioned

---

[10] 335 F.Supp.2d at 56-57.  Mr. Roberts is not a member of NABVETS.

only one portion of the Lipsman holding; it did not mention the Lipsman remedy -- remand to the Board for reconsideration.

      If the Board's change of policy on requests for reconsideration were to affect Mr. Roberts, it should have done so before he submitted his request, not while his request was pending, and the change of policy should be applicable to everyone similarly situated. As noted in section B.3. *supra*, the Board's change of policy became effective on May 1, 2006, and the Board still has yet to replace contradictory statements that appear on its website.[11]  "[A]n agency changing its course must supply a reasoned analysis...." Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins., 463 U.S. 29, 57 (1983), quoting Greater Boston Television Corp. v. F.C.C., 444 F.2d 841, 852 (1970).

      Clearly, the Lipsman II holding -- that dispositive decisions made by staff were arbitrary or capricious and not in accordance with law -- applies to the dispositive staff decisions made on January 21 and July 15, 2003, and June 4, 2004, and at the very least these decisions should be remanded to the Board as was ordered by this Court in Lipsman II.  The ultimate fate of Army Regulation 15-185's paragraph 2-15b is irrelevant to this case because that provision was in force when Mr. Roberts filed his last request with the Board and was not superseded until more than four months after this action was filed.

      Defendants argue that the Court should defer to the Army's view that it can retroactively apply it's regulation without notice and then conceal that retroactive application from judicial review.  However, Defendants fail to state which version of the regulation should be beyond the Court's reach.  In Lipsman II, the Army and this Court agreed on the interpretation of Regulation 15-185's paragraph 2-15b, namely that it authorized certain staff

---

[11] See Note 8 *supra*.

decisions; they disagreed only on whether the regulation's authorization of staff decisions was contrary to the statute, 10 U.S.C. § 1552.  Likewise, here there is no dispute about the interpretation of the March 31, 2006, amendment to Army Regulation 15-185; the issue is whether the regulation can become effective before its stated effective date, May 1, 2006.

As noted in part A.2. *supra*, this agency's interpretation of statutes, regulations, and court decisions is not entitled to any <u>Chevron</u> deference.  Nor are interpretations of statutes, regulations, and court decisions entitled to any military deference on judicial interpretations of the law.  *See* <u>Mudd v. Caldera</u>, 134 F.Supp.2d 138, 144 (D.D.C. 2001) ("<u>Mudd II</u>") ("But there is no law that supports the Army's position that an Article III judge must defer to an agency or department of the Executive Branch or the head of such an agency or department -- even to the Secretary of a branch of the military -- on interpretations of decisions of the United States Supreme Court; for that is quintessentially a judicial function.").

**b.  The Board's March 17, 2005, Decision Violated The APA Because It Ignored Plaintiff's Argument That His 1969 Discharge Proceeding Was Defective As a Matter of Law.**

Much of Plaintiff's June 4, 2004, submission addressed issues concerning alleged defects in the Board's initial September 6, 2001, decision -- issues which the Court's August 3, 2006, Memorandum Opinion has already considered and are no longer present in this case.  Other parts of the Plaintiff's June 4, 2004, submission dealt with the issues of duress and waiver of rights during Mr. Roberts 1969 discharge proceeding, issues that this Court has already addressed in its August 3, 2006, Memorandum Opinion and which resulted in the Court's remand order.

However, Plaintiff's June 4, 2004, submission to the Board raised other issues that have not been considered by either the Board or this Court. For example, Plaintiff's submission showed that the Army's 1969 Undesirable Discharge must be set aside because the procedure for Mr. Roberts' discharge did not follow the requirements of Army Regulation 635-212 in effect at the time for the discharge of soldiers. Specifically, Plaintiff's June 4, 2004, submission showed that Mr. Roberts' 1969 discharge procedure failed (i) to make required findings with respect to the waiver of the required counseling and rehabilitation, (ii) to be initiated by the required recommendation by the unit commander, and (iii) to exclude records of prior non-judicial punishments as required by Army Regulation 27-10 in effect at the time.

### (i). Mr. Roberts' 1969 Discharge Procedure Failed To Make Required Findings With Respect To The Waiver Of The Required Counseling And Rehabilitation,

Plaintiff's June 4, 2004, submission pointed out at pp. 14, 15 that on June 6, 1969, a Military Police correctional officer, Lt. Raymond Reass, recommended Mr. Roberts' discharge under Army Regulation 635-212 to the Commanding General, stating: "In view of this soldier's record of disciplinary actions, request waiver of counseling and (further) transfer for rehabilitation" AR 254 - 257 (AR 256 and 257 are transposed).   In an undated "Action," the Commander of the Eighth Field Army Support Command, noting the correctional officer's recommendation that the counseling and further rehabilitation required by Army Regulation 635-212 be waived, ordered an Undesirable (UCOTH) Discharge.  AR 228.

However, paragraph 7a of Army Regulation 635-212, in effect at the time, required that service members discharged under paragraph 6a(1) must receive counseling, and a specific memorandum made of that fact.  Paragraph 7b(2) required rehabilitation through reassignment.  Paragraph 7c(2) and (3) provided that counseling and rehabilitation can only be waived by the general court-martial authority "when he determines that further duty of the individual will, in his best judgment, create serious disciplinary problems or a hazard to the military mission or to the individual."  *See* original Complaint, Attach. I, Ex. G (document not in AR).  No waiver of counseling and rehabilitation through reassignment containing the specific findings described in paragraph 7c(2) and (3) of Army Regulation 635-212, in effect at the time, that counseling and rehabilitation would create serious discipline problems or a hazard to the military mission or to the individual, appears in the record of this case.

### (ii) Mr. Roberts' 1969 Discharge Procedure Was Not Initiated By The Required Recommendation By The Unit Commander.

Paragraph 10 of Army Regulation 635-212, in effect at the time, required the individual's unit commander to initiate the discharge process:  "The unit commander of the individual will recommend action under this regulation ...."  Paragraph 12 requires the individual's commander to forward a "Commanding officer's report" through the appropriate intermediate commander, if appropriate, to the general court-martial convening authority. *See* Complaint, Attach. I, Ex. G (R 1) (document not in AR).  However, the discharge recommendation prepared by Correctional Officer Reass is not labeled a "commanding officer's report" and is signed by Lt. Reass as Mr. Roberts' "correctional officer," not "commanding."  AR 254 - 257 (256 and 257 are transposed).  As Plaintiff's June 4, 2004,

submission noted at p. 16, there is no indication that Lt. Reass ever commanded a unit to which Mr. Roberts was assigned, or that the recommendation ever reached the general court-martial authority through the appropriate intermediate commander.

### (iii). Mr. Roberts' 1969 Discharge Procedure Failed to exclude records of prior non-judicial punishments as required by Army Regulation 27-10 in effect at the time.

Plaintiff's June 4, 2004, submission observed at p. 17 that Correctional Officer Reass's recommendation to General Holm was reviewed by the Staff Judge Advocate, Lt. Col. George Taylor, Jr., who appended records of two separate non-judicial punishments under Uniform Code of Military Justice Article 15 that Mr. Roberts received on March 5 and April 22, 1968, while in basic airborne training at Ft. Benning, Georgia. AR 256 (AR 256 and 257 are transposed). These records of non-judicial punishments were considered by the discharging authority in spite of the fact that Mr. Roberts had been transferred several times subsequent to the imposition of these two separate non-judicial punishments both of which had been imposed more than one year earlier. AR 249. This would have been a clear violation of Army Regulation 27-10, in effect at the time, which specifically forbade the mention of one-year-old or older non-judicial punishments in a proceeding against a soldier if the individual had been subsequently transferred and one year had elapsed. As this Court observed in <u>Martin v. Secretary of the Army</u>, 455 F.Supp. 634, 637 (D.D.C. 1977): "Both <u>U.S. v. Cohan</u>, 43 C.M.R. 309 (1970) and <u>U.S. v. Turner</u>, 45 C.M.R. 130 (1972), have interpreted Regulation 27-10 as forbidding mention of an individual's non-judicial punishment in a proceeding against him whenever he has been subsequently transferred and (a) one year has elapsed, (b) punishment has been executed, and

(c) any appeal of the punishment has been fully resolved.  Considering a claim for back pay,

the court in Martin applied paragraph 3-15(d) of the 1968 version of the regulation to

overturn a 1971 discharge proceeding.[12]  In a passage that directly applies to Mr. Roberts'

predicament, the U.S. Court of Military Appeals noted in U.S. v. Cohan, 43 C.M.R. 309, 312

(1971):

> Indisputably, transfer is important to the question of retention or destruction of the record [of non-judicial punishment].  It is especially important to persons new to the military who might be expected to experience difficulty in adjusting from civilian life to the rigors of recruit training, and whose transfer from a temporary unit to a permanent organization commonly occurs in a period of less than a year.  Such persons might hope to make a new start in their new organizations....

Of course, this same principle -- that soldiers be given the opportunity to

transfer to another unit -- is the reason that paragraph 7c of Army Regulation 635-212

provided that specific findings must be made before a commander can waive a transfer for

rehabilitation.  See Complaint, Attach. I, Ex. G (R 1) (document not in AR).

"It is axiomatic that an agency ... must scrupulously observe its own rules,

regulations, and procedures. ... With respect to the armed forces, this requirement 'does not

involve any undue interference with the proper and efficient operation of our military forces

because we require only that the Army carry out the procedures and regulations it created

itself.'"  Blassingame v. Secretary of the Navy, 866 F.2d 556, 560 (2d Cir. 1989), citing U.S.

ex rel Accardi v. Shaughnessy, 347 U.S. 260, 268 (1954) and quoting Smith v. Resor, 406

---

[12] Army Regulation 27-10 (26 Nov. 1968) was amended twenty-one times between its Jan. 1, 1969, effective date and 1981.  At least one change, Change 17, incorporated all prior changes.  Because Plaintiff has been unable to locate a copy of the version in force in early 1969, he must rely on the text as reprinted in U.S. v. Cohan, 43 C.M.R. 309, 311 (1971).  The facts of that case indicate that the version quoted therein, which also was applicable to the facts in Martin v. Secretary of the Army, 455 F.Supp. 634, 637 (D.D.C. 1977), remained unchanged as late as September 1969, which would easily include the period applicable to Mr. Roberts' case.

F.2d 141,146 (2d Cir. 1969).  As this Court noted in <u>VanderMolen</u> , 571 F.2d at  624: "It is, of course, a fundamental tenet of our legal system that the Government must follow its own regulations.  Actions by an agency of the executive branch in violation of its own regulations are illegal and void."  Mr. Roberts' June 4, 2004, Request for Reconsideration pointed out that the Board's decision failed to note that the Army misapplied its own regulations to the following facts.

"The District of Columbia Circuit has concluded that the failure to respond to arguments raised by a plaintiff, which do not appear frivolous on their face and could affect the Board's ultimate disposition, is arbitrary."  <u>Calloway v. Brownlee</u>, 366 F.Supp.2d 43, 53 (D.D.C. 2005) and <u>Appleby v. Harvey</u>, 2007 U.S.Dist.LEXIS 38432 (D.D.C. May 29, 2007), citing <u>Frizelle v. Slater</u>, 111 F.3d at 177 and <u>Mudd  I</u>, 26 F.Supp.2d  at 123.  In this case, of course, there is no indication that the Board even read, let alone considered, Mr. Roberts' arguments described above -- arguments that certainly were not frivolous and which would have affected the ultimate disposition.

As the court noted in <u>Guerrero v. Stone</u>, 970 F.2d 626, 638 (9th Cir. 1992): "The Board is charged with correcting errors and removing injustices in applicants' service records.  10 U.S.C. §1552(a)(1).  To remove injustices is the Board's chief responsibility and constitutes its very reason for being.  The Army has no need of a Board that stubbornly hews to obscure decisions or slavishly follows bright-line distinctions simply because doing so relieves some agency of the difficult task of considering each case on the merits.  The Army needs a Board that serves the interest of justice."

**6.  The Board's Decision of December 5, 2006, Was Arbitrary, Capricious, an Abuse Of Discretion, Unsupported by Substantial Evidence or Otherwise Contrary to Law or Regulation.**

As described in IV.B.1 *supra*, the Board's December 5, 2006, decision -- on remand pursuant to this Court's August 3, 2006, order (R 18) -- examined only the specific issue remanded by the Court relating to the Board's denial of Mr. Roberts' first request for reconsideration.  It did not address the Board's decisions of January 21, 2003, July 15, 2003, and March 17, 2005, which were not reviewed by the Court.

**a.  The Board's December 5, 2006, decision violated the APA because it addressed in an irrational and arbitrary fashion the specific issue remanded by this Court.**

The Court concluded that "plaintiff sufficiently raised the argument before the ABCMR that he waived his rights under duress or was misled by counsel into agreeing to be discharged from the Army by reason of unfitness under the provision of Army Regulation 635-212 based on the mistaken belief that he would he honorably discharged."  Mem. Op. at 16.  However, the Board's explanation of its review of this issue on remand not only inaccurately describes the record, but is irrational.   For example, the second sentence of paragraph 4 of the Board's December 5, 2006, Discussion and Conclusions (AR 370), notes that "There is no indication that [Mr. Roberts] received erroneous information from this qualified JAG attorney, or that he was given an expectation that he would receive a GD [General Discharge]."  Two sentences later the Board acknowledged that Mr. Roberts' December 26, 2001, letter to the Board stated, as this Court's memorandum opinion noted, that "[t]he JAG lawyer said that <u>I most likely received</u> a General Discharge under honorable conditions, but that didn't happen."   AR 370 (emphasis in original).

The Board then declared that Mr. Roberts "should have known that he was not guaranteed a GD. The first time an argument or assertion is raised that he remembers being told he would receive a GD is in later submissions from his counsel in 2004." AR 370. This, of course, is not only incorrect, but demonstrates that the Board remains unaware of the evidence before it. The Court's Memorandum Opinion quotes Mr. Roberts December 26, 2001, submission to the Board: "The JAGC lawyer said that I most likely received a General Discharge under Honorable Condition, but that didn't happen." Mem.Op. at 4. Moreover, neither Mr. Roberts nor his counsel has ever maintained that Mr. Roberts was "guaranteed," or even promised that he would receive, a General Discharge. Mr. Roberts attached his affidavit to his June 4, 2004, submission to the Board declaring that "my defense counsel explained that ... most likely a General Discharge would result." Plaintiff's counsel has been careful to repeat the "most likely" language, using it on pp. 12 and 20 of the June 4, 2004, submission (AR 18, 27). Even the Board's Statement of the Evidence describes at paragraph 5, page 3, (AR 367) Mr. Roberts recalling that he was told that he "most likely" would receive a General Discharge, not that he was "guaranteed" a General Discharge. It appears that the Board reconsidered Mr. Roberts' December 26, 2001, Statement of Reconsideration on the mistaken assumption that he first raised the issue in 2004 and that he was claiming that the Army lawyer "guaranteed" him an honorable discharge. This, of course, is incorrect and another example of error.

The role of the Army attorney advising Mr. Roberts during his 1969 discharge proceeding is curious. He certainly was not Mr. Roberts' counsel as the Board seeks to describe him ("his JAG attorney" (paragraph 7, AR 371)). Mr. Roberts had waived his right to counsel. *See* Mem. Op. at 3. There is no evidence to support the Board's conclusion that

Mr. Roberts "consulted" or sought advice from the JAG attorney (paragraph 9, page 5, AR 369).  Rather, the evidence is to the contrary.  As Mr. Roberts noted in his December 26, 2001, statement of reconsideration:  "... so when CPT. David V. Foley appeared to advise me on the contemplated separation under AR 635-212, what did I know?  ...  on 13 May 69 here comes a JAGC lawyer by the name of CPT. David V. Foley who offered me a way out of the stockade, I was under duress ...."  AR 73.

The Board's December 5, 2006, decision contains more errors.  For example, the Court's Memorandum Opinion notes that the special exceptions in Army Regulation 635-212, which requires an Undesirable Discharge for separations for unfitness -- exceptions that would have permitted an Honorable Discharge instead of the normal Undesirable Discharge -- did not apply to Mr. Roberts' situation.  The inapplicability of these exceptions "made it all but a certainty that plaintiff would receive a discharge under conditions other than honorable, and *not*, as plaintiff appears to have believed, a discharge under honorable conditions." (Mem. Op. at 4 (emphasis in original)).  The Board echoed this conclusion in paragraph 7 of its Discussion and Conclusions:  "There is no evidence of special circumstances that would have supported a GD at the time of the applicant's discharge ...."  AR 371.  Yet, in the preceding paragraph 5 (AR 370), the Board cites these special, yet inapplicable, exceptions, as support for its conclusion that Mr. Roberts "was properly counseled" when he waived his rights:  "The governing regulation in effect at the time did indicate that an UD ... was normally considered appropriate for members separating for unfitness; however, it also provided for the separation authority to issue a GD under special circumstances.  Therefore, the applicant was properly counseled ...."  AR 370.  Because the Board admitted that it was impossible for Mr. Roberts to receive a General Discharge, the Board's December 5, 2006,

decision was arbitrary, capricious, irrational, and an abuse of discretion when it found that Mr. Roberts was not misled when the Army lawyer told him that if he waived his rights to counsel, a hearing, and the right to make a statement in his behalf, he "most likely" would receive a General Discharge.

As this Circuit noted in <u>Dickson</u>, 68 F.3d at 1406: "We find the conclusory statements of the [ABCMR] in these cases do not meet the requirement that 'the agency adequately explain its result.' Because the Board only listed the facts and stated its conclusions, but did not connect them in any rational way, the Board's decisions are arbitrary and capricious."

**b. The Board's December 5, 2006, decision violated the APA because it failed to address all of the issues raised by Mr. Roberts in his December 26, 2001, submission.**

The December 5, 2006, decision on remand purports to reconsider the Board's May 16, 2002, decision, but Mr. Roberts' December 26, 2001, Statement of Reconsideration asserts claims that the Board ignored in both its decisions of May 16, 2002, and December 5, 2006. For example, the Court's Memorandum Opinion noted that Mr. Roberts' December 26, 2001, *pro se* application for reconsideration -- the application the Board was supposed to review -- asserted that; "while in Korea, he encountered racial prejudice and discrimination, an 'oversight by the Doctors in their Physical, and mental evaluation,' and 'a tremendous amount of psychological trauma that led to classification of Unfitness.'" The Court's Memorandum Opinion also observed: "Plaintiff also alleged that at the time of his discharge, there was an 'on going [sic] practice in the Military to bar all black veterans from any benefits.'" Mem. Op. at 7.

Neither the Board's May 16, 2002, decision, nor its December 5, 2006, decision, specifically addresses these claims in Mr. Roberts' December 26, 2001, Statement of Reconsideration -- claims (i) that much of his Army difficulties were based on racial prejudice, (ii) that the psychiatric clearance for his discharge proceeding was based on an incomplete medical evaluation, and (iii) that his unfitness determination was unfairly based on his actions that were the result of psychological trauma that he had suffered in the Army.

The only part of the Discussion portion of the May 16, 2002, decision that remotely touches on these claims is the Board's statement that "His argument that he was being discriminated against while in Korea because of his medical profile against shaving is not convincing."   AR 68.  Of course, Mr. Roberts' claims of racial discrimination are not limited to his being discriminating against for having a medical profile that permitted a beard.  His December 26, 2001, Statement of Reconsideration asserts:  "The above charges were fabricated in order to promote racism, and to hinder all minorities by any means, because their (sic) was at the time a on going [sic] practice in the Military to bar all black veterans from any benefits."  AR 72.   He described his Korean garrison as "very racial, the area was poison."  AR 73.  The Army may have responses to Mr. Roberts' claims, but the APA entitles Mr. Roberts to hear them.

The Board December 5, 2006, reconsideration stated that on remand it was limiting its review "to the issue raised in court documents" (AR 367), yet it ignored this Court's observation that Mr. Roberts attempted suicide five days after he signed the waiver of his rights.  Mem. Op. at 16, n. 12.   A suicide attempt is probative of the duress that Mr.

Roberts was under when he signed away his rights.  It is evidence that the Board must

confront.[13]


### c.  The Board's December 5, 2006, decision violated the APA because it relied on a defective bar to reenlistment.


Paragraph 6 of the Board's Consideration of the Evidence in its December 5,

2006, decision notes that "On 10 February 1969, the unit commandeer initiated action to bar

the applicant from reenlistment and cited the applicant's record of NJP [non-judicial

punishment] and 8 May 1968 SPCM [special court-martial] conviction as the basis for taking

the action.  On 25 March 1969, the appropriate authority approved the imposition of a bar to

reenlistment on the applicant."  AR 368.  The Administrative Record contains a March 25,

1969, approval of what appears to be a February 10, 1969, recommendation (AR 265), and

Defendants' Material Fact No. 6 refers to a February 10, 1969, recommendation; however,

no February 10, 1969, recommendation appears in the Administrative Record.  The

Administrative Record does contain a February 5, 1969, recommendation, but that

recommendation only mentions one non-judicial punishment.  AR 320.  Of course, if the

recommendation referred to three non-judicial punishments -- and the Board refers to three

separate NJPs on the preceding paragraph 5 -- the bar to re-enlistment would be in error

because, as noted above, AR 27-10 forbade the use of a record of non-judicial punishment in

a proceeding against an individual after the passage of one year and the individual has been

subsequently transferred.

---

[13] Less that a year after Pvt. Roberts signed the waiver of his rights, the Army amended AR 635-212 to permit the withdrawal of a waiver at any time prior to the date of actual discharge.  See Exhibit H to Mr. Roberts' June 4, 2004, submission to the Board.

Moreover, the commander's recommendation for a bar to re-enlistment that does appear in the Administrative Record (AR 320) is defective because it relies on a "pending court-martial" that had, at that point, not even occurred. At the time his commander made the recommendation, more than two months before his court-martial, Mr. Roberts' was entitled to a presumption of innocence, and indeed, two of the charges were subsequently dismissed for lack of sufficient evidence.[14]  Accordingly,  the purported bar to re-enlistment was a legal nullity, either because it relied upon two non-judicial punishments in violation of Army Regulation 27-10 or because it relied on a court-martial that not only had not taken place, but after which two of the charges were dismissed for lack of sufficient evidence.  In either event, the bar would have been ineffective to prevent Mr. Roberts' re-enlistment, and the Board erred by ignoring that fact.

## V. CONCLUSION

The Army had no problem with Mr. Roberts when he was in contact with the enemy.  He performed well in combat as a scout observer in Vietnam, where his conduct and efficient were rated as "excellent," and, during a relatively short period, he was awarded the national Defense Service Medal, the Vietnam Service Medal, the Air Medal and the Combat Infantryman Badge.  AR 49, 249.  He is certainly not the only soldier who performed better in combat than in garrison.

One can see from the foregoing case citations that a number of remanded correction board decisions have returned to the remanding court.  *See, e.g.,* White v. Sec'y, Lipsman, Dilley, Kreis, and Mudd.  Sadly, the response of the ABCMR to what it may regard

---

[14] Charge IV and specification 4 of Charge V were dismissed for lack of sufficient evidence. AR 325.

as judicial interference with its operations has sometimes appeared petulant.  For example, the Board reacted to this Court's <u>Lipsman II</u> decision, a pro-veteran decision that forced the Board to comply with its statute, by denying all requests for reconsideration received after one year.  A.R. 1.  In <u>Dilley I</u>, the Army responded to this Circuit's order that appellants be reinstated to active duty and be considered for promotion, by offering either retirement or non-retroactive reinstatement, thereby forcing the Court to declare:  "Hence the Army has forfeited any claim it might have ... to exercise its discretion in fashioning the specifics of the remedy ordered by the court."  <u>Dilly II</u>, 627 F.2d at 407.  In <u>Robinson v. Resor</u>, this Circuit noted that rather than showing CWO Robinson "a little more compassion" and a little more interest in his welfare, "the Army was in fact acting out of pure institutional self-interest and possibly even out of spite."  *See* 469 F.2d at n. 20 and accompanying text.[15]  *See* <u>Guerrero</u> 970 F.2d at 638 ("The VA believed that too many Filipinos were requesting veterans benefits.  Instead of deciding each case on the merits, the Army decided to draw a bright line.  Such arbitrary administrative distinctions, however, cannot stand when they contradict the declared policy they purport to follow.").

       In enacting the APA, Congress required the Board to follow its own rules and to consider the arguments that Mr. Roberts advanced to upgrade his discharge.  The Board has yet to consider all of Mr. Roberts' arguments in spite of having five opportunities to do so.  More time and effort have already been spent by this Court and the U.S. Attorneys Office on Mr. Roberts' petition to upgrade his discharge than have apparently been spent by the

---

[15] <u>Robinson v. Resor</u>: "We hold that the relation of the Government to its soldiers, both as to the substantive decisions on their status and the procedures used to arrive at those decisions, must be, 'if not paternal,' 'at least avuncular.'  Substantial fairness, rather than nitpicking compliance with precise regulations, must guide the Army's actions.  The Army must not be allowed to reach, step by technical step, a result which, viewed in its entirety, constitutes an overreaching leap into the arbitrary and inequitable."  469 F.2d at 944 (citation omitted).

ABCMR, the agency responsible for petitions for discharge upgrades.   The Board's actions

on this matter to date provide no assurance that it will be able to respond properly to a second

remand.  The time has come for this Court to direct the Board to upgrade Mr. Roberts'

discharge.  For the reasons cited herein, Plaintiff respectfully asks this Court to deny

Defendants' Motion to Dismiss, in Part, and for Summary Judgment and to grant Plaintiff's

Cross-Motion for Summary Judgment.

Respectfully Submitted,

/S/

_____

Michael W. Dolan, Esq.
   D.C. Bar No. 3384
2021 L Street, N.W.
Suite 204
Washington, D.C.  20036
202/293-2776
*Counsel for Plaintiff*