**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

THOMAS ROBERTS                    )
                                  )
            Plaintiff,            )
                                  )
v.                                )            Civil Action No. 05-2430 (ESH)
                                  )
                                  )
SECRETARY OF THE ARMY,            )
et al.,                           )
                                  )
            Defendants.           )
_____    )

## DEFENDANTS' REPLY IN SUPPORT OF ITS MOTION TO DISMISS IN PART AND FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

Defendants respectfully submits their opposition to the cross-motion for summary judgment submitted by plaintiff, Thomas Roberts, and their reply to plaintiff's opposition to their motion to dismiss in part and for summary judgment.[1]  In support of this submission, we rely upon the Complaint, the Administrative Record ("AR"), our previously filed motion, plaintiff's cross-motion, plaintiff's supplemental memorandum in support of his cross-motion, and the following brief.[2]

_____

[1]  Defendants' response to Mr. Robert's counter-statement of  facts is filed contemporaneously with this brief.

[2] Citations in this brief to the Administrative Record are denoted as "AR __."  Citations to the Complaint are denoted as "Compl. __."  Citations to Defendants' Motion to Dismiss in Part and for Summary Judgement are denoted as "Def. Br. __." Citations to Plaintiff's Opposition to Defendants' Motion to Dismiss in part and for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment are denoted as "Pl. Br.__."

# I.  PRELIMINARY STATEMENT

The Army Board for Correction of Military Records ("ABCMR") correctly determined that plaintiff had not submitted sufficient evidence to establish that he is entitled to an upgrade in the characterization of his military service.  Because plaintiff has not met the prerequisites for mandamus relief, this Court should dismiss his mandamus claim.  Additionally, plaintiff's claim that he is entitled to multiple reconsideration requests by the ABCMR is not consistent with 10 U.S.C. § 1552.  While Lipsman v. Sec'y of the Army,  335 F. Supp. 2d 48, 54 (D.D.C. 2004), requires the ABCMR to make substantive determinations, the ABCMR staff remains free to make procedural determinations regarding whether a reconsideration request should be sent to the ABCMR.  The ABCMR staff acted within its authority in returning plaintiff's reconsideration requests for procedural reasons.  Moreover, the ABCMR's determination on remand that plaintiff knowingly and intelligently waived his rights related to his discharge is supported by substantial evidence.  Accordingly, this honorable Court should grant the Defendants' motion to dismiss, in part, and for summary judgment, and deny plaintiff's cross motion for summary judgment.

# II.  ARGUMENT

## A.    This Court Should Dismiss Plaintiff's Mandamus Claim Because Of The Discretionary Nature Of Characterization Of Military Service.

Plaintiff seeks a writ of mandamus from this Court ordering the Secretary of the Army to re-characterize Plaintiff's discharge as either Honorable or General.  (Compl., at 14.)  Plaintiff has not satisfied the prerequisites for mandamus relief in his Complaint or brief.  The prerequisites for mandamus relief are: 1) a clear right to the relief sought; 2) the defendants have

a clear ministerial and non-discretionary duty to act; and 3) the absence of any other adequate remedy. Swan v. Clinton, 100 F.3d 973, 977 (D.C. Cir. 1996); NTEU v. Bush, 715 F.Supp. 405, 407 (D.D.C. 1989). Plaintiff fails to address these prerequisites for mandamus relief. (See Pl. Br. at 8-13.) As discussed in detail below, plaintiff's claim that he has a right to an Honorable or a General discharge is not supported by the record. In fact, this Court has previously found as law of the case that "there is more than ample evidence in the record, and on which the Board did rely, to support its decision to deny plaintiff's request for an upgraded discharge." (Memo. Op. at 14, R. 19.) Morever, the determination of a servicemember's characterization of service is inherently discretionary. See Gilligan v. Morgan, 413 U.S. 1, 11 (1973). Finally, plaintiff has failed to demonstrate the absence of any other adequate remedy. Even assuming plaintiff were able to establish the first two prerequisites for mandamus relief, he has not articulated why remand to the ABCMR would not be an appropriate remedy. Because plaintiff has failed to establish these prerequisites, this Court should dismiss plaintiff's mandamus claim.

Plaintiff argues "this and other Circuits have not hesitated to direct the ABCMR to upgrade a discharge." (Pl. Br. at 8.) Although plaintiff cites a string of cases attempting to support this argument, those cases are all distinguishable from the case before this Court. (Compl. at 14.) Plaintiff initially relies on White v. Sec'y of the Army, 878 F.2d 501, 504, 506 (D.C. Cir. 1989). (Pl. Br. at 8.) The issue presented in White is substantially more narrow than the issue before the Court. White addressed the narrow issue of "whether in determining whether or not a legal error is prejudicial, an Army review board may consider a discharge proceeding other than the one that actually took place, and assume the result that would have materialized at the conclusion of the assumed proceeding." White, 878 F.2d at 504. Without analyzing the

prerequisites for mandamus, the Court ultimately determined there was no other adequate remedy available than treating him as if he completed his term of service.  Id. at 506.  These are clearly not the facts or issues present before this Court.

Similarly, the other cases relied upon by plaintiff do not support granting a writ of mandamus when the prerequisites discussed above have not been established.  See Dilley v. Alexander, 627 F.2d 407, 413 (D.C. Cir. 1980) (addressing officer reinstatement claims based on flawed promotion boards); VanderMolen v. Stetson, 571 F.2d 617, 625, 626-27 (D.C. Cir. 1977) (officer reinstatement claims); Robinson v. Restor, 469 F.2d 944, n.22 (D.C. Cir. 1977) (noting that "[a]lthough, on the record in this case, Robinson appears to us to be a deserving candidate for an honorable discharge, the Army Discharge Review Board must make that determination in the first instance."); Guerrero v. Stone, 970 F.2d 626, 638 (9th Cir. 1992) (restoring an honorable discharge that the U.S. Army had previously determined the Philippine Soldier was entitled to); Hoskin v. Restor, 324 F. Supp. 271 (D.D.C. 1971) ("This suit raises the issue of whether the members of the Russian Railway Service Corps were members of the Army of the United States during World War I and whether as such they are entitled to an Honorable Discharge therefrom."); Smith v. Marsh, 787 F.2d 510, 511 (10th Cir. 1986) (a conscientious objector challenge, which requires the issuance of an Honorable discharge); Mozur v. Orr, 600 F. Supp. 772 (E.D. Pa. 1985) (remanding record correction case to the military correction board not involving discharge characterization of service).  Although plaintiff claims these cases contradict the Defendants' contention that the characterization of service is a discretionary, nonjusticiable determination, (Pl. Br. at 9-10), the Courts actually refuse to order the Secretary to grant a discharge while that decision remains discretionary.  See e.g., Robinson, 469 F.2d 944, n.22

(D.C. Cir. 1977) (expressly acknowledging "the Army Discharge Review Board must make that [characterization of service] determination in the first instance.")  Because these cases do not support plaintiff's claim that mandamus is appropriate, his request for mandamus relief should be dismissed.

Finally, plaintiff argues that "directing the Army to upgrade his discharge will not interfere with military personnel decision-making," because "Mr. Roberts is a civilian."  (Pl. Br. at 12.)  Plaintiff fails to recognize, that while he now is a civilian, his characterization of service summarizes the nature of the service performed while in the military, which is inherently military in nature.  See Gay Veterans Ass'n v. Secretary of Defense, 668 F. Supp. 11, 16 (D.D.C. 1987) (discussing the role of discipline in characterization of service determinations).

> That the essence of military life is discipline and morale is well recognized. A soldier who engages in conduct that disrupts good order and discipline or reduces the morale of other soldiers has failed significantly in one of his or her more important tasks as a member of the Armed Forces.  Indeed, military service entails much more than the rote performance of daily tasks; it involves a duty to maintain standards of conduct in all aspects of military life. Id. (internal citations to Parker v. Levy, 417 U.S. 733, 743-52 (1974) omitted)

The characterization of military service is exactly the type of discretionary military personnel decision that the courts have consistently left to the military.  See Robinson, 469 F.2d at n.22.[3]

**B.    The ABCMR's Refusal To Hear Plaintiff's Second, Third, And Fourth Reconsideration Requests Does Not Violate 10 U.S.C. § 1552.**

Plaintiff has failed to establish any right to his multiple reconsideration requests.  As acknowledged in Lipsman v. Sec'y of the Army, 10 U.S.C. § 1552(a)(1) grants the Secretary

---

[3] Plaintiff's Brief makes clear that he is not making a direct challenge to his 1969 discharge. (Pl. Br. at 13.)  Accordingly, the Government's statute of limitations argument regarding any direct challenge to discharge is no longer applicable.

discretion to determine whether to correct a military record. Lipsman, 335 F. Supp. 2d 48, 54 (D.D.C. 2004). While the Secretary is required to act through "a board of civilians" if he acts, Section 1552 does not require him to grant multiple reconsideration requests. Id. (acknowledging that "§ 1552 grants the Secretary discretion over whether or not to correct a military record."). Morever, following Lipsman, the Secretary is not prohibited from making a procedural determination through staff members. Id. at 55 (noting "[t]here is significant distinction between authorizing staff members to determine if new evidence is present at all and authorizing staff members to assess the relevance and merit of that new evidence. The former is merely procedural while the latter speaks to ABCMR's substantive decision-making."). Plaintiff fails to state a claim upon which relief can be granted with regard to his second, third, and fourth reconsideration requests because the Secretary's refusal to consider those requests is consistent with § 1552.

1.   **Plaintiff's Claim that the ABCMR's Denial of his Second and Third Reconsideration Request Violated 10 U.S.C. § 1552 Should Be Dismissed.**

As set forth in our initial motion, the ABCMR had previously considered and denied the merits of the claims raised in plaintiff's second and third reconsideration requests. ( Def. Br. at 23-24.) Plaintiff demonstrates no right to an additional reconsideration and no indication that a different result would have been reached, had the ABCMR considered his second and third reconsideration requests. Plaintiff argues that the refusal to consider the second and third reconsideration requests were in violation of 10 U.S.C. § 1552 because the decisions "were made by staff and not by the Board." (Pl. Br. at 19.) However, as noted above, staff members may determine whether new evidence is present in a reconsideration request because that

determination is merely procedural and does not constitute substantive decision-making.

Lipsman, 335 F. Supp. 2d at 55.  Accordingly, plaintiff's argument is without merit because the

staff properly concluded his requests contained no new evidence.

The staff's determination that reconsideration was not appropriate was a procedural

determination.  While the ABCMR staff may have cited Army Regulation 15-185, ¶ 2-15(b), the

letter to plaintiff clearly states that his case "was administratively denied by the staff because he

had not submitted any new evidence."  (AR 45.)  This procedural determination that plaintiff's

second and third reconsideration requests were not supported by new evidence is consistent with

the record and does not violate the principles discussed in Lipsman.

Plaintiff's claim that the ABCMR had not previously considered the so-called "new

evidence" is meritless.  (Pl. Br. at 22.)   The first item plaintiff alleges constituted new evidence

is a "typewritten statement of the history of racial discrimination in the Army."  Id.  However, the

ABCMR had previously considered plaintiff's three page typewritten statement describing the

alleged history of racial discrimination.  (AR 72-74.)  The ABCMR noted plaintiff's contention

"[t]hat all charges against him were fabricated in order to promote racism and hinder all

minorities by any means because there was at the time a practice in the military to bar all black

veterans from any benefits." ( AR 68.)  The ABCMR determined "[t]he overall merits of the

case, including the latest submissions and arguments, are insufficient as a basis for the Board to

reverse its previous decision."  Id.  This Court previously acknowledged that the ABCMR

considered plaintiff's "three-page statement, in which plaintiff asserted that, while in Korea, he

encountered racial prejudice and discrimination." (Memo. Op. at 7 ).  Based on this record, it is

apparent that the ABCMR examined this evidence and found it without merit prior to plaintiff's

second and third reconsideration request.

The other "new evidence" plaintiff alleges the ABCMR failed to consider was "evidence of his master plumbers licenses and his community college attendance (AR 52, 53)–evidence of his post-discharge achievements that, whether rightly or wrongly, is often considered by corrections boards." (Pl. Br. at 22.) Plaintiff's own brief acknowledges that "post-discharge achievements" do not constitute evidence relevant to one's characterization of prior service. (Id.) Plaintiff's concession that this "evidence" may have been "wrongly" considered by other boards supports the obvious conclusion that post-discharge achievements are not proper evidence regarding plaintiff's pre-discharge service. Plaintiff cites Greenberg v. England, 2005 U.S. Dist. LEXIS 22688, *14 (D.Del. October 6, 2005), to support the proposition that a military correction board should "consider[] evidence of 'good post-service conduct.'" (Pl. Br. at 22.) Greenberg does not support plaintiff's contention. First, Greenberg is not relevant to the regulations and procedures of the ABCMR, as it involves the Board for Correction of Naval Records, ("BCNR"), a separate board with separate regulations and procedures. See Greenberg, 2005 U.S. Dist. LEXIS 22688, *14, n.5. Additionally, while Greenberg's application to the BCNR may have contained evidence of his "good post-service conduct," the BCNR did not determine the post-discharge conduct was a sufficient basis to warrant upgrade of his discharge. Id. at *14. In fact, the Court noted, "[h]aving concluded that the law does not support Mr. Greenberg's efforts to upgrade the classification of his discharge does not, of course, reflect any disrespect for his good works since his difficulties in the Navy almost a quarter-century ago." Id. at 15, n.6. Similarly, Mr. Robert's post-discharge achievements, however commendable, are not evidence that his characterization of service was in error. Accordingly, the ABCMR staff properly rejected

plaintiff's third reconsideration requests after making the procedural determination that plaintiff's submission of post-discharge achievements did not contain any new evidence.

Even if the Court were to determine the ABCMR staff's rejection of plaintiff's second and third reconsideration requests was legal error, that still would not mean that plaintiff is entitled to any relief.   As this Court stated in Lasalle, "[e]ven assuming that the ABCMR failed to address plaintiff's nonfrivolous argument that [the Army] erred, the failure to do so is arbitrary only if it 'could affect the Board's ultimate disposition' of the case."  See Lasalle v. Geren, 2007 U.S. Dist. LEXIS 31056, *17 (D.D.C. April 27, 2007) (J. Huvelle) (quoting Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997).  Because plaintiff's second and third reconsideration requests did not contain any new evidence regarding plaintiff's military service prior to his discharge, the Court must conclude the ABCMR would again deny his request even had it considered the redundant and irrelevant materials.

Plaintiff's attempt to distinguish Lasalle is off target.  Plaintiff correctly states that in Lipsman the plaintiffs submitted new evidence with their reconsideration request, while plaintiff in Lasalle did not.  (Pl. Brief at 23.)   However, as discussed above, in this case plaintiff's second and third reconsideration request did not submit any new evidence related to his pre-discharge service.  Accordingly, Lasalle is pertinent and Lipsman is not. As the Lasalle Court stated: "in the absence of any new evidence, there is no reason to believe that the Board would evaluate plaintiff's entitlement . . . any differently than it did in response to his original application." Lasalle, 2007 U.S. Dist. LEXIS *17.

Plaintiff claims that the Defendants' claim that the ABCMR staff decision that plaintiff's reconsideration requests contained no new evidence runs afoul of the Chenery doctrine because

"[a] reviewing court 'may not supply a reasoned basis for the agency's decision that the agency itself has not given.'"  (Pl. Br. at 22.)  (quoting Dickson v. Sec'y of Defense, 68 F.3d 1396, 1405, n.15 (D.C. Cir. 1995)).  Contrary to plaintiff's assertion, the Chenery doctrine does not come into play because the ABCMR staff itself stated the basis for refusing to reconsider plaintiff's second and third reconsideration requests–namely that plaintiff submitted no new evidence regarding his characterization of service. (AR 45.)   Accordingly, the Court need not supply a reasoned basis for the agency's decision, as the agency itself has already provided one.

Finally, following remand from this Court the ABCMR addressed plaintiff's argument and determined that it lacked merit, as discussed in detail below.  During that remand the ABCMR addressed all plaintiff's arguments and reviewed the substance of all evidence related to his pre-discharge conduct submitted through plaintiff's third reconsideration request.  As such, an additional remand to review essentially the same evidence would serve no meaningful purpose.  This result is further supported by this Court's earlier determination that "there is more than ample evidence in the record, and on which the Board did rely, to support its decision to deny plaintiff's request for an upgrade discharge." (Memo. Op. at 14.)  Therefore plaintiff's claim that the ABCMR's denial of his second and third reconsideration requests violated 10 U.S.C. § 1552 should be dismissed.

### 2. Plaintiff's Claim that the ABCMR's Denial of his Fourth Reconsideration Request Violated 10 U.S.C. § 1552 Should Be Dismissed.

The ABCMR staff, consistent with the requirements of § 1552 as set forth in Lipsman, properly denied plaintiff's fourth reconsideration request, dated June 4, 2004.  The procedural determination by the ABCMR staff concerning plaintiff's fourth reconsideration request has a

different basis than his second and third reconsideration requests. As described in our initial brief, at the time plaintiff's fourth reconsideration request was considered by the ABCMR staff, due to a change in policy, a reconsideration request could only be reviewed by the ABCMR if it was filed within one year of the ABCMR's original decision and it had not previously been reconsidered by the ABCMR. (Def. Br. at 18.) The change in policy originated from the Lipsman decision ordering the Army to strike paragraph 2-15(b) of Army Regulation 15-185. Lipsman, 335 F. Supp. 2d at 56.

Plaintiff argues that the return of his fourth reconsideration request violated the Administrative Procedure Act ("APA") because it was made by the ABCMR staff, not by the ABCMR itself. (Pl. Br. at 24.) As noted above, this assertion is counter to Lipsman's holding, which acknowledged that ABCMR staff members may make procedural determinations. Lipsman, 335 F. Supp. 2d at 55 (noting that a procedural decision by the staff is different than making a substantive determination). Plaintiff's interpretation of § 1552 would require the ABCMR to consider every reconsideration request to determine whether it meets the procedural requirements for review. This is an absurd result not mandated by law or regulation. Plaintiff's interpretation of the law would require the ABCMR, already flooded with thousands of requests each year, to review each and every reconsideration request, no matter how many times it had been previously considered. Such a requirement would eviscerate the discretion granted to the Secretary by 10 U.S.C. § 1552.[4]

---

[4] Plaintiff already complains about the manner and pace with which the ABCMR processes applications. (Pl. Br. at 4, n.4.) It is difficult to imagine the strain that would be placed on the already taxed ABCMR if plaintiff's interpretation of 10 U.S.C. § 1552 were adopted by the Court and the ABCMR were required to review every reconsideration request, regardless of the number of times an applicant has filed for reconsideration.

Plaintiff also argues that because this Court directed a remand in Lipsman, he is entitled to a remand of his fourth reconsideration request. Lipsman requires no such result. Although plaintiffs in Lipsman specifically asked the Court to allow "all former service personnel whose second applications for correction of military records were returned by staff members the opportunity to have their applications considered by ABCMR" the Court chose not to grant such broad relief. Lipsman, 35 F. Supp. 2d at 56. Instead, the Lipsman Court ordered the Army "to afford all members of NAVBETS [National Association for Black Veterans], whose second request for reconsideration of military records contained new evidence, the opportunity to have their requests considered by ABCMR." Lipsman, 35 F. Supp. 2d at 57. Because plaintiff admits he is not a member of NABVETS, Lipsman does not require a remand of plaintiff's fourth reconsideration request. (Pl. Br. at 24, n. 9).

After initially relying on Lipsman to argue that the Court should remand his reconsideration requests, plaintiff makes the inconsistent argument that the ABCMR should not have followed Lipsman's order to strike § 2-15b from the Army's regulations while plaintiff's fourth reconsideration request was pending. (Pl. Br. at 25.) ("If the Board's change of policy on requests for reconsideration were to affect Mr. Roberts, it should have done so before he submitted his request, not while his request was pending . . . ."). This argument would require the ABCMR to ignore the Court's order in Lipsman that paragraph 2-15(b) of Army Regulation 15-185 be deleted, which the Army is unwilling to do. Although a new version of the regulation was not promulgated until March 31, 2006, incorporating the Court's decision into the published regulation, the Army immediately complied with the Court's order, striking paragraph 2-15(b). Because paragraph 2-15(b) was stricken and no longer valid at the time the ABCMR staff

12

reviewed plaintiff's fourth reconsideration request, plaintiff's reconsideration request was returned in accordance paragraph 2-15(a), which remained in effect.  The ABCMR expressed a reasoned analysis in its letter returning plaintiff's fourth reconsideration request when it stated it complied with a court order to delete paragraph 2-15(b), which left paragraph 2-15(a) and the sole authority to reconsider an application.  Because plaintiff's reconsideration request did not meet these procedural standards, it was returned.

Plaintiff also argues Lipsman held "that dispositive decisions made by staff were arbitrary or capricious and not in accordance with law."  (Pl. Br. at 25.)  This overstates the holding in Lipsman.  The Court did not hold that all "dispositive decisions," by staff were improper, but instead only prohibited the staff from making "substantive judgments on the sufficiency of the submitted evidence." Lipsman, 335 F. Supp. 2d at 55.  Of course, procedural decisions will often be dispositive if they preclude review of a case.  Thus, while the ABCMR staff's procedural determination that plaintiff had previously filed a reconsideration request was dispositive, it was not a "substantive judgment." Id.  Accordingly, this decision by the ABCMR staff does not violate Lipsman or §1552.

### C.    Plaintiff's Challenge To The ABCMR's Decision On Remand Is Also Unsupported.

Plaintiff also avers the ABCMR's December 5, 2006, decision violated the APA, claiming it "addressed in an irrational and arbitrary fashion the specific issues remanded by this Court."  (Pl. Br. at 32.)  Plaintiff claims the ABCMR erred when it stated "[t]here is no indication that [Mr. Roberts] received erroneous information from this qualified JAG attorney, or that he was given an expectation that he would receive a GD [General Discharge]."  (Pl. Br. at

32.)  However, this determination by the ABCMR is consistent with the record.  In considering

the evidence in the record, the ABCMR stated "there is no evidence of record or *credible*

*independent evidence* that would support a conclusion that the applicant was treated unfairly

while in confinement, or that he was coerced into waiving his rights."  (AR 370) (emphasis

added). Plaintiff points to his self-serving statement, made decades after the fact, as evidence

ignored by the ABCMR. (Pl. Br. at 32.)  While the ABCMR was obviously aware that plaintiff's

statement to the Board was some evidence (in fact the only evidence) supporting his claim, it by

no means demonstrates the ABCMR erred in determining that plaintiff's statement did not

constitute "credible independent evidence . . . that would support a conclusion that [he] . . . was

coerced into waiving his rights."  (AR 370.)

       Plaintiff also argues the ABCMR erred when it stated plaintiff "should have known that

he was not guaranteed a GD."  (Pl. Br. at 33.)  Plaintiff argues the ABCMR's description of his

claim that he would "most likely" receive a General Discharge as that he was "guaranteed" a

General Discharge is incorrect.  Id.  Plaintiff, however, ignores the crux of the ABCMR's

determination and places an overemphasis on the use of the word "guarantee."  The ABCMR

correctly determined "there is no indication that [plaintiff] received erroneous information from

his qualified JAG attorney, or that he was given an expectation that he would receive a GD."[5]

(AR 370.)  As stated above, the ABCMR determined plaintiff's self-serving statement was not

---

    [5]  Plaintiff's counsel questions the role of the Army attorney advising Mr. Roberts prior to his 1969 discharge.  (Pl. Br. at 33-34.)  Without supporting evidence, plaintiff asserts through counsel that the Army attorney in question "certainly was not Mr. Roberts' counsel as the Board seeks to describe him," allegedly because "Mr. Roberts had waived his right to counsel."  Id. However, Mr. Roberts had waived his right to counsel before an administrative separation board. No evidence in the record indicates he waived his right to be counseled regarding the discharge.

"credible independent evidence."  Additionally, the ABCMR determined that the record

indicated that plaintiff was specifically counseled regarding the consequences of receiving an

Undesirable Discharge and that the evidence on record was insufficient to overcome the

presumption that he knowingly and intelligently waived his rights.  (AR 370-71.)

Plaintiff also asserts the ABCMR erred when it found that Mr. Roberts was not misled

when the Army lawyer told him that if he waived his rights to counsel, a hearing, and the right to

make a statement in his behalf, he "most likely" would receive a General Discharge. (Pl. Br. at

34-35.)  Plaintiff misreads the ABCMR's determination as an acknowledgment that he was

counseled that he would "most likely" receive a General Discharge.  On the contrary, the

ABCMR determined there was no credible independent evidence in the record to support

plaintiff's claim, and, based on plaintiff's signed waiver, the ABCMR concluded that he was

properly counseled.  It simply cannot be said that it was irrational and arbitrary for the ABCMR

to credit the waiver plaintiff signed at the time in question, over plaintiff's self-serving statement

made decades after his discharge without any corroborating evidence.  Accordingly, the

ABCMR's determination is supported by the record and plaintiff's challenge should be denied.

Plaintiff raises other unsupported allegations of error in the ABCMR's reconsideration on

remand.  First, plaintiff alleges the ABCMR's decision "failed to address all of the issues raised

by Mr. Roberts in his December 26, 2001, submission." (Id. at 35.)  However, as acknowledged

by plaintiff, the ABCMR's decision was "limited to the issue raised in these court documents,

and [did] not address issues and relief requested from the applicant or his counsel that were

previously addressed by the Board with which the court took no issue." ( Id. at 17) (citing AR

367).  The ABCMR did not address the issues previously raised by plaintiff in the remand

15

decision, as the Court did not find error in the ABCMR's treatment of those issues. Moreover, the ABCMR had previously addressed plaintiff's racial prejudice allegations . See Section B.1, supra. Plaintiff also claims the ABCMR erred by not addressing plaintiff's suicide attempt, apparently claiming the ABCMR erred in not discussing this on remand. ( Pl. Br. at 36) (citing Memo. Op. at 16, n.12.). While a suicide attempt is a serious matter, it is not evidence that plaintiff's discharge was wrongful or that he was under duress. As the ABCMR noted, it is certainly rational to conclude that "[a]ny duress he was feeling was clearly related to his justified confinement, which was the result of the offenses he committed that ultimately led to his [Special Court-Martial] conviction, and there is no indication that this duress was extraordinary." (AR 369-70.) Finally, plaintiff raises the new contention that his bar to reenlistment was defective. (Pl. Br. at 37.) This new allegation is not relevant to the ABCMR's determination. Plaintiff was separated because of his underlying misconduct, not due to his bar to reenlistment. (See AR 368.) Even if the bar to re-enlistment was "a legal nullity" as claimed by plaintiff, this would not change the validity of his discharge. At most, an invalid bar to reenlistment would affect plaintiff's ability to reenlist, not his discharge. Accordingly, the ABCMR's reference to the bar to reenlistment does not constitute error.

## V.  CONCLUSION

For the foregoing reasons, defendants respectfully request that the Court grant defendants' motion to dismiss, in part, and for summary judgment.

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C.  Bar # 498610
United States Attorney


_____/s/_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney


_____/s/_____
BRIAN C. BALDRATE
Special Assistant U.S.  Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
(202) 353-9895

Of Counsel:
MAJOR JERRETT W. DUNLAP
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837

17

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

THOMAS ROBERTS                           )
                                         )
                    Plaintiff,           )
                                         )
v.                                       )          Civil Action No. 05-2430 (ESH)
                                         )
                                         )
SECRETARY OF THE ARMY,                   )
et al.,                                  )
                                         )
                    Defendants.          )
_____)

**DEFENDANTS' COUNTER-STATEMENT OF FACTS**

In accordance with Local Civil Rule 56.1 of the United States District Court for the

District of Columbia, Defendant hereby respectfully submits its counter-statement of facts in

response to Plaintiff's statement of material facts which are not in genuine dispute.

1.  Thomas Roberts' three year enlistment in the U.S. Army began on July 13, 1967. AR

302.

**Response**:  Agreed.

2.  On June 17, 1968, he was ordered to Vietnam as a scout observer. AR 249.

**Response**:  Agreed.

3.  While serving as a scout observer in Vietnam, both his conduct and efficiency were

rated as "excellent" AR 249

**Response**:  Agreed.

4.  On August 28, 1968, he was ordered to Korea under the provisions of Army

Regulation 614-17, which provided deferments of Vietnam service for soldiers with family

members already serving in Vietnam.  Court's August 3, 2006, Memorandum Opinion (R19)

("Memorandum Opinion") at 2.

**Response**:  Agreed.

5.  On March 28, 1969, Mr. Roberts was placed in pre-trial confinement in the Eighth

Army Stockade in Seoul, Korea. AR 34, 60.

**Response**:  Agreed.

6.  On April 17, 1969, while still in confinement, Mr. Roberts was tried by special

court-martial for the following offenses occurring between December 25, 1968, and March 18,

1969: leaving his place of duty without proper authority, violating curfew, stealing Army

property, wrongfully appropriating an Army truck, wrongful possession of marijuana, and

breaking restriction. AR 251, 323-325. The specification of Charge IV and Charge IV and

specification 4 of Charge V were dismissed for lack of sufficient evidence. AR 325. On May 7,

1969, he was sentenced to six months confinement at hard labor. AR 34, 60, 323-325.

**Response**:  Agreed.

7.  Mr. Roberts recalls being told by the defense counsel at his court-martial, which Mr.

Roberts believed was a special court- martial that did not have the authority to discharge him,

that a discharge proceeding would be recommended and that most likely he would receive a

General Discharge. AR 34.

**Response**: Defendant has no way of knowing what Plaintiff "recalls."  This "fact" is not

material as the ABCMR considered the evidence and found it insufficient to overcome the

presumption of regularity.  (AR 89.)

8.  On May 13, 1969, Mr. Roberts waived his right to counsel, a hearing, and the right to

submit statements in his own behalf and submitted to a proceeding to discharge him from the

Army for unfitness under the provisions of Army Regulation 635-212.  The waiver specifically recited that he could receive either a General or a Discharge Under Conditions Other Than Honorable ("UCOTH"). See Complaint, Attach. I, Ex. D, (R1) (document not in AR).

    **Response**:  Agree that Plaintiff waived his right to counsel, to a hearing and to submit statements.  While the waiver does inform Plaintiff of the consequences of both a General Discharge and an Undesirable Discharge, it does not specify what discharge Plaintiff was eligible to receive.

    9.  Mr. Roberts' field medical file reflects that on May 18, 1969, he may have attempted suicide. AR 327; Memorandum Opinion at 16, n.12.

    **Response**:  Agreed.

    10.  The Army Board for the Correction of Military Records ("ABCMR" or "the Board") Memorandum of September 6, 2001, points out that because Mr. Roberts was discharged under paragraph 6a(1) of Army Regulation 635-212 a "UD" (undesirable or UCOTH discharge) "was normally considered appropriate." AR 88.

    **Response**:  Agreed.

    11.  Paragraph 4a of Army Regulation 635-212, in effect at the time, provided that "an individual separated by reason of unfitness will be furnished an undesirable discharge" except in special situations for which Mr. Roberts could not qualify. See Complaint, Attach. I, Ex. G (R1) (document not in AR).

    **Response**:  Agree that AR 635-212 provided that "an individual separated by reason of unfitness will be furnished an undesirable discharge." However the exceptions listed include "or if warranted by the particular circumstances in a given case."  It is unclear what Plaintiff means

by "Mr. Roberts could not qualify."

12.  On June 6, 1969, a Military Police correctional officer, Lt. Raymond Reass, recommended Mr. Roberts' discharge under AR 635-212 to the Commanding General, stating: "In view of this soldier's record of disciplinary actions, request waiver of counseling and (further) transfer for rehabilitation" AR 254 - 257 (256 and 257 are transposed).

**Response**:  Agreed.

13.  In an undated "Action," the Commander of the Eighth Field Army Support Command, noting the correctional officer's recommendation that the counseling and further rehabilitation required by Army Regulation 635-212 be waived, ordered an Undesirable Discharge. AR 228.

**Response**:  Agreed.

14.  Paragraph 7a of Army Regulation 635-212, in effect at the time, required that service members discharged under paragraph 6a(1) must receive counseling, and a specific memorandum made of that fact. Paragraph 7b(2) required rehabilitation through reassignment. Paragraph 7c(2) and (3) provided that counseling and rehabilitation can only be waived by the general court-martial authority "when he determines that further duty of the individual will, in his best judgment, create serious disciplinary problems or a hazard to the military mission or to the individual." See Complaint, Attach. I, Ex. G (R1) (document not in AR).

**Response**:  Agreed.

15.  No waiver of counseling and rehabilitation through reassignment containing the specific finding described in paragraph 7c(2) and (3) of Army Regulation 635-212, in effect at the time, "that further duty of the individual will... create serious disciplinary problems or a

4

hazard to the military mission or the individual" appears in the Administrative Record or in any other part of the record of this case.

**Response**:  Disagree that no waiver is found in the record.  AR 228 contains a waiver of counseling and transfer and is signed by the Commander of the Eighth Field Army Support Command.  Nothing in the regulation requires that the Court-martial convening authority recite the findings stated in paragraph 7c(2).

16.  Paragraph 10 of AR 635-212, in effect at the time, required the individual's unit commander to initiate the discharge process: "The unit commander of the individual will recommend action under this regulation ...." Paragraph 12 requires the individual's commander to forward a "Commanding officer's report" through the appropriate intermediate commander, if appropriate, to the general court-martial convening authority. See Complaint, Attach. I, Ex. G (R1) (document not in AR).

**Response**:  Agree that Plaintiff accurately quotes the regulation.

17.  The discharge recommendation prepared by Correctional Officer Reass is not labeled a "commanding officer's report and is signed by Lt. Reass as Mr. Roberts' "correctional officer," not "commanding." AR 254 - 257 (256 and 257 are transposed). There is no indication in the record that Lt. Reass ever commanded a unit to which Mr. Roberts was assigned or that the recommendation ever reached the general court-martial authority through the appropriate intermediate commander.

**Response**: AR 228 notes the recommendations that "counseling and further rehabilitation be waived" and certainly provides evidence that the appropriate recommendations were made and received by the General Court-Martial Convening Authority.

18.  Correctional Officer Reass's recommendation to General Holm was reviewed by Gen. Holm's Staff Judge Advocate, Lt. Col. George Taylor, Jr., who appended records of two separate non-judicial punishments under UCMJ Article 15 that Mr. Roberts received on March 5 and April 22, 1968, while in basic airborne training at Fr. Benning, Georgia. AR 256 (AR 256 and 257 are transposed).

**Response**:  Agreed.

19.  Mr. Roberts had been transferred several times subsequent to the imposition of these two separate non-judicial punishments more than one year earlier. AR 249.

**Response**:  Agreed.

20.  Army Regulation 27-10, in effect at the time, specifically forbade the mention of one-year-old or older non-judicial punishments in a proceeding against him if the individual had been subsequently transferred and one year had elapsed.

**Response**:  This is not a statement of fact but rather of law.  Plaintiff misstates the law. As reported in U.S. v. Cohan, 43 C.M.R. 309, 311 (1971), a report of Non-Judicial Punishment could be retained for more than 1 year if the soldier was transferred.  According to Cohan, the regulation provided for destruction at transfer "provided that at the time of transfer, a period of 1 year has elapsed since *imposition of the punishment* and that *all punishment imposed has been executed* (with forfeitures collected and any period of detention of pay expired) and *action has been completed on any appeal from such punishment.* If these conditions do not exist at time of transfer, the copy of the record of proceedings will be retained in the individual's personnel records which accompany him to his new assignment and retained therein until the foregoing conditions no longer exist." [AR 27-10, paragraph 3-15d, at page 3-11.] United States v. Cohan,

20 U.S.C.M.A. 469, 471 (C.M.A. 1971) (emphasis added). The record does not indicate whether all three of these provisions were met. Nor is this supposed "fact" material as it was not raised to the ABCMR and does not constitute new evidence justifying reconsideration.

21. The September 6, 2001, Board decision of the Army Board for Correction of Military Records ("ABCMR" or "the Board") recites that "On 10 February 1969, the applicant's commander initiated a recommendation to bar him from reenlistment and cited the applicant's conviction by a special court-martial and three NJPs [non-judicial punishments] as the basis for the action. On 25 March 1969, the appropriate authority approved the imposition of the bar to reenlistment." AR. 85.

**Response**: Agreed.

22. The Administrative Record contains a March 25, 1969, approval of what appears to be a February 10, 1969, recommendation (AR 265), and Defendants' Material Fact No. 6 refers to a February 10, 1969, recommendation. However no February 10, 1969, recommendation appears in the Administrative Record. The Administrative Record does contain a February 5, 1969, recommendation, but that recommendation only mentions one non-judicial punishment. AR 320.

**Response**: Agreed except to the extent Plaintiff implies that the March 25, 1969 approval refers to the February 5, 1969 recommendation.

23. The February 5, 1969, commander's recommendation for a bar to re-enlistment that does appear in the Administrative Record (AR 320) relies on a "pending court-martial" that is, at this point, more than two months in the future.

**Response**: Agreed.

7

24.  On July 22, 1969, Mr. Roberts received a UCOTH discharge by reason of unfitness under the provisions of Army Regulation 635-212. He was properly awarded the National Defense Service Medal, the Vietnam Service Medal, the Air Medal and the Combat Infantryman Badge. AR 49.

**Response**:  Agreed.

25.  On May 10, 1971, Mr. Robert applied to the Army Discharge Review Board ("ADRB") for an upgrade to his discharge. AR 237.

**Response**:  Agreed.

26. On July 28, 1971, Mr. Roberts re-enlisted in the Army for another three-year period. AR 199.

**Response**:  Agree that on July 28, 1971, Plaintiff enlisted in the Army for a second time.

27.  On August 19, 1971, Mr. Roberts was discharged from his second enlistment with an Honorable Discharge on the basis of erroneous enlistment. AR 187.

**Response**:  Agreed.

28.  On December 18, 1972, the ADRB denied Mr. Roberts' May 10, 1971, request for an upgraded discharge. AR 231.

**Response**:  Agreed.

29.  On May 29, 2001, Mr. Roberts applied to the ABCMR. AR 93. His application attached Department of Veterans Affairs ("VA") medical records indicating that he had been diagnosed as suffering from combat-related post-traumatic stress disorder ("PTSD"). He also attached a letter from the Coordinator of his VA PTSD Clinical Team, who noted that Mr. Roberts' condition was overlooked or misdiagnosed at the time and that his lack of treatment

8

resulted in "his incarceration, mistreatment and discharged with other than an honorable

discharge, instead of a medical due to combat related PTSD." AR 96-97.

**Response**:  Agreed but notes that the recommendation from the VA recites combat

actions and injuries that the ABCMR concluded could not have occurred. (AR 87.)

30.  In a September 6, 2001, Memorandum of Consideration the Board rejected Mr.

Roberts' request for an upgrade of his discharge, finding that he failed to submit sufficient

relevant evidence to demonstrate the existence of probable error or injustice. AR 83-90. The

Board's decision referred to a second version of Plaintiff's July 22, 1969 DD Form 214, Report

of Discharge, that indicated Plaintiff received an Honorable discharge and additional decorations

that the ABCMR could not substantiate.  The Board noted that it received this version of his DD

Form 214 A from an unknown source (AR 86).

**Response**:  Agreed except the Board's decision says that the information on the second

DD 214 came from an unknown source, not that the Board received the DD 214 from an

unknown source.

31.  On December 26, 2001, Mr Roberts submitted a pro se application for

reconsideration of the Board's decision, attaching a three-page typewritten statement wherein he

noted that while in the Army stockade that he was under duress when he signed a waiver of his

rights to a hearing, a lawyer, and to present evidence on his own behalf and agree to be

discharged from the Army for unfitness. Mr. Roberts also noted that an Army lawyer advised him

that he most likely would received a general discharge under honorable conditions. AR 71-74

**Response**:  Agree that Mr. Roberts requested, through counsel, his military records on

February 13, 2004, on April 9, 2004, and on May 6, 2004, the alternate version of Mr. Roberts'

9

1969 discharge that is described in the Board's September 6, 2001, decision and that the

document was provided in the Administrative Record filed in this litigation.   When Plaintiff

received the document is not a material fact as the Board's only finding with regard to the two

versions of the DD 214 was that the one plaintiff refers to as the "alternate DD 214" was not

accurate.

32.  His December 26, 2001, application also asserted that while in Korea, he encountered

racial prejudice and discrimination, an "oversight by the doctors in Doctors in their physical, and

Medical evaluation," and "a tremendous amount of psychological trauma that led to the

classification of Unfitness."  Furthermore, he asserted that "the charges [against him] were

fabricated in order to promote racism, and to hinder all minorities by any means, because their

(sic) was at the time a [n] on ongoing practice in the Military to bar all black veterans form any

benefits." AR 72-74.

**Response**:  Agreed.

33.  On May 16, 2002, the ABCMR, denied Plaintiff's December 26, 2001, request for

reconsideration, determined that Mr. Roberts had "failed to submit sufficient relevant evidence to

demonstrate the existence of probable error or injustice." AR 67-69. The Board's decision lists

only Mr. Roberts' military records and his May 8, 1968, court-martial and not his statement of

reconsideration, under "New Evidence or Information." AR 68.

**Response**:  Agreed but note that the decision specifically states that it considered

Plaintiff's application which includes his statement of reconsideration.  (AR 67.)

34.  On June 10, 2002, Mr. Roberts submitted a second application for reconsideration

(AR 48) which attached copies of his discharge (R49), the psychiatric clearance for his discharge

proceeding (AR 50), a copy of his court-martial conviction (AR51), photos of various civilian master plumber licenses that he held subsequent to his discharge (AR 52), an enrollment form from an Alabama community college indicating course enrollment (AR 53), and a June 4, 2002, typewritten statement describing racial prejudice in the Army and indicating that he has heard nothing from the Board since submitted his application six months previously (AR 54).

**Response**:  Agreed.

35.  On December 27, 2002, Mr. Roberts submitted a third request for reconsideration-a typewritten application with no attachments.  AR 46.

**Response**:  Agreed.

36.  On January 21, 2003, the Board responded to Mr. Roberts' June 10, 2002, request by advising him that the Board's staff had determined that his application did not warrant resubmission to the Board. R 47.  The Board's January 21, 2003, decision cited paragraph 2-15(b) of Army Regulation 15-185, which, at the time of the decision, provided that request for reconsideration received more than one year after the original decision would be reviewed by the Board's staff for evidence of certain criteria for re-opening a decision and if the staff does not find such evidence, the application will be returned to the applicant without action. See Memorandum Opinion at 8,n.8.

**Response**:  Agreed except with regard to plaintiff's argument that in support of his request he  raised a number of issues and facts that had never been presented to or considered by the Board.

37.  On July 15, 2003, the Board wrote again to Mr. Roberts stating that his original application was denied on September 6, 2001, that Plaintiff's first request for further

reconsideration was "administratively denied" by the staff on January 21, 2003, and that under

the applicable version of paragraph 2-15(b) of Army Regulation 15-185, the "staff of the Board

has determined that your current application does not contain evidence" that meet the cited

criteria.  AR 45.

    **Response**:  Agreed.

    38.  On June 4, 2004, Mr. Roberts filed by counsel a Request for Reconsideration reciting

that it was the first request that he had filed with the direct assistance of legal counsel.  AR 2.

The request noted that the accompanying twenty-nine page memorandum (AR 3-32) and fifty -

four pages of exhibits (Original Complaint Attach. I (R 1)) in support of his request raised a

number of issues and facts that had never been presented to or considered by the Board.

    **Response**:  Agreed.

    39.  On September 7, 2004, while Plaintiff's application was still pending at the ABCMR,

Judge Ricardo Urbina of this Court issued a Memorandum Opinion in <u>Lipsman v. Sec'y of the</u>

<u>Army</u>, 335 F. Supp.2d 48 (D.D.C. 2004), finding that subsection 2-15(b) of Army Regulation 15-

185 violated the provisions of 10 U.S.C. § 1552, the ABCMR's operating statute, because it

permitted ABCMR staff and not the Board to make decision identical with those made in

Plaintiff's applications. The Court specifically found that the Board's delegation of actions to its

staff was arbitrary or capricious and not in accordance with the law.

    **Response**:  Agreed to the extent that "plaintiff's application" refers to his fourth

reconsidertaion request, and except to the extent that the discussion of the Court's holding in

<u>Lipsman v. Sec'y of the Army</u>, 335 F. Supp.2d 48 (Sept. 7, 2004), is a statement of law, not a

statement of fact.  Also disagree that the actions in <u>Lipsman</u> were "identical" with those made in

plaintiff's applications.

40.  By letter dated March 17, 2005, the Board returned the June 4, 2004, memorandum and exhibits filed by Mr. Roberts' counsel directly to Mr. Roberts. AR1. The Board's letter noted that Mr. Roberts' case was considered on September 6, 2001, that no further ABCMR action is contemplated, that he had exhausted all of his administrative remedies and that Mr. Roberts had the option of seeking "relief in a court of appropriate jurisdiction"

**Response**:  Agreed.

41.  On December 20, 2005, Plaintiff filed the original complaint in this action seeking judicial review of five distinct decisions of the Board: (1) the Board's September 6, 2001 initial decision denying Mr. Roberts' application for an upgraded discharge, (2) a May 16, 2002 decision denying Mr. Roberts' request for reconsideration, (3) a January 21, 2003 staff decision that his June 10, 2002 application did not warrant submission to the Board, (4) a July 15, 2003, staff decision that his December 27, 2002, application did not warrant submission to the Board, and (5) a March 16, 2005, refusal to consider a request for reconsideration filed by Mr. Roberts' attorney.  Original Complaint (R1) at 12,13.

**Response**:  Agreed to the extent this restates the content of plaintiff's Complaint.

42.  On August 3, 2006, this Court ordered the matter remanded to the Board for "further proceedings consistent with the Court's Memorandum Opinion." R 18.  The Court ruled that the Board's second decision, that of May 16, 2002, violated the Administrative Procedure Act in that it failed to address Mr. Roberts' arguments that his 1969 discharge proceeding was fatally defective because he was under duress when he waived his rights to hearing, counsel, and submit statements in his own behalf and because he was misled by an Army lawyer into believing that he

13

would receive a discharge under honorable conditions.

**Response**:  Agreed to the extent that plaintiff states the fact that the Court issued a

Memorandum Opinion on August 3, 2006.  As the ruling of the Court is a statement of law, the

Defendants aver that Memorandum Opinion is the best evidence of the Court's ruling.

43.  The Court did not decide Mr. Roberts' remaining claims regarding the ABCMR's

subsequent decisions on January 21, 2003, July 15, 2003, and March 17, 2005.

Memorandum Opinion at 17,n.14.

**Response**:  As the ruling of the Court is a statement of law, the Defendants aver that

Memorandum Opinion is the best evidence of the Court's ruling.

44.  On September 28, 2006, Plaintiff's counsel submitted to the Board copies of:

- the Complaint, which attached Plaintiff's June 4, 2004,

  Memorandum in Support of Request for Reconsideration with attachment

  and Exhibits(R1: Original Complaint),

- Plaintiff's Memorandum of Points and Authorities (i) in Opposition to

  Defendants' Motion to Dismiss, in Part, and for Summary Judgment and

  (ii) in Support of Plaintiff's Cross Motion for Summary Judgment with

  Exhibits (R 10),

- Plaintiff's Statement of Material Facts as to Which There is No Genuine

  Issue ( R10, Ex.6),

- Plaintiff's Supplemental Statement of Material Facts as to Which There is

  no Genuine Issue (R15), and

- the Court's August 3, 2006, Memorandum and Order(R19). *See* Exhibit A

to Amended Complaint (R31)

**Response**:  Agreed.

45.  The Board's December 5, 2006, decision on remand, examined only the specific issue remanded by the Court relating to the Board's denial of Mr. Roberts' first request for reconsideration.  It did not address the Board's decisions of January 21, 2003, July 15, 2003, and March 17, 2005, which presented issues not decided by the Court. AR 367.

**Response**:  Agreed but note that the Board reviewed all the evidence submitted by plaintiff as spelled out in the answer above. (AR 367.)

Respectfully submitted,

_____/s/_____
JEFFREY A. TAYLOR, D.C.  Bar # 498610
United States Attorney

_____/s/_____
RUDOLPH CONTRERAS D.C. Bar # 434122
Assistant United States Attorney

_____/s/_____
BRIAN C. BALDRATE
Special Assistant U.S.  Attorney
555 Fourth Street, N.W., 10th Floor
Washington, D.C.  20530
(202) 353-9895

Of Counsel:
MAJOR JERRETT W. DUNLAP
U.S. Army Legal Services Agency
901 North Stuart Street
Arlington, Virginia  22203-1837

15