## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                      )
**THOMAS ROBERTS,**                   )
                                      )
        **Plaintiff,**    )
                                      )
        **v.**           )      **Civil Action No. 05-2430 (ESH)**
                                      )
**PETE GEREN,**                       )
**Secretary of the Army,** *et al.*,  )
                                      )
        **Defendants.**   )
_____ )

### MEMORANDUM OPINION

       This matter is once again before the Court on defendants' motion to dismiss plaintiff's

first and second claims, and on the parties' cross-motions for summary judgment.  Plaintiff, a

Vietnam veteran, brought this action under the Administrative Procedures Act ("APA"), 5

U.S.C. § 701, *et seq.*, for judicial review of the denial by the Army Board for Corrections of

Military Records ("ABCMR" or "the Board") of his *pro se* application to upgrade his other than

honorable discharge from the Army to an honorable or general discharge, and subsequent

ABCMR decisions denying his repeated requests for reconsideration.  In a Memorandum

Opinion dated August 3, 2006, the Court upheld the ABCMR's September 6, 2001 initial

decision, but remanded the Board's May 16, 2002 denial of plaintiff's first request for

reconsideration because the Court found that the Board had failed to consider a potentially

meritorious argument raised by plaintiff.  *See Roberts v. Harvey*, 441 F. Supp. 2d 111, 121-22

(D.D.C. 2006).  Because it remanded the Board's first denial of reconsideration, the Court did

not address the arguments previously raised by plaintiff relating to his three subsequent requests

for reconsideration.  On remand, the ABCMR issued an opinion again denying plaintiff's first

request for reconsideration.  Plaintiff now challenges that decision, and he also challenges the

three denials of reconsideration that were not previously addressed in the Court's prior opinion.

For the reasons explained herein, plaintiff's cross-motion for summary judgment will be denied,

and defendants' motion will be granted.

## BACKGROUND

The lengthy factual and procedural history of this case was thoroughly discussed in the

Court's prior opinion and need only be summarized briefly here.  Plaintiff enlisted in the Army

in 1967 for a period of three years, and he served overseas in Vietnam and Korea.  (A.R. 302,

249, 34, 60.)  During his time in the Army, plaintiff received several nonjudicial punishments for

misconduct, and he was twice convicted by special courts-martial for a variety of offenses.

(A.R. 239, 242, 244, 251, 325.)  On May 13, 1969, while plaintiff was serving a six-month

sentence of confinement on his second court-martial conviction, he agreed to be discharged from

the Army by reason of unfitness under the provisions of Army regulation 635-212.  In doing so,

he waived his right to counsel, a hearing or personal appearance before a board of officers, and

the right to submit statements on his own behalf to the discharge authority.  The generic waiver

form that plaintiff signed provided:

> I understand that I may expect to encounter substantial prejudice in
> civilian life in the event a general discharge under honorable
> conditions is issued to me.  I further understand that, as the result of
> the issuance of an undesirable discharve [sic] under conditions other
> than honorable, I may be ineligible for many or all benefits as a
> veteran under both Federal and State laws, and that I may expect to
> encounter substantial prejudice in civilian life.

(Compl., Attach. I, Ex. D.)  Plaintiff was then discharged from the Army on July 22, 1969, and

his discharge was classified as one "Under Conditions Other Than Honorable" ("UCOTH")

-2-

(A.R. 49), which constitutes an undesirable discharge status.  *See Roberts*, 441 F. Supp. 2d at 115 n.3.

On May 10, 1971, plaintiff applied to the Army Discharge Review Board, which is distinct from the ABCMR, for an upgrade to his discharge.  (A.R. 237.)  That request was denied in 1972.  (A.R. 231.)  Approximately thirty years later on May 29, 2001, plaintiff submitted to the ABCMR a *pro se* application for an upgraded discharge. (A.R. 93.)  He asserted that he had been diagnosed as suffering from combat-related post-traumatic stress disorder, that this condition had been overlooked or misdiagnosed at the time of his military service, and that his lack of treatment for this condition ultimately resulted in his incarceration and undesirable discharge (rather than a medical discharge).  (A.R. 96-97.)  The ABCMR denied plaintiff's application on September 6, 2001, finding, *inter alia*, that there was no evidence that plaintiff was suffering from post-traumatic stress disorder at the time of his discharge, and that he had failed to submit sufficient relevant evidence to demonstrate the existence of probable error or injustice.  (A.R. 83-90.)

On December 26, 2001, plaintiff submitted his first of four applications for reconsideration of the ABCMR's September 6, 2001 decision.  (A.R. 71-77.)  In a three-page typewritten statement, he asserted that at the time of his discharge, there was an "on going [sic] practice in the Military to bar all black veterans from any benefits," and that he himself had encountered racial prejudice and discrimination, that there had been an "oversight by the Doctors in their Physical, and Medical evaluation," and that "[a] tremendous amount of psychological trauma . . . led to a classification of Unfitness."  (A.R. 72.)  He also alleged that he agreed to initiate the procedures for his discharge and waive his rights after being approached in the

stockade by an Army lawyer because he was "under duress" at the time, and because the lawyer "offered [him] a way out of the stockade" and told him that he would "most likely receive[] a General Discharge under Honorable Condition[s]." (A.R. 73.) In fact, it was clear under the regulations in effect at the time that a serviceperson in plaintiff's circumstances would almost certainly receive an unfavorable discharge. *See Roberts*, 441 F. Supp. 2d at 115.

Plaintiff again applied to the ABCMR for reconsideration a second and third time on June 10, 2002 and December 27, 2002. (A.R. 48-54, 46.) His June 10 application included copies of his discharge, the psychiatric clearance for his discharge proceeding, a copy of his court-martial conviction, photos of several civilian master plumber licenses that he obtained subsequent to his discharge, an enrollment form from an Alabama community college, and a one-page typewritten statement describing his perception of racial prejudice in the Army. (A.R. 48-54.) His December 27 application included no attachments. (A.R. 46.) The Board rejected both applications in letters dated January 21, 2003 and July 15, 2003, which recited the regulations in place at the time involving requests for reconsideration and stated that the staff of the Board had determined that the evidence presented in his applications did not warrant resubmission to the Board. (A.R. 45, 47.) Finally, plaintiff submitted a fourth application for reconsideration on June 4, 2004, this time with the assistance of legal counsel. (A.R. 2.) According to plaintiff, his fourth application raised a number of new facts and arguments not previously presented to the Board (*id.*), including an argument that the Army failed to follow its own regulations in effect at the time of his 1969 discharge. (*See* A.R. 21-25.) This final application was returned by the staff of the Board without action on March 17, 2005. (A.R. 1.)

Plaintiff then filed this lawsuit in December 2005, challenging the ABCMR's initial September 6, 2001 decision, as well as the four subsequent denials of his reconsideration requests. In its August 3, 2006 opinion, the Court denied plaintiff's challenges to the ABCMR's initial decision, but remanded the case to the Board to reconsider the May 16, 2002 denial of plaintiff's first application for reconsideration because it found that the Board failed to address plaintiff's potentially meritorious argument "that the 1969 proceeding leading to his discharge was fatally defective because plaintiff was under duress at the time and was misled into waiving his rights to counsel and a hearing based upon arguably erroneous advice of counsel." *See Roberts*, 441 F. Supp. 2d at 121. Because it remanded the May 16, 2002 decision to the Board, the Court did not address any of plaintiff's arguments regarding his three subsequent applications for reconsideration. *Id.* at 122 n.14.

On remand and consistent with this Court's remand order, the ABCMR limited its review to the issue of plaintiff's waiver of his right to counsel and a hearing, "as clarified" by plaintiff's counsel in his June 2004 reconsideration request. (A.R. 367.) In its December 5, 2006 decision, the Board did not "address issues [or] relief requests from [plaintiff] or his counsel that were previously addressed by the Board with which the [C]ourt took no issue." (*Id.*) It concluded that there was insufficient evidence to support plaintiff's claims that he was under duress and relied on the erroneous advice of counsel when he waived his rights in connection with his 1969 discharge. (A.R. 369.)

In his pending motion, plaintiff argues that the ABCMR's decision on remand violates the APA because its explanation of its review of the waiver issue "inaccurately describe[d] the record" and was "irrational." (Pl.'s Mot. at 32.) He also argues that because the Board limited

its review to the waiver issue noted by the Court, it failed to address the remainder of the issues

raised by plaintiff in his original December 26, 2001 submission.  (*Id.* at 35.)  Specifically,

plaintiff claims that the Board has ignored his allegations that (1) his "Army difficulties" were

the result of racial prejudice; (2) the psychiatric clearance for his discharge proceeding was

based on an incomplete medical evaluation, and (3) his unfitness determination was unfairly

based on his actions that were the result of psychological trauma that he had suffered in the

Army.  (*Id.* at 36.)  Lastly, he argues that the Board's December 5, 2006 decision on remand was

arbitrary and capricious because it relied on a 1969 bar to reenlistment that he claims was

impermissibly based on a pending court martial proceeding in which he should been afforded a

presumption of innocence.  (*Id.* at 38.)

　　　　Plaintiff also reprises the arguments that the Court previously declined to consider

relating to the three subsequent reconsideration decisions dated January 21, 2003, July 15, 2003,

and March 17, 2005.  Plaintiff's arguments regarding these three decisions involve the ABCMR

regulations governing applications for reconsideration, and an opinion issued on September 7,

2004 by Judge Ricardo M. Urbina of this Court in *Lipsman v. Secretary of the Army*, 335 F.

Supp. 2d 48 (D.D.C. 2004).  Paragraph 2-15 of Army Regulation 15-185, 32 C.F.R. §

581.3(g)(4)(ii) (Feb. 29, 2000), in effect at the time that plaintiff submitted all of the applications

for reconsideration at issue in this litigation, provided that:

> (a) If the ABCMR receives the request within 1 year of the
> ABCMR's action and if the ABCMR has not previously reconsidered
> the matter, the ABCMR staff will review the request to determine if
> it contains evidence (including, but not limited to, any facts or
> arguments as to why relief should be granted) that was not in the
> record at the time of the ABCMR's prior consideration. If new
> evidence has been submitted, the request will be submitted to the
> ABCMR for its determination of whether the new evidence is

sufficient to demonstrate material error or injustice. If no new evidence is found, the ABCMR staff will return the application to the applicant without action.

(b) If the ABCMR receives the request more than 1 year after the ABCMR's action or after the ABCMR has already considered one request for reconsideration, the ABCMR staff will review the request to determine if substantial relevant evidence is submitted showing fraud, mistake of law, mathematical miscalculation, manifest error, or the existence of substantial relevant new evidence discovered contemporaneously or within a short time after the ABCMR's original consideration. If the ABCMR staff finds such evidence, it will be submitted to the ABCMR for its determination of whether a material error or injustice exists and the proper remedy. If the ABCMR staff does not find such evidence, the application will be returned to the applicant without action.

The Board's letters of January 21, 2003 and July 15, 2003, which rejected plaintiff's June 10, 2002 and December 27, 2002 applications for reconsideration, referred only to the requirements of ¶ 2-15(b) of this regulation relating to requests for reconsideration received more than a year after the original consideration or after the Board has already reconsidered the case, and each letter stated that the "staff" of the Board had "determined that [plaintiff's] current application d[id] not contain evidence that m[et] the [2-15(b)] criteria." (A.R. 45, 47.)

In *Lipsman*, which was decided while plaintiff's fourth request for reconsideration was pending before the Board, Judge Urbina held that ¶ 2-15(b) of Army Regulation 15-185 violated the provisions of 10 U.S.C. § 1552 because it permitted the Board's staff, rather than the Board itself, to perform statutory functions committed to the Board.[1]  335 F. Supp. 2d at 53-54.  As the

--------

[1] 10 U.S.C. § 1552 provides, in relevant part, that:

The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided in paragraph (2), such corrections shall be made by the

*Lipsman* opinion noted, "10 U.S.C. § 1552(a)(1) expressly requires that the Secretary, when exercising his discretion to correct military records, must 'act through boards of civilians.'" *Id.* at 53.  Reasoning that the statute "does not distinguish between original applications and subsequent requests for reconsideration," the court concluded that "the Secretary [is] bound to act through the ABCMR, not its staff members" when evaluating the merits of requests for reconsideration.  *Id.* at 54.  Accordingly, Judge Urbina ordered that ¶ 2-15(b) of Army Regulation 15-185 be stricken.  *Id.* at 56. He also remanded to the ABCMR the second reconsideration requests of the plaintiffs that contained new evidence.  *Id.* at 56-57.

    In response to the *Lipsman* decision, the ABCMR struck ¶ 2-15(b) of Army Regulation 15-185, and it has since applied only ¶ 2-15(a) to reconsideration requests.  In other words, the ABCMR now only reviews requests for reconsideration if they are filed within a year of the ABCMR's original decision and they have not previously been reconsidered by the ABCMR. (Defs.' Ex. B [Army Reg. 15-185 (Mar. 31, 2006)] ¶ 2-15.)  The updated version of Army Regulation 15-185 reflecting this change was not promulgated until March 31, 2006, but defendant states that the ABCMR complied with the *Lipsman* decision by ceasing to apply ¶ 2-15(b) of the prior version of the regulation immediately upon the issuance of Judge Urbina's decision.  (Defs.' Reply at 12-13.)  Accordingly, by letter dated March 17, 2005, the Board returned plaintiff's June 4, 2004 application for reconsideration without action.  (A.R. 1.)  The

---

Secretary acting through boards of civilians of the executive part of that military department. The Secretary of Homeland Security may in the same manner correct any military record of the Coast Guard.

10 U.S.C. § 1552(1)(a).

Board's letter referred to a "recent court decision [that] ordered the deletion of paragraph 2-15b," and it explained that "[t]he effect of this court decision now permits an applicant to request reconsideration of an earlier ABCMR decision if the request is received within one year of the ABCMR's original decision and it has not previously been reconsidered." (*Id.*) The letter stated that plaintiff was "not eligible for further reconsideration by this Board" because he had previously requested reconsideration. (*Id.*)

Citing *Lipsman*, Plaintiff argues that because the decisions regarding his second, third and fourth requests for reconsideration were made by the staff of the ABCMR and not by the ABCMR itself, they are arbitrary and capricious and therefore violate the APA. (Pl.'s Mot. at 19, 24.) He also argues that the ABCMR staff should not have dismissed his June 4, 2004 fourth application for reconsideration under ¶ 2-15(a) because the new post-*Lipsman* regulation did not become effective until months after his application was rejected. (*Id.* at 25-26.) Pointing to the remedy that Judge Urbina selected in *Lipsman*, he requests that his requests for reconsideration be remanded to the ABCMR. (*See id.* at 24.) Plaintiff also asks in the alternative that the Court issue a Writ of Mandamus directing the Secretary of the Army to reclassify his discharge as either General or Honorable. (Am. Compl. Prayer for Relief ¶ 4.)

In response, defendants argue that notwithstanding *Lipsman*, nothing in 10 U.S.C. § 1552, which gives the Secretary of the Army broad discretion over the correction of military records, requires the Secretary to consider multiple reconsideration requests. (Defs.' Reply at 5-6.) Therefore, they contend, the Board did not act arbitrarily or capriciously when it refused to consider plaintiff's second, third, and fourth requests for reconsideration. (Defs.' Mot. at 8-9.) Defendants also argue that their decision regarding the fourth reconsideration request was

consistent with *Lipsman*, and that with respect to plaintiff's second and third reconsideration requests, no new relevant evidence was actually presented by plaintiff, so there is no reason to conclude that a different result would have been reached had the Board considered those requests. (*Id.* at 20, 23.)  Finally, defendants argue that "the ABCMR carefully addressed [p]laintiff's duress claim on remand and rationally concluded that the evidence does not demonstrate the existence of probable error or injustice."  (*Id.* at 9.)

## ANALYSIS

### I.    Legal Standard

Under 10 U.S.C. § 1552, the Secretary of the Army may act through a civilian board to correct any Army record when he "considers it necessary to correct an error or remove an injustice."  10 U.S.C. § 1552(a)(1).  Courts review the decisions of military corrections boards "under an 'unusually deferential application of the arbitrary or capricious standard' of the Administrative Procedures Act."  *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (quoting *Kreis v. Sec'y of the Air Force*, 866 F.2d 1508, 1514 (D.C. Cir. 1989)).  A court must "defer to the Board's decision unless it is arbitrary and capricious, contrary to law, or unsupported by substantial evidence."  *Frizelle v. Slater*, 111 F.3d 172, 176 (D.C. Cir. 1997); *see generally Piersall v. Winter*, 435 F.3d 319, 321-22 (D.C. Cir. 2006); 5 U.S.C. § 706(2).  The Board's decision need not be "a model of analytic precision to survive a challenge.  A reviewing court will 'uphold a decision of less than ideal clarity if the [board's] path may reasonably be discerned.'"  *Dickson v. Sec'y of Defense*, 68 F.3d 1396, 1404 (D.C. Cir. 1995) (quoting *Bowman Transp., Inc. v. Arkansas-Best Motor Freight Sys.*, 419 U.S. 281, 286 (1974)).  However, the Board's explanation "must minimally contain 'a rational connection between the facts found and

the choice made.'" *Id.* (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463

U.S. 29, 43 (1983)).  Furthermore, a party seeking review of a board decision bears the burden of

overcoming the "strong, but rebuttable, presumption that administrators of the military, like

other public officers, discharge their duties correctly, lawfully and in good faith." *Frizelle*, 111

F.3d at 177 (quoting *Collins v. United States*, 24 Cl. Ct. 32, 38 (1991)) (internal quotation marks

omitted); *see also Cone*, 223 F.3d at 793.

## II.    The ABCMR's December 5, 2006 Decision on Remand

### A.    Plaintiff's Waiver of Counsel

In its prior opinion, the Court remanded to the Board its May 16, 2002 decision denying

plaintiff's first request for reconsideration because it determined that the Board's failure to

address plaintiff's argument that he waived his rights under duress and in reliance on the

erroneous advice of counsel rendered its decision arbitrary and capricious.  *Roberts*, 441 F. Supp.

2d at 121.  The Court noted that on remand the Board may deny plaintiff's claim on the merits,

but it would have to "articulate its reasons for doing so."  *Id.* at 122.  On remand, the ABCMR

explicitly limited its reconsideration "to the issues raised in [the Court's August 3, 2006 Order

and Memorandum Opinion] and [did] not address issues and relief requested from [plaintiff] or

his counsel that were previously addressed by the Board with which the court took no issue."

(A.R. 367.)  In other words, the Board addressed only plaintiff's argument that he was "under

duress[] and relied on erroneous advice of counsel when he completed his waiver of rights in

connection with his 1969 separations processing."  (A.R. 369.)

In its December 5, 2006 decision, the Board reviewed the evidence presented by plaintiff

in support of this claim, including the evidence put forth by plaintiff's counsel in the June 4,

2004 memorandum that accompanied his fourth reconsideration request. (A.R. 366.)

Specifically, the Board considered plaintiff's arguments that he had been held in a six-by-six

foot cell in the Korean stockade with no opportunity for physical exercise and no contact with

other inmates, and that he was "misleading[ly]" told by the JAG attorney that if he raised his

right to counsel he would "most likely" receive a general discharge, but that in reality, a general

discharge was "not an option," so plaintiff "unwittingly" agreed to an undesirable discharge.

(A.R. 366-67.) The Board determined that there was "insufficient evidence to support" his

claims that he was under duress and relied on the erroneous advice of counsel when he signed

the waiver. (A.R. 369.) The Board focused on the fact that plaintiff's confinement was the

result of his own misconduct, and that there was no evidence to show that he was treated

differently from any other prisoner in the stockade at the time. (*Id.*) It also concluded that there

was "no evidence of record or credible independent evidence" to support the conclusion that

plaintiff was treated "unfairly" in confinement or that he was coerced into waiving his rights.

(A.R. 370.) The Board noted that plaintiff's statement that the JAG lawyer told him that he

would "most likely" receive a general discharge makes clear that he knew that he was not

guaranteed a general discharge, and therefore his waiver could not have been based on that

presumption. (*Id.*) Based on these findings, it concluded, "nothing in the record rebuts the

presumption that [plaintiff's] election to waive his rights was made knowingly and intelligently,"

and the evidence presented thus did "not demonstrate the existence of a probable error or

injustice." (A.R. 371.)

     A court "will not disturb the decision of an agency that has 'examine[d] the relevant data

and articulated a satisfactory explanation for its action including a rational connection between

the facts found and the choice made.'" *MD Pharm. v. Drug Enforcement Admin.*, 133 F.3d 8, 16

(D.C. Cir. 1998) (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43) (alteration in original).

"[I]f the record contains such evidence that a reasonable mind might accept as adequate to

support a conclusion, the court must accept the Board's findings." *Smith v. Dalton*, 927 F. Supp.

1, 5 (D.D.C. 1996). The Court finds that the Board's explanation on remand meets this standard.

    In reaching its decision, the Board assessed the credibility of plaintiff's claim of duress,

which he made several decades after the fact (*see* A.R. 73), and it determined that his statements

did not constitute "credible independent evidence" of duress. (A.R. 370.) Rather, the Board

rejected plaintiff's allegation of duress because it concluded that he was not unjustly confined,

that he was not treated differently than any other prisoners, and that "[a]ny duress he was feeling

was clearly related to his justified confinement, which was the result of the offenses he

committed that ultimately led to his [court-martial] conviction."[2] (A.R. 369-70.) The Board also

chose to give greater weight to the waiver plaintiff signed in 1969, which acknowledged that he

was properly counseled prior to his discharge and that he understood the ramifications of

receiving an undesirable discharge. (*Id.*; Compl., Attach. I, Ex. D.) The Board was entitled to

weigh the evidence in this manner in determining that plaintiff had not demonstrated probable

error or injustice, and the Court may not substitute its own judgment where the an agency's

_____

    [2]Neither the Board nor the parties define the term "duress," but the Restatement of
Contracts defines duress as "(a) any wrongful act of one person that compels a manifestation of
apparent assent by another to a transaction without his volition," or "(b) any wrongful threat of
one person by words or other conduct that induces another to enter into a transaction under the
influence of such fear as precludes him from exercising free will and judgment, if the threat was
intended or should reasonably have been expected to operate as an inducement." RESTATEMENT
(FIRST) OF CONTRACTS § 492. Given the Board's conclusions that plaintiff's confinement was
justifiable based on his misconduct and that he was not treated differently than other prisoners,
plaintiff's evidence about his experience in the stockade does not appear to meet this definition.

determination has a rational basis.  *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 219 F.

Supp.2d 57, 75 (D.D.C. 2002) ("[T]he purpose of the Court's inquiry is not to . . . second-guess

the agency on credibility issues . . . .")  It is also clear that because plaintiff knew he was not

guaranteed a general discharge, he signed the waiver with the knowledge that an undesirable

discharge was a possible outcome.  This evidence supports the Board's conclusion that the

plaintiff was properly counseled, and based on the entirety of the record, the Court cannot

conclude that there was no "rational connection between the facts found and the choice made."[3]

*MD Pharm.*, 133 F.3d at 16.

> **B.    Additional Arguments Raised in Plaintiff's December 26, 2001
> Reconsideration Request**

Plaintiff also argues that his December 26, 2001 statement raised three additional claims

that the Board wrongly failed to consider in its initial denial of his first request for

reconsideration as well as its decision on remand -- *i.e.*, "(i) that much of his Army difficulties

were based on racial prejudice, (ii) that the psychiatric clearance for his discharge proceeding

was based on an incomplete medical evaluation, and (iii) that his unfitness determination was

unfairly based on his actions that were the result of psychological trauma that he had suffered in

the Army."  (Pl.'s Mot. at 35-36; *see* A.R. 72.)

However, these three claims were not raised at any point in plaintiff's first appeal to this

---

[3]Plaintiff also argues that the Board's consideration of the waiver issue was incomplete because it failed to consider evidence in the record that plaintiff may have attempted suicide five days after signing the waiver, which he claims is probative of the duress he was suffering at the time.  (Pl.'s Mot. at 36.)   But the Board did address the plaintiff's claims of duress, and it determined that there was no evidence to indicate that he was treated any differently than any other prisoners in the stockade, or that any distress he felt during his incarceration was out of the ordinary for someone who had been confined due to misconduct. (A.R. 370-71.)

Court.  Indeed, the words "race" and "discrimination" do not even appear in any of plaintiff's earlier pleadings.  Rather, plaintiff's original (very brief) argument before this Court about the Board's May 16, 2002 decision was simply that the Board failed to list his statement of reconsideration as new evidence considered, and that its explanation of its decision was too "conclusory."[4]  (*See* Pl.'s 1st Cross-Mot. for Summ. J. at 32-33; *see generally* Compl.)  Because plaintiff did not previously raise these issues in this forum, the Court did not address them in its prior opinion, and it therefore did not instruct the Board to consider them on remand.  *See Roberts*, 441 F. Supp. 2d at 118, 121, 122 n.14.  Instead, the Court remanded the May 16, 2002 decision with specific instructions for the Board to reconsider plaintiff's arguments regarding duress and the erroneous advice of counsel relating to his waiver.  Having sufficiently addressed those arguments in its latest decision, the Board has fully complied with the Court's order.  It was not required to consider plaintiff's three additional arguments on remand, for the scope of the Court's remand determines what issues an administrative agency can address.  *Cf. Consarc Corp. v. U.S. Treasury Dept. Office of Foreign Assets Control*, 871 F. Supp. 1463, 1464 (D.D.C. 1994)  ("The scope of the appellate court's remand determines what issues the trial court can relitigate.") (citing *Nelson v. All Am. Life & Fin. Corp.*, 889 F.2d 141, 152 (8th Cir. 1989)), *rev'd on other grounds*, 71 F.3d 909, 915 (D.C. Cir. 1995).  Moreover, "a legal decision made at one stage of litigation, unchallenged in a subsequent appeal when the opportunity to do so existed, becomes the law of the case for future stages of the same litigation, and the parties are deemed to have waived the right to challenge that decision at a later time."  *Williamsburg Wax*

---

[4]Regardless of whether the Board listed plaintiff's statement as "new evidence," it is clear that it the Board read and considered the statement prior to rejecting plaintiff's first application for reconsideration.  (*See* A.R. 68.)

*Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 250 (D.C. Cir. 1987) (citing *Laffey v. Nw.*

*Airlines, Inc.*, 740 F.2d 1071, 1089-93, 1102-03 (D.C. Cir. 1984), cert. denied, 469 U.S. 1181

(1985)); *see also Nw. Ind. Tel. Co., Inc. v. F.C.C.*, 872 F.2d 465, 470 (D.C. Cir. 1989) ("It is

elementary that where an argument could have been raised on an initial appeal, it is inappropriate

to consider that argument on a second appeal following remand.") (quoting *Laffey*, 740 F.2d at

1089-90) (internal quotation marks omitted).

      Even if the Court were to now consider the merits of these three untimely claims, there is

no reason for further remand to the Board.  With respect to plaintiff's second and third

arguments (*i.e.*,"that the psychiatric clearance for his discharge proceeding was based on an

incomplete medical evaluation, and . . . that his unfitness determination was unfairly based on

his actions that were the result of psychological trauma that he had suffered in the Army" (Pl.'s

Mot. at 36)), the Board had previously considered and rejected very similar arguments about

plaintiff's mental health and alleged post traumatic stress disorder in its initial decision of

September 6, 2001, which this Court upheld.  *See Roberts*, 441 F. Supp. 2d at 119-20.

Specifically, the Board had determined that there was no evidence that plaintiff had ever been

wounded in action, and that plaintiff's arguments did "not call into question the application of

the then existing medical fitness standards used by the Army at the time, which found [him]

medically fit for retention/separation on the date of his discharge."  (*See* A.R. 87, 89.)

Therefore, plaintiff's arguments about his psychological state were not new to his first request

for consideration, and the Board was not required to give them any additional consideration.

      With respect to plaintiff's claim about racial discrimination, the Board clearly

acknowledged his allegations in its memorandum of decision, and it determined that "[t]he

overall merits of the case, including the latest submissions and arguments, [were] insufficient as

a basis for the Board to reverse its previous decision." (A.R. 68.)  The Board had an obligation

to respond only to those arguments that were not "frivolous" on their face and "could affect the

Board's ultimate disposition." *Frizelle*, 111 F.3d at 177.  Plaintiff's generalized allegations

about racial discrimination in his December 26, 2001 statement did not meet this test, for they

were conclusory and unsupported, especially in view of plaintiff's failure to offer any instance of

disparate treatment, *i.e.* that similarly situated non-minority servicepeople were treated

differently than he was with respect to discharge classification.  (*See* A.R. 72-73.)  The Board

was therefore not required to address these claims any more extensively than it did.

    In sum, because the Board sufficiently considered the only issue before it on remand

consistent with the Court's instructions, its December 5, 2006 decision will be upheld.[5]

## III.    The March 17, 2005 Denial of Reconsideration

    The *Lipsman* case was decided on September 7, 2004, while plaintiff's fourth request for

reconsideration was pending before the Board.  On March 17, 2005, the Board returned the

request to plaintiff "without action" and noted that the ABCMR would "not consider any further

requests for reconsideration in this matter." (A.R. 1.)  The Board's letter did not refer to

*Lipsman* by name, but it cited "[a] recent court decision [that] ordered the deletion of paragraph

2-15b," and it stated that the effect of the decision was that an applicant was only permitted to

---

    [5]Plaintiff also argues that the Board's December 5, 2006 decision "relied" on a bar to reenlistment that he claims was imposed in error. (Pl.'s Mot. at 37.)  However, even assuming that this bar to reenlistment was somehow improper, plaintiff has not explained how it is relevant to his request for reconsideration.  Moreover, though the Board lists the bar to reenlistment as a historical fact in its decision memorandum (A.R. 368), it clearly did not form the basis for the ABCMR's decision that plaintiff's waiver was made knowingly and intelligently.  (*See* A.R. 369-71.)

request reconsideration "if the request is received within one year of the ABCMR's original decision and it has not previously been reconsidered." (*Id.*)  Because plaintiff had previously requested reconsideration, the Board determined that he was "not eligible for further reconsideration . . . ." (*Id.*)

Plaintiff argues that because the new version of Army Regulation 15-185 ¶ 2-15 was not promulgated until months after this decision, the Board's March 17, 2005 decision did not comply with the regulations in force at the time that would have permitted reconsideration by the Board if the staff determined that the applicant presented sufficient new evidence. (Pl.'s Mot. at 25-26.)  He argues that the change of policy should not have "retroactively" applied to his request, and that "[a]n agency changing its course must supply a reasoned analysis" for the change. (*Id.* at 25 (quoting *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 57).)  Plaintiff also argues that this "dispositive" decision to return the request without action violated *Lipsman* because it was made by the staff, and therefore that the decision should be remanded to the Board.[6]  (*Id.* at 25.)

These arguments are unpersuasive given the holding of *Lipsman* that ¶ 2-15(b) violated 10 U.S.C. § 1552 because it directed the ABCMR staff to substantively evaluate evidence presented in requests for reconsideration.  First, *Lipsman* ordered the Army to "strike" ¶ 2-15(b) and to ensure that in the future the staff would not be permitted to substantively evaluate evidence. *Lipsman*, 335 F. Supp. 2d at 56.  Regardless of when a new version of the regulations

---

[6]Plaintiff's position suffers from an internal inconsistency, since he appears to be arguing that the March 17, 2005 decision was erroneous both because the staff, not the Board, made the decision, and because the staff, in making that decision, did not consider his new evidence under the old regulation.  Thus, it is unclear what plaintiff imagines the proper role of the ABCMR's staff to be following *Lipsman*.

was actually promulgated, in compliance with the *Lipsman* decision, the ABCMR immediately stopped applying that section. (Defs.' Reply at 12.) Instead, the ABCMR interpreted its regulations in light of *Lipsman* as allowing reconsideration only if a reconsideration request met the criteria in ¶ 2-15(a) -- it had to be filed within one year of the initial decision, and the decision had not previously been reconsidered. This was a reasonable interpretation,[7] and plaintiff's fourth request for reconsideration simply did not meet these requirements. As plaintiff argues, "[a]n agency is free to change course, but when it does, it must provide 'a reasoned analysis indicating that prior policies and standards are being deliberately changed, not casually ignored.'" *Am. Fed'n of State, County & Municipal Employees Capital Area Council 26 v. FLRA*, 395 F.3d 443, 450 (D.C. Cir. 2005) (quoting *Nat'l Fed'n of Fed. Employees v. FLRA*, 369 F.3d 548, 553 (D.C. Cir. 2004)). Judge Urbina's holding in *Lipsman* that ¶ 2-15(b) was invalid under 10 U.S.C. § 1552 was more than sufficient reason for the ABCMR to stop applying that provision immediately, and its change in policy was therefore rational as it applied to plaintiff's fourth request for reconsideration.

Second, though the staff's determination that plaintiff was not eligible for reconsideration because he had previously requested reconsideration was, as plaintiff claims, "dispositive" of his case before the Board, that determination did not run afoul of *Lipsman*'s holding that the Board itself, not the staff, must evaluate the applicants' evidence. *See Lipsman*, 335 F. Supp. 2d at 55. Here, the staff simply made a ministerial determination that plaintiff had previously applied for reconsideration, and therefore that his application did not meet the ¶ 2-15(a) requirements. As

---

[7]Indeed, plaintiff does not contest defendants' argument that the ABCMR's post-*Lipsman* regulation was rational; he merely argues that it should not have applied to him. (Pl.'s Mot. at 26.)

such, the staff it made no substantive judgments about the evidence plaintiff presented.  Because

the staff's actions complied with a reasonable interpretation of the Army's regulations and did

not violate 10 U.S.C. § 1552 as interpreted by *Lipsman*, the Board's decision was not arbitrary,

capricious, or contrary to law, and it must therefore be upheld.[8]  *See Frizelle*, 111 F.3d at 176.

## IV.    The January 21, 2003 and July 15, 2003 Denials of Reconsideration

The letters denying plaintiff's second and third requests for reconsideration cited Army

Regulation 15-185 ¶ 2-15(b) and advised plaintiff that the ABCMR staff had determined that his

applications did not contain evidence that met the criteria in that provision.  (A.R. 45, 47.)

Plaintiff argues that these decisions violated 10 U.S.C. § 1552 under *Lipsman* because they were

made by the ABCMR staff and not by the Board.  (Pl.'s Mot. at 19.)  In response, defendants

argue that although the decision letters cited the regulation that *Lipsman* struck down, the staff of

the Board did not substantively evaluate plaintiff's new evidence.  Rather, defendants argue, they

rejected the requests for reconsideration based on their procedural determination that plaintiff

had not submitted *any* new evidence, and that such a determination by the staff was permitted by

*Lipsman*.  (Defs.' Reply at 6-7.)

While it is true that under the logic of *Lipsman* it would have been impermissible for the

ABCMR's staff to evaluate plaintiff's evidence, it does not follow that plaintiff necessarily had a

right to have the Board review these applications.  Even under the pre-*Lipsman* regulations, since

---

[8]Because the Board properly rejected plaintiff's final reconsideration request on
procedural grounds, the Court need not address the merits of the arguments raised in that request
regarding plaintiff's 1969 discharge procedure, *i.e.* that the discharge procedure failed to make
the required findings with respect to the waiver of counseling and rehabilitation; that the
discharge proceeding was not initiated by the unit commander as required; and that the discharge
procedure improperly failed to excluded records of plaintiff's prior non-judicial punishments.
(*See* Pl.'s Mot. at 27-30.)

plaintiff had already submitted a request for reconsideration, he only had a right to

reconsideration by the Board if these applications contained "substantial relevant evidence . . .

showing fraud, mistake of law, mathematical miscalculation, manifest error, or . . . substantial

relevant new evidence discovered contemporaneously or within a short time after the ABCMR's

original consideration." Army Reg. 15-185 ¶ 2-15(b), 32 C.F.R. § 581.3(g)(4)(ii) (Feb. 29,

2000).

        In this case, it is clear from the record before the Court that plaintiff did not submit such

evidence with his second and third requests for reconsideration.  Plaintiff's second request for

reconsideration attached six exhibits.  Of these, plaintiff argues that three constitute new

evidence: (1) what he characterizes as "a typewritten statement of his history of racial

discrimination in the Army" (A.R. 54); (2) copies of his master plumbers licenses (A.R. 52); and

(3) evidence of his enrollment in a community college (A.R. 53).  (Pl.'s Mot. at 22.)  But

plaintiff's allegations that he had to "endure a substantial amount of prejudice in the Army"

because of his race are essentially identical to the allegations of racial prejudice and

discrimination that he submitted to the Board along with his first application for reconsideration.

(A.R. 54, 68, 72.)  And the evidence of plaintiff's post-discharge professional accomplishments

was simply not relevant to the Board's consideration of whether his undesirable discharge was

the result of "error" or "injustice."  *See* 10 U.S.C. § 1552(a)(1).  His third request for

reconsideration presented no evidence whatsoever, but merely relied on the records that were

already before the Board.  (A.R. 46.)  Because plaintiff did not submit any new relevant evidence

with his second or third requests for reconsideration, he was not entitled to have the Board

review these requests under either the pre- or post-*Lipsman* regulations.  For the same reason, it

is clear that the staff of the ABCMR did not -- as plaintiff argues -- substantively evaluate new

-21-

evidence in making these decisions (which would have violated *Lipsman*), for no such evidence existed.

Furthermore, as this Court determined recently in *Lassalle v. Geren*, Civ. No. 06-1481, 2007 WL 1238871 (D.D.C. Apr. 27, 2007), even assuming *arguendo* that the Board's decisions on plaintiff's second and third requests for reconsideration were procedurally incorrect under *Lipsman*, remand of these decisions would be futile because "[i]n the absence of any new evidence, there is no reason to believe that the Board would evaluate plaintiff's requests any differently than it did in response to his original application. There is thus no reason to remand the matter as the outcome is clear." *Id.* at *5. This conclusion is consistent with Judge Urbina's approach in *Lipsman*. There, he remanded the reconsideration requests of all plaintiffs "whose second requests for reconsideration . . . *contained new evidence*." *Lipsman*, 335 F. Supp. 2d at 57 (emphasis added). Since there is no new relevant evidence at issue in the second and third requests, the Court will not disturb the Board's decisions denying those requests.

## CONCLUSION

For the foregoing reasons, the Court upholds the ABCMR's decisions of January 21, 2003, July 15, 2003, March 17, 2005, and December 5, 2006.[9] Accordingly, defendants' Motion for Summary Judgment is granted, and the case is dismissed with prejudice. A separate order accompanies this Memorandum Opinion.

_____
/s/
ELLEN SEGAL HUVELLE
United States District Judge

Date:   December 27, 2007

---

[9]Because the Court upholds the Board's decisions, plaintiff's lengthy discussion regarding the availability of mandamus relief is now irrelevant.

-22-